**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| MISO Transmission Owners, | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 25-1045 |
| | ) | (consolidated) |
| Federal Energy Regulatory Commission, | ) | |
| Respondent. | ) | |

**UNDERLYING DECISIONS FROM WHICH
PETITION ARISES**

Pursuant to the Court's February 4, 2025 order, the MISO Transmission Owners[1] submit the underlying decisions from which the petition for review in this case arises:

---

[1]   For purposes of this filing, the MISO Transmission Owners include: ALLETE, Inc., for its operating division Minnesota Power (and its subsidiary Superior Water, L&P); Ameren Services Company, as agent for Union Electric Company d/b/a Ameren Missouri, Ameren Illinois Company d/b/a Ameren Illinois, and Ameren Transmission Company of Illinois; American Transmission Company LLC; Cleco Power LLC; Duke Energy Business Services, LLC for Duke Energy Indiana, LLC; Entergy Arkansas, LLC; Entergy Louisiana, LLC; Entergy Mississippi, LLC; Entergy New Orleans, LLC; Entergy Texas, Inc.; Indianapolis Power & Light Company d/b/a AES Indiana; International Transmission Company d/b/a ITC*Transmission*; ITC Midwest LLC; Michigan Electric Transmission Company, LLC; MidAmerican Energy Company; Montana-Dakota Utilities Co.; Northern Indiana Public Service Company LLC; Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation, subsidiaries of Xcel Energy Inc.; Northwestern Wisconsin Electric Company; Otter Tail Power Company; Southern Indiana Gas & Electric Company (d/b/a CenterPoint Energy Indiana South); and Wolverine Power Supply Cooperative, Inc.

(1) *Association of Businesses Advocating Tariff Equity v. Midcontinent Independent System Operator, Inc.*, Order on Remand, Docket Nos. EL14-12-016 & EL15-45-015, 189 FERC ¶ 61,036 (Oct. 17, 2024); and

(2) *Association of Businesses Advocating Tariff Equity v. Midcontinent Independent System Operator, Inc.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket Nos. EL14-12-017 & EL15-45-016, 189 FERC ¶ 62,128 (Dec. 19, 2024).

Respectfully submitted,

*/s/ Wendy N. Reed*
Wendy N. Reed
Matthew J. Binette
Abraham F. Johns III
WRIGHT & TALISMAN, P.C.
1200 G Street N.W., Suite 600
Washington, DC  20005-3898
(202) 393-1200
reed@wrightlaw.com
binette@wrightlaw.com
johns@wrightlaw.com

**Attorneys for the**
**MISO Transmission Owners**

Dated:  March 6, 2025

189 FERC ¶ 61,036
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Chairman;
                       Mark C. Christie, David Rosner
                       and Lindsay S. See.

| | | |
|---|---|---|
| Association of Businesses Advocating Tariff Equity | Docket Nos. | EL14-12-016 |
| Coalition of MISO Transmission Customers | | |
| Illinois Industrial Energy Consumers | | |
| Indiana Industrial Energy Consumers, Inc. | | |
| Minnesota Large Industrial Group | | |
| Wisconsin Industrial Energy Group | | |

v.

Midcontinent Independent System Operator, Inc.
ALLETE, Inc.
Ameren Illinois Company
Ameren Missouri
Ameren Transmission Company of Illinois
American Transmission Company LLC
Cleco Power LLC
Duke Energy Business Services, LLC
Entergy Arkansas, Inc.
Entergy Gulf States Louisiana, LLC
Entergy Louisiana, LLC
Entergy Mississippi, Inc.
Entergy New Orleans, Inc.
Entergy Texas, Inc.
Indianapolis Power & Light Company
International Transmission Company
ITC Midwest LLC
Michigan Electric Transmission Company, LLC
MidAmerican Energy Company
Montana-Dakota Utilities Co.
Northern Indiana Public Service Company LLC
Northern States Power Company-Minnesota
Northern States Power Company-Wisconsin
Otter Tail Power Company
Southern Indiana Gas & Electric Company

Docket Nos. EL14-12-016 and EL15-45-015                                              - 2 -


Arkansas Electric Cooperative Corporation                                    EL15-45-015
Mississippi Delta Energy Agency
Clarksdale Public Utilities Commission
Public Service Commission of Yazoo City
Hoosier Energy Rural Electric Cooperative, Inc.


                    v.


ALLETE, Inc.
Ameren Illinois Company
Ameren Missouri
Ameren Transmission Company of Illinois
American Transmission Company LLC
Cleco Power LLC
Duke Energy Business Services, LLC
Entergy Arkansas, Inc.
Entergy Gulf States Louisiana, LLC
Entergy Louisiana, LLC
Entergy Mississippi, Inc.
Entergy New Orleans, Inc.
Entergy Texas, Inc.
Indianapolis Power & Light Company
International Transmission Company
ITC Midwest LLC
Michigan Electric Transmission Company, LLC
MidAmerican Energy Company
Montana-Dakota Utilities Co.
Northern Indiana Public Service Company LLC
Northern States Power Company-Minnesota
Northern States Power Company-Wisconsin
Otter Tail Power Company
Southern Indiana Gas & Electric Company



                          ORDER ON REMAND

                       (Issued October 17, 2024)

1.      This case is before the Commission on remand from the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit).[1]  In short, in Opinion Nos. 569,[2] 569-A,[3] and 569-B,[4] the Commission made multiple revisions to its methodology for analyzing the base return on equity (ROE) component of public utility rates under section 206 of the Federal Power Act (FPA).[5]  On August 9, 2022, the D.C. Circuit vacated and remanded Opinion No. 569, *et seq.* on one issue, the Commission's decision to include the risk premium (Risk Premium) model in that methodology.  The court explained that the Commission failed to offer a reasoned explanation for its decision to include the Risk Premium model after initially rejecting it.[6]  As discussed further below, on reexamination of the record and by reference to the court's directions on remand, we determine that there is insufficient record evidence to include the Risk Premium model in the Commission's ROE methodology for analyzing the base ROE component of public utility rates under section 206 of the FPA and, accordingly, reverse the portions of Opinion Nos. 569-A and 569-B that include the Risk Premium model and maintain the other modifications to the Commission's ROE methodology set forth in Opinion No. 569, as modified by Opinion Nos. 569-A and 569-B.

## I.      **Background**

###     A.      **Opinion No. 531, *et seq.***

2.      In Opinion No. 531,[7] the Commission adopted certain changes to its use of the discounted cash flow (DCF) methodology for evaluating and setting the Commission-

---

[1] *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) (*MISO TOs v. FERC*).

[2] *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569, 169 FERC ¶ 61,129 (2019).

[3] *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569-A, 171 FERC ¶ 61,154 (2020).

[4] *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569-B, 173 FERC ¶ 61,159 (2020).

[5] 16 U.S.C. § 824e.

[6] *MISO TOs v. FERC*, 45 F.4th at 264.

[7] *Coakley v. Bangor Hydro-Elec. Co.*, Opinion No. 531, 147 FERC ¶ 61,234, *order on paper hearing*, Opinion No. 531-A, 149 FERC ¶ 61,032 (2014), *order on reh'g*, Opinion No. 531-B, 150 FERC ¶ 61,165 (2015), *rev'd, Emera Maine v. FERC*, 854 F.3d

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

allowed ROE for the New England transmission owners (New England TOs).  In particular, the Commission elected to replace the "one-step" DCF model, which considers only short-term growth projections for a public utility, with a "two-step" model that considers both short- and long-term growth projections.[8]  The Commission also departed from its typical practice of setting the just and reasonable ROE of a group of utilities at the midpoint of the zone of reasonableness.  The Commission explained that evidence of "anomalous" capital market conditions, including "bond yields [that were] at historic lows," made the Commission "less confiden[t] that the midpoint of the zone of reasonableness . . . accurately reflects the [ROE] necessary to meet the *Hope* and *Bluefield* capital attraction standards."[9]  The Commission therefore looked to four alternative benchmark models:  three financial models—the Risk Premium model, the capital asset pricing model (CAPM), and expected earnings (Expected Earnings) model[10]—as well as a comparison with the ROEs approved by state public utility commissions.[11]  In considering those models, the Commission emphasized that it was not departing from its long-standing reliance on the DCF model, but rather relying on those models only to "inform the just and reasonable placement of the ROE within the zone of reasonableness established . . . by the DCF methodology."[12]  Based on these alternative models, the Commission determined that an ROE of 10.57%, the midpoint of the upper half of the zone of reasonableness produced by the two-step DCF model, would be just

9 (D.C. Cir. 2017) (*Emera Maine*).

[8] *See generally* Opinion No. 531, 147 FERC ¶ 61,234 at PP 8, 32-41.

[9] *Id.* PP 144-145 & n.285.  *Hope* and *Bluefield* refer to a pair of U.S. Supreme Court cases that require the Commission "to set a rate of return commensurate with other enterprises of comparable risk and sufficient to assure that enough capital is attracted to the utility to enable it to meet the public's needs." *Boroughs of Ellwood City, Grove City, New Wilmington, Wampum, & Zelienople, Pa. v. FERC*, 731 F.2d 959, 967 (D.C. Cir. 1984) (citing *FPC v. Hope Nat. Gas Co.*, 320 U.S. 591, 603 (1944) (*Hope*) and *Bluefield Waterworks Improvement Co. v. Pub. Serv. Comm'n of W.V.*, 262 U.S. 679 (1923) (*Bluefield*)).

[10] As discussed further below, the Risk Premium model estimates cost of equity using the implied premium that provided over Baa-rated utility bonds by regulatory decisions and settlements.  The CAPM derives the ROE through the risk premium observed from the risk premium of a DCF analysis of S&P 500 dividend-paying companies.  The Expected Earnings model is a method of calculating the earnings that an investor expects to receive on the book value of a particular stock.

[11] Opinion No. 531, 147 FERC ¶ 61,234 at PP 147-49.

[12] *Id.* P 146.

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

and reasonable. Because that figure differed from New England TOs' existing 11.14% ROE, the Commission concluded that the existing base ROE had become unjust and unreasonable and it therefore set New England TOs' base ROE at 10.57%, pending a paper hearing concerning the long-term growth projection to use in the DCF analysis. Following that hearing, in Opinion No. 531-A the Commission sustained its conclusion that New England TOs' existing ROE was unjust and unreasonable and that 10.57% was the just and reasonable ROE. The Commission required New England TOs to submit a compliance filing to implement their new ROEs effective October 16, 2014—the date of issuance of Opinion No. 531-A.

## B.     Opinion No. 551, *et seq.*

3.     On November 12, 2013, multiple complainants[13] filed a complaint pursuant to section 206 of the FPA (First Complaint), alleging, among other things, that the Midcontinent Independent System Operator, Inc.'s (MISO) transmission-owning members' (MISO TOs) base ROE reflected in MISO's Open Access Transmission, Energy and Operating Reserve Markets Tariff was unjust and unreasonable.[14] At the time of the First Complaint, MISO TOs had a base ROE of 12.38% (except for the

---

[13] The complainants consist of a group of large industrial customers: Association of Businesses Advocating Tariff Equity; Coalition of MISO Transmission Customers; Illinois Industrial Energy Consumers; Indiana Industrial Energy Consumers, Inc.; Minnesota Large Industrial Group; and Wisconsin Industrial Energy Group.

[14] The following MISO transmission owners were named in the First Complaint: ALLETE, Inc., for its operating division Minnesota Power Inc. and its wholly-owned subsidiary Superior Water, Light & Power Company; Ameren Services Company, as agent for Union Electric Company, Ameren Illinois Company, and Ameren Transmission Company of Illinois; American Transmission Company LLC (ATCLLC); Cleco Power LLC; Duke Energy Corporation for Duke Energy Indiana, Inc.; Entergy Arkansas, Inc.; Entergy Louisiana, LLC; Entergy Gulf States Louisiana, L.L.C.; Entergy Mississippi, Inc.; Entergy New Orleans, Inc.; Entergy Texas, Inc.; Indianapolis Power & Light Company; International Transmission Company; ITC Midwest LLC; Michigan Electric Transmission Company, LLC; MidAmerican Energy Company; Montana-Dakota Utilities Co.; Northern Indiana Public Service Company LLC; Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation, subsidiaries of Xcel Energy Inc.; Northwestern Wisconsin Electric Company; Otter Tail Power Company; Southern Indiana Gas & Electric Company; and Wolverine Power Supply Cooperative, Inc. Intervenor Xcel Energy Services Inc. did not join certain of the MISO TOs' pleadings in the First Complaint proceeding, but generally supported the brief on behalf of respondents Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation.

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

ATCLLC zone, which had a 12.20% ROE),[15] and their total ROE (i.e., the base ROE plus any ROE adders approved by the Commission) was not permitted to exceed 15.96%. The Commission established MISO TOs' preexisting 12.38% ROE in a 2002 decision.[16] That ROE was based on a DCF analysis using financial data for the six-month period ending February 2002.[17] On October 16, 2014, the same date that the Commission issued Opinion No. 531-A, it set the First Complaint for hearing before an Administrative Law Judge and established a refund effective date of November 12, 2013.[18]

4.      Following the hearing, the Presiding Judge issued an Initial Decision,[19] and the Commission subsequently issued Opinion No. 551.[20] In Opinion No. 551, the Commission calculated the just and reasonable ROE using the two-step DCF methodology from Opinion No. 531 and financial data for the period January 1 through June 30, 2015. The Commission affirmed the conclusions of Initial Decision (I), finding that the Presiding Judge correctly applied the two-step DCF analysis required by Opinion

---

[15] For ease of reference, we refer to the MISO TOs' base ROE at the time of the First Complaint as 12.38% in this order, without separately identifying that the ATCLLC zone had a 12.20% ROE. Our discussion and decisions with respect to the MISO TOs' 12.38% ROE also apply to the 12.20% ATCLLC ROE.

[16] *See Midwest Indep. Transmission Sys. Operator, Inc.*, 99 FERC ¶ 63,011, *initial decision affirmed as to base ROE*, 100 FERC ¶ 61,292 (2002), *reh'g denied*, 102 FERC ¶ 61,143 (2003), *order on remand*, 106 FERC ¶ 61,302 (2004). The ATCLLC zone base ROE of 12.20% was established as part of a settlement agreement that was filed with the Commission on March 26, 2004. In Docket No. ER04-108-000, the Commission approved the uncontested settlement. *Am. Transmission Co. LLC*, 107 FERC ¶ 61,117 (2004).

[17] *Midwest Indep. Transmission Sys. Operator, Inc.*, 99 FERC ¶ 63,011 at app. A.

[18] *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 149 FERC ¶ 61,049, at P 188 (2014) (First Complaint Hearing Order), *order on reh'g*, 156 FERC ¶ 61,060 (2016) (First Complaint Rehearing Order). In the First Complaint Rehearing Order, the Commission denied requests for rehearing and clarification of the First Complaint Hearing Order and clarified that non-public utility transmission owners in MISO were subject to the outcome of that proceeding. First Complaint Rehearing Order, 156 FERC ¶ 61,060 at PP 47-48.

[19] *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 153 FERC ¶ 63,027 (2015) (Initial Decision (I)).

[20] Opinion No. 551, 156 FERC ¶ 61,234.

No. 531.[21]  The Commission also affirmed the Presiding Judge's determination that, as in Opinion No. 531, there were anomalous capital market conditions such that the Commission had less confidence that the midpoint of the zone of reasonableness produced by a mechanical application of the DCF methodology satisfied the capital attraction standards of *Hope* and *Bluefield*.[22]  The Commission found that the Presiding Judge reasonably considered evidence of alternative methodologies for determining the ROE and the ROEs approved by state regulatory commissions, for purposes of deciding to set the ROE at the central tendency of the upper half of the zone of reasonableness, setting the base ROE for MISO TOs at 10.32%.[23]  The Commission required MISO TOs to submit a compliance filing to implement their new ROEs effective September 28, 2016, the date of Opinion No. 551, and to provide refunds for the November 12, 2013-February 11, 2015 refund period.  Following the issuance of Opinion No. 551, numerous parties submitted requests for rehearing.

## C.    Second Complaint Against MISO TOs' ROE

5.    On February 12, 2015, a new set of complainants[24] filed a second complaint in Docket No. EL15-45-000 (Second Complaint) also alleging that MISO TOs' base ROE of 12.38% was unjust and unreasonable.[25]  Relying on an updated two-step DCF analysis,

---

[21] *See generally id.* P 9.

[22] *Id.*

[23] *Id.*

[24] Complainants for the Second Complaint consist of:  Arkansas Electric Cooperative Corporation; Mississippi Delta Energy Agency and its two members, Clarksdale Public Utilities Commission of the City of Clarksdale, Mississippi and Public Service Commission of Yazoo City of the City of Yazoo City, Mississippi; and Hoosier Energy Rural Electric Cooperative, Inc.

[25] The following MISO transmission owners were named in the Second Complaint:  ALLETE, Inc., for its operating division Minnesota Power, Inc. and its wholly-owned subsidiary Superior Water Light, & Power Company; Ameren Illinois Company; Union Electric Company (identified as Ameren Missouri); Ameren Transmission Company of Illinois; ATCLLC; Cleco Power LLC; Duke Energy Business Services, LLC; Entergy Arkansas, Inc.; Entergy Gulf States Louisiana, LLC; Entergy Louisiana, LLC; Entergy Mississippi, Inc.; Entergy New Orleans, Inc.; Entergy Texas, Inc.; Indianapolis Power & Light Company; International Transmission Company, ITC Midwest LLC; Michigan Electric Transmission Company, LLC; MidAmerican Energy Company; Montana-Dakota Utilities Co.; Northern Indiana Public Service Company LLC; Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation; Otter Tail Power Company; and Southern

the Second Complaint complainants argued that the base ROE should be no higher than 8.67%.[26] On June 18, 2015, the Commission established hearing procedures and set a refund effective date of February 12, 2015.[27]

6.     Parties filed requests for rehearing of the Second Complaint Hearing Order, and on July 21, 2016, the Commission generally sustained the Second Complaint Hearing Order.[28] Following the Second Complaint Hearing Order, the Presiding Judge issued an Initial Decision on June 30, 2016.[29] The Presiding Judge adopted a zone of reasonableness of 6.75% to 10.68% based on financial data for the period July 1, 2015 through December 31, 2015. The Presiding Judge also determined that the anomalous capital market conditions identified in Opinion No. 531 persisted and, after considering the alternative benchmark methodologies, that the just and reasonable ROE was 9.70%— halfway between the midpoint and the upper bound of the zone of reasonableness. The participants filed briefs on and opposing exception.

### D.     *Emera Maine*

7.     On April 14, 2017, the D.C. Circuit issued its *Emera Maine* decision, vacating and remanding Opinion No. 531, *et seq*. As an initial matter, the court was not persuaded by New England TOs' argument that an ROE within the DCF-produced zone of reasonableness could not be deemed unjust and unreasonable. The court explained that the zone of reasonableness established by the DCF is not "coextensive" with the "statutory" zone of reasonableness envisioned by the FPA.[30] Accordingly, the court concluded that the fact that New England TOs' existing ROE fell within the zone of

---

Indiana Gas & Electric Company.

[26] *Ark. Elec. Coop. Corp. v. ALLETE, Inc.*, 151 FERC ¶ 61,219, at P 1 (2015) (Second Complaint Hearing Order), *order on reh'g*, 156 FERC ¶ 61,061 (2016) (Second Complaint Rehearing Order).

[27] Second Complaint Hearing Order, 151 FERC ¶ 61,219 at P 1.

[28] *See* Second Complaint Rehearing Order, 156 FERC ¶ 61,061.

[29] *Arkansas Elec. Coop. Corp. v. ALLETE, Inc.*, 155 FERC ¶ 63,030 (2016) (Initial Decision (II)).

[30] *Emera Maine*, 854 F.3d at 22-23.

reasonableness produced by the DCF did not necessarily indicate that it was just and reasonable for the purposes of the FPA.[31]

8.      Nevertheless, the court found that the Commission had not adequately shown that New England TOs' existing ROE was unjust and unreasonable.  The court explained that the FPA's statutory "zone of reasonableness creates a broad range of potentially lawful ROEs rather than a single just and reasonable ROE" and that whether a particular ROE is unjust and unreasonable depends on the "particular circumstances of the case."[32]  Thus, the fact that New England TOs' existing ROE did not equal the just and reasonable ROE that the Commission would have set using the current DCF inputs did not necessarily indicate that New England TOs' existing ROE fell outside the statutory zone of reasonableness.[33]  As such, the court concluded that Opinion No. 531 "failed to include an actual finding as to the lawfulness of [New England TOs'] existing base ROE" and that its conclusion that their existing ROE was unjust and unreasonable was itself arbitrary and capricious.[34]

9.      The court also found that the Commission had not adequately shown that the 10.57% ROE that it set was just and reasonable.  Although recognizing that the Commission has the authority "to make 'pragmatic adjustments' to a utility's ROE based on the 'particular circumstances' of a case," the court nevertheless concluded that the Commission had not explained why setting the ROE at the upper midpoint was just and reasonable.[35]  The court noted, in particular, that the Commission relied on the alternative models and state-regulated ROEs to support a base ROE above the midpoint, but that it did not rely on that evidence to support an ROE at the upper midpoint.[36]  Similarly, the court noted that the Commission had concluded that a base ROE of 9.39%—the midpoint

---

[31] *Id.* at 23.

[32] *Id.* at 23, 26.

[33] *Id.* at 27 ("To satisfy its dual burden under section 206, FERC was required to do more than show that its single ROE analysis generated a new just and reasonable ROE and conclusively declare that, consequently, the existing ROE was per se unjust and unreasonable.").

[34] *Id.*

[35] *Id.* (quoting *FPC v. Nat. Gas Pipeline Co. of Am.*, 315 U.S. 575, 586 (1942)).

[36] *Id.* at 29 ("FERC's reasoning is unclear.  On the one hand, it argued that the alternative analyses supported its decision to place the base ROE above the midpoint, but on the other hand, it stressed that none of these analyses were used to select the 10.57% base ROE.").

of the zone of reasonableness—might not be sufficient to satisfy *Hope* and *Bluefield* or to allow the utility to attract capital, but that the Commission had not similarly explained how a 10.57% base ROE was sufficient to meet either of those conditions. Because the court found that the Commission had not pointed to record evidence supporting the specific point at which it set New England TOs' ROE, the court held that the Commission had not articulated the "rational connection" between the evidence and the rate that the FPA demands.[37]

10.     Based on the court's conclusion that the Commission had not met its burden either under the first or the second prong of section 206 of the FPA, it vacated and remanded Opinion No. 531 *et seq.*,[38] meaning that Opinion No. 531 is no longer precedential,[39] even though the Commission remained free to re-adopt those determinations on remand as long as it provided a reasoned basis for doing so.[40]  The Commission relied extensively on its determinations in Opinion No. 531 in its order on the First Complaint (i.e., Opinion No. 551).

## E.     Briefing Orders

11.     Following the decision in *Emera Maine*, the Commission issued the Briefing Orders,[41] in which it proposed an ROE methodology for addressing the issues that were remanded to the Commission in *Emera Maine*, and established a paper hearing on whether and how this methodology should apply to the complaint proceedings concerning both the New England TOs and MISO TOs.  In those orders, the Commission sought comment on a proposal to give equal weight to the results of the two-step DCF model, CAPM, the Expected Earnings model, and the Risk Premium model to determine a base ROE.  The Briefing Orders also included a high-end outlier test excluding proxy group companies with ROEs more than 1.5 times the median proxy group ROE and formalized a "natural break" outlier analysis.  For evaluating whether an existing base ROE remains just and reasonable under the first prong of FPA section 206, the Commission proposed a quartile framework in which the composite zone of

---

[37] *Id.* at 28-30.

[38] *Id.* at 30.

[39] *Id.*

[40] *Id.*

[41] *Coakley v. Bangor Hydro-Elec. Co.*, 165 FERC ¶ 61,030 (2018) (*Coakley* Briefing Order); *Ass'n of Businesses Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 165 FERC ¶ 61,118 (2018) (MISO Briefing Order) (collectively, Briefing Orders).

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

reasonableness produced by the first three of these models would be divided into risk-based quartile ranges.

### F.     Opinion No. 569

12.     On November 21, 2019, the Commission issued Opinion No. 569 in which it applied a revised methodology for analyzing existing base ROEs under section 206 of the FPA.  The revised methodology applied in Opinion No. 569 did not use the Expected Earnings or Risk Premium models as was proposed in the Briefing Orders, and instead used only the DCF model and CAPM in the Commission's determinations under the first and second prongs of section 206.  The methodology applied in Opinion No. 569 gave equal weight to the DCF model and CAPM by averaging the top and bottom of the DCF and CAPM zones of reasonableness to produce a composite zone of reasonableness.[42]  In addition, in Opinion No. 569, the Commission reaffirmed its use of a two-step DCF analysis that gave one-third weight to a long-term growth rate based on projected growth in gross domestic product (GDP).[43]  The Commission also held that it would continue to rely exclusively on the Institutional Brokers Estimate System (IBES) as the preferred source for the DCF short-term growth projection, absent compelling reasons otherwise.[44]  The Commission further held that only the short-term growth rate should be used to calculate the $(1+.5g)$ adjustment to dividend yield in the DCF analysis for the CAPM.[45]

13.     In Opinion No. 569, the Commission also adopted a specific CAPM methodology.  First, the Commission adopted the use of the 30-year U.S. Treasury average historical bond yield over a six-month period as the risk free rate.[46]  Second, the Commission held that the CAPM expected market return should be estimated using a forward-looking approach based on applying the DCF model to the dividend paying members of the S&P 500.[47]  In addition, the Commission approved the use of a one-step DCF model using only short-term three to five-year growth projections for the DCF analysis of the dividend-paying members of the S&P 500.  The Commission also held that IBES should be the sole source of the short-term earnings growth estimates used in the DCF analysis

---

[42] *See, e.g.*, Opinion No. 569, 169 FERC ¶ 61,129 at PP 37, 276.

[43] *Id.* PP 151-59.

[44] *Id.* P 133.

[45] *Id.* PP 98-100.

[46] *Id.* P 238.

[47] *Id.* PP 260-73.

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

that was part of the CAPM analysis[48] and that S&P 500 companies with growth rates that were negative or in excess of 20% should be screened from the DCF analysis.[49]  Finally, the Commission held that the CAPM analysis should include a size premium adjustment.[50]

14.     In addition to the above holdings concerning the DCF and CAPM models, the Commission also adopted a revised low-end outlier test that eliminated DCF and CAPM proxy group ROE results that were less than the yields of generic corporate Baa bonds plus 20% of the CAPM risk premium.[51]  The Commission also adopted the high-end outlier test that was proposed in the Briefing Order, which treated as high-end outliers any proxy company whose cost of equity estimated under the model in question was more than 150% of the median result of all of the potential proxy group members in that model before any high or low-end outlier test was applied, subject to a "natural break" analysis.[52]  The Commission also reaffirmed its use of the midpoint, rather than the median, as the measure of central tendency for ROEs that applied to groups of utilities.[53]

15.     The Commission also held that, in order to find an existing base ROE unjust and unreasonable under the first prong of FPA section 206, that ROE must be outside a range of presumptively just and reasonable ROEs for a utility of its risk profile, absent additional evidence to the contrary.  For a group of average risk utilities, that range would be the quartile of the composite zone of reasonableness centered on the midpoint of the zone of reasonableness.  For below or above average risk utilities, that range would be the quartile of the zone of reasonableness centered on the central tendency of the lower or upper half of the zone of reasonableness, respectively, with ROEs in the top or bottom eighth being presumed to be unjust and unreasonable, despite falling in the zone of reasonableness.[54]

---

[48] *Id.* PP 274-76.

[49] *Id.* PP 267-68.

[50] *Id.* PP 296-303.

[51] *Id.* PP 19, 387-89.

[52] *See id.* PP 367-68, 375.

[53] *Id.* PP 409-13.

[54] *Id.* P 57.

Document Accession #: 20241017-3039     Filed Date: 10/17/2024

### G.    Opinion No. 569-A

16.    On May 21, 2020, the Commission issued Opinion No. 569-A, which sustained in part Opinion No. 569,[55] and modified and set aside in part Opinion No. 569 to make certain revisions to the methodology established in Opinion No. 569.  The Commission modified and set aside in part Opinion No. 569 to use the Risk Premium model, DCF model, and CAPM under both prongs of the FPA section 206 analysis instead of relying on only the DCF model and CAPM.  The Commission also modified and set aside in part Opinion No. 569 to give the short-term growth rate 80% weighting and the long-term growth rate 20% weighting in the two-step DCF model.  The Commission also clarified that it would consider the use of *Value Line* growth rates in future proceedings' CAPM analyses.  Additionally, the Commission increased the high-end outlier test threshold from 150% to 200% of the median result of all the potential proxy group members in CAPM and DCF models, subject to a natural break analysis.  The Commission also revised its ROE methodology to calculate the ranges of presumptively just and reasonable base ROEs by dividing the overall composite zone of reasonableness into thirds, instead of using the quartile approach adopted in Opinion No. 569.[56]  The Commission illustrated how these presumptively just and reasonable ranges would be divided, as follows:[57]

Figure 1:  Ranges of Presumptively Just and Reasonable Base ROEs



17.    In applying that revised methodology, the Commission found that MISO TOs' ROE that was at issue in the First Complaint proceeding was unjust and unreasonable and that a 10.02% ROE was a just and reasonable replacement ROE.  The Commission dismissed the Second Complaint regarding MISO TOs' base ROE, finding that the

---

[55] *See* Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 1-3.

[56] *See id.*

[57] *See id.* P 194.

10.02% ROE fell within the range of presumptively just and reasonable base ROEs and that no evidence in the proceeding rebutted that presumption.[58]

## H.      Opinion No. 569-B

18.      On November 19, 2020, the Commission issued Opinion No. 569-B, which reached the same result that the Commission reached in Opinion No. 569-A, with the exception of correcting certain inputs to the Risk Premium model.  The Commission explained that correcting these errors did not change the results of the First Complaint and Second Complaint.

## I.      D.C. Circuit Remand

19.      On August 9, 2022, the D.C. Circuit vacated and remanded Opinion No. 569, *et seq.*[59]  The court explained that the opinions were challenged on the following five grounds:  (1) the change to the long-term and short-term growth rates in the DCF model; (2) aspects of the Commission's application of the CAPM; (3) the creation of presumptively just and reasonable ranges at step one of the FPA section 206 analysis; (4) use of the midpoint, as opposed to median, as the measure of central tendency for groups of utilities; and (5) inclusion of the Risk Premium model.

20.      The court found "the first four of those arguments unpersuasive."[60]  However, it agreed with the final challenge and found that the Commission failed to offer a reasoned explanation for its decision to include the Risk Premium model after initially rejecting it in Opinion No. 569.[61]  The court observed that, in Opinion No. 569, the Commission found the Risk Premium model to be defective and described its deficiencies.[62]  The court explained that the Commission is entitled to change its mind, as it did in Opinion No. 569-A, but that to do so it must "provide a 'reasoned explanation' for its decision to disregard 'facts and circumstances' that justified its prior choice."[63]

---

[58] *See id.* P 3.

[59] *MISO TOs v. FERC*, 45 F.4th 248.

[60] *Id.* at 258.

[61] *Id.* at 264.

[62] *Id.* at 263-64.

[63] *Id.* at 264 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-516 (2009)).

21.     The court provided four reasons for finding that the Commission failed to provide a reasoned explanation for its decision to change course with regard to the Risk Premium model.  First, the Commission did not explain how adding the Risk Premium model aligned with "general financial logic" after having stated that the Risk Premium, at least as applied in this case, "defies general financial logic."[64]  Second, the Commission did not explain why investors not using the model no longer mattered and, instead, simply noted that investors expect a premium on a stock investment over a bond investment and that investors track the ROEs the Commission allows.[65]  Third, despite the Commission having stated that the Risk Premium presents "particularly direct and acute" circularity problems, the Commission, in reincorporating the Risk Premium model, simply stated that "all of the models contain some circularity" and that averaging the Risk Premium model with the other models would mitigate the circularity.[66]  Finally, the Commission had expressed concerns about overweighting Risk Premium theory-based models, since both the CAPM and Risk Premium models were based on this theory, yet then adopted the Risk Premium model with no explanation beyond the fact that the two models use different inputs.

22.     The court upheld the Commission's determinations to act on the First Complaint and Second Complaint in one order, and to treat the ROE to be analyzed under the first prong of section 206 in the Second Complaint as the ROE that the Commission fixed as the replacement rate in the First Complaint, rather than the ROE in effect at the time the Second Complaint was filed.[67]  The court also declined to opine on customers' challenges to the Commission's decision not to order a refund for the Second Complaint's refund period, because it had already granted their petition to vacate the Commission's orders.[68]

## II.     **Discussion**

23.     Upon review of the record and the court's findings, we conclude, as we previously recognized in Opinion No. 569, that the record fails to support the inclusion of the Risk Premium model in the Commission's ROE methodology, either for determining the justness and reasonableness of existing base ROEs under the first prong of section 206 of the FPA or for determining new just and reasonable base ROEs under the second prong

---

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.* at 262.

[68] *Id.* at 264-65.

Document Accession #: 20241017-3039     Filed Date: 10/17/2024

of section 206 of the FPA.[69]  Specifically, we find that the record does not contain any evidence suggesting that investors use the Risk Premium model adopted in Opinion No. 569-A.[70]  We also find that the record does not contain any evidence that would resolve the circularity concerns inherent in the Risk Premium model adopted in Opinion No. 569-A.[71]  Accordingly, we reverse the portions of Opinion Nos. 569-A and 569-B that include the Risk Premium model in the Commission's ROE methodology, while maintaining the other modifications to the Commission's ROE methodology set forth in Opinion No. 569, as modified by Opinion Nos. 569-A and 569-B.

24.     The record in this proceeding does not support making any further modifications to the Commission's ROE methodology.  However, we note that the elimination of the Risk Premium model lowers the number of models from three to two, which would reduce the diversity of inputs and increase the weighting afforded to the CAPM and DCF model.  Therefore, while we do not adopt the Risk Premium model here for the reasons discussed above, we do not foreclose the use of a Risk Premium model in future proceedings if parties can demonstrate the concerns discussed above have been addressed.  In addition, the Commission could consider the use of a blended historical and forward-looking risk premium in the CAPM in future proceedings as a potential means to mitigate volatility concerns with the Commission's ROE methodology.

## A.     Complaint-Specific Results:  First Complaint

### 1.     Existing Rate for Purposes of First Complaint and Overview

25.     We continue to find that the MISO TOs' existing 12.38% base ROE as the date of the First Complaint is unjust and unreasonable.[72]  Having found that MISO TOs' 12.38% ROE is unjust and unreasonable, we find, as discussed below, that a just and reasonable replacement ROE for the MISO TOs in the First Complaint proceeding is 9.98%.

---

[69] *See* Opinion No. 569, 169 FERC ¶ 61,129 at PP 340-352.

[70] *See id.* P 345.

[71] *See id.* P 343.

[72] *See* Opinion No. 551, 156 FERC ¶ 61,234 at P 2.

26.      Below we address the "specific findings"[73] as to the "'particular circumstances'"[74] of the First Complaint proceeding that establish "'a rational connection'"[75] between the record evidence in that proceeding and our decisions under both prongs of FPA section 206 herein to establish that we have "'made a principled and reasoned decision supported by the evidentiary record.'"[76]  The Commission bases its decisions concerning just and reasonable ROEs for public utilities on the most recent information in the record regarding market cost of equity.  Consequently, the starting point for determining whether MISO TOs' existing ROE has become unjust and unreasonable must be a consideration of whether the current market cost of equity has changed since the MISO TOs' existing ROE was established based on financial data for the six months ending February 2002, such that the existing base ROE is no longer just and reasonable. Accordingly, we begin by determining a composite zone of reasonableness using the most recent financial information in the record of the First Complaint proceeding.  The appropriate study period including this most recent financial information is the first six months of 2015.[77]

### 2.      DCF Analysis

27.      We do not make any changes to the DCF analysis that was used in Opinion Nos. 569-A and 569-B, which was not challenged by the court.[78]  Based on these determinations, we continue to conclude that the DCF zone of reasonableness for the First Complaint proceeding is 6.97% to 12.07%.[79]

---

[73] *Emera Maine*, 854 F.3d at 30.

[74] *Id.* at 27 (citing *FPC v. Nat. Gas Pipeline Co.*, 315 U.S. at 586).

[75] *Id.* at 28 (citing *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016)).

[76] *Id.* at 30 (citing *S. Cal. Edison v. FERC*, 717 F.3d 177, 181 (D.C. Cir. 2013)).

[77] *See* Opinion No. 569, 169 FERC ¶ 61,129 at P 460; Opinion No. 551, 156 FERC ¶ 61,234 at P 19.

[78] *See* Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 208-209.

[79] *See* Appendix I.

### 3.  CAPM Analysis

28.    We do not make any changes to the CAPM analysis that was used in Opinion Nos. 569-A and 569-B, which was also not challenged by the court.[80]  Based on these determinations, we continue to conclude that the CAPM zone of reasonableness for the First Complaint proceeding is 7.80% to 13.09%.[81]

### 4.  Composite Zone of Reasonableness and Section 206 Findings

29.    With the elimination of the Risk Premium model, the composite zone of reasonableness is determined using the DCF and CAPM zones of reasonableness. Averaging the top and bottom of the DCF and CAPM zones of reasonableness determined above produces a composite zone of reasonableness in the First Complaint proceeding of 7.39% to 12.58%.  The midpoint of that zone of reasonableness is 9.98%.[82]

30.    Having determined the composite zone of reasonableness, we now turn to considering whether the MISO TOs' 12.38% ROE may be found unjust and unreasonable pursuant to the first prong of section 206.

31.    As noted in Opinion No. 569-A, the range of presumptively reasonable ROEs for consideration in determining whether MISO TOs' base ROE of 12.38% ROE in the First Complaint proceeding is unjust and unreasonable should be the middle third of the composite zone of reasonableness.  In the First Complaint proceeding, that range is from 9.12% to 10.85%.[83]

32.    The MISO TOs' 12.38% ROE is 153 basis points above the range of presumptively just and reasonable ROEs for the MISO TOs.  Accordingly, we find that the 12.38% ROE is presumptively unjust and unreasonable.  It is thus clear that, in light of our estimate of the cost of capital, the MISO TOs' 12.38% ROE is well outside the range of presumptively just and reasonable ROEs for the MISO TOs.  In order to rebut the presumption that the ROE is unjust and unreasonable, we would look at other evidence, such as state ROEs, ROEs of non-utility companies, ROEs produced by other methodologies, non-utility stock prices, investor expectations for non-utility stocks,

---

[80] *See* Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 210-11.

[81] *See* Appendix II.

[82] *See id.*  As noted above, the D.C. Circuit upheld the Commission's use of the midpoint as the measure of central tendency for groups of utilities. *MISO TOs v. FERC*, 45 F.4th at 263.

[83] *See* Appendix II.

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

various types of bond yields and their relation to stock prices, investor and other expert testimony, or testimony regarding the effects of rates on customers that would indicate that this is not the case. However, the record lacks such evidence sufficient to rebut the presumption, as explained in Opinion Nos. 569 and 569-A.[84] In these circumstances, we find under the first prong of FPA section 206 that the MISO TOs' 12.38% ROE that is the subject of the First Complaint proceeding has become unjust and unreasonable.

33. Having found that the MISO TOs' existing ROE is unjust and unreasonable, we turn to the establishment of a just and reasonable replacement ROE under the second prong of FPA section 206. As discussed above, we have found that the midpoint of the composite zone of reasonable ROEs based on the most recent financial information in the record of the First Complaint proceeding is 9.98%. As discussed above, we find that the MISO TOs are of average risk. Our policy is to set an RTO-wide ROE at the midpoint of the zone of reasonableness when the transmission owners receiving the RTO-wide ROE are of average risk. Accordingly, we find that the just and reasonable replacement ROE for the MISO TOs in the First Complaint proceeding is 9.98%. We therefore require the MISO TOs to adopt a 9.98% ROE effective September 28, 2016, the date the Commission issued Opinion No. 551. We therefore further require that MISO TOs provide refunds based on this 9.98% base ROE, with interest, for the First Complaint proceeding's 15-month refund period from November 12, 2013, through February 11, 2015, and for the period from September 28, 2016, to the date of this order.[85]

## B.      Complaint-Specific Results:  Second Complaint

### 1.      Existing Rate for Purposes of Second Complaint and Overview

34. As noted above, the D.C. Circuit upheld the Commission's determinations to treat the ROE to be analyzed under the first prong of section 206 in the Second Complaint as the ROE that the Commission fixed as the replacement rate in the First Complaint, rather than the ROE in effect at the time the Second Complaint was filed.[86] As discussed in the preceding section, in the First Complaint proceeding, we require MISO TOs to reduce their ROE to 9.98% effective prospectively from September 28, 2016. Therefore, that

---

[84] Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 167, 199; Opinion No. 569, 169 FERC ¶ 61,129 at PP 363-64, 558.

[85] *See* Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 245-249; *id.* P 249 ("[B]y granting rehearing of the decision in Opinion No. 551 to establish a new just and reasonable base ROE, and by acting to correct a legal error, it is appropriate to direct refunds, with interest, for the period from the effective date of the just and reasonable base ROE that was set in Opinion No. 551…").

[86] *MISO TOs v. FERC*, 45 F.4th at 262.

Document Accession #: 20241017-3039          Filed Date: 10/17/2024

9.98% is the MISO TOs' currently effective ROE when we are deciding whether MISO TOs' ROE is unjust and unreasonable and should be modified prospectively pursuant to section 206 in the Second Complaint proceeding.

35.     Applying the ROE methodology adopted herein to the Second Complaint proceeding, we find that the 9.98% base ROE established in the First Complaint proceeding has not been shown to be unjust and unreasonable.

36.     Below we address the "specific findings"[87] as to the "'particular circumstances'"[88] of the Second Complaint proceeding that establish "'a rational connection'"[89] between the record evidence in that proceeding and our decisions under both prongs of section 206 herein to establish that we have "'made a principled and reasoned decision supported by the evidentiary record.'"[90]  Because the Commission bases its decisions concerning just and reasonable ROEs for public utilities on the most recent information in the record regarding market cost of equity, the starting point for determining whether the MISO TOs' existing ROE has become unjust and unreasonable must be a consideration of whether the current market cost of equity has changed such that the 9.98% base ROE established in the First Complaint proceeding is unjust and unreasonable.  Accordingly, we begin by determining a composite zone of reasonableness using the most recent financial information in the record of the Second Complaint proceeding.  The appropriate study period including this most recent financial information is July 1, 2015, through December 31, 2015.[91]

### 2.     DCF Analysis

37.     As discussed above, we do not make any changes to the DCF analysis that was used in Opinion Nos. 569-A and 569-B.[92]  Based on these determinations, we conclude

---

[87] *Emera Maine*, 854 F.3d at 30.

[88] *Id.* at 27 (citing *FPC v. Nat. Gas Pipeline Co.*, 315 U.S. at 586).

[89] *Id.* at 28 (citing *FERC v. Elec. Power Supply Ass'n*, 577 U.S. at 292).

[90] *Id.* at 30 (citing *S. Cal. Edison v. FERC*, 717 F.3d at 181).

[91] *See* Opinion No. 569, 169 FERC ¶ 61,129 at P 524.

[92] *See id.* PP 222-23.

that the DCF zone of reasonableness for the Second Complaint proceeding is 7.37% to 11.37%.[93]

### 3.    CAPM Analysis

38.    We do not make any changes to the CAPM analysis that was used in Opinion Nos. 569-A and 569-B.[94]  Based on these determinations, we conclude that the CAPM zone of reasonableness for the Second Complaint proceeding is 8.35% to 12.63%.[95]

### 4.    Composite Zone of Reasonableness and Section 206 Findings

39.    As noted above, with the elimination of the Risk Premium model, the composite zone of reasonableness is determined using the DCF and CAPM zones of reasonableness. Averaging the top and bottom of the DCF and CAPM zones of reasonableness determined above based on the most recent financial data in the record of the Second Complaint proceeding produces a composite zone of reasonableness in the Second Complaint proceeding of 7.86% to 12%.[96]

40.    As explained above with regard to the First Complaint proceeding, the range of presumptively reasonable ROEs for the Second Complaint proceeding should be the middle third of the composite zone of reasonableness.  The applicable range of presumptively just and reasonable ROEs for the MISO TOs in the Second Complaint proceeding is from 9.24% to 10.62%.[97]  As discussed above, the issue to be addressed in the Second Complaint is whether the ROE established in the First Complaint remains just and reasonable during the applicable test period, as addressed by the evidence presented by the participants in the Second Complaint.  The MISO TOs' 9.98% ROE established upon resolution of the First Complaint proceeding falls within the range of presumptively just and reasonable ROEs that applies in the Second Complaint.  We find that this presumption has not been rebutted by the evidence in the Second Complaint proceeding. We see no evidence in the record, such as state ROEs, ROEs of non-utility companies, and other methodologies that rebuts this presumption, as explained in Opinion Nos. 569

---

[93] *See* Appendix I.

[94] *See* Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 224-25.

[95] *See* Appendix II.

[96] *See id.*

[97] *See id.*

and 569-A.[98]  Accordingly, we do not find that the MISO TOs' ROE established in the
First Complaint proceeding and in effect as of the date of this order is unjust and
unreasonable under the first prong of FPA section 206.  Therefore, we do not establish a
new ROE in the Second Complaint proceeding.

41.     As noted above, the court did not opine on challenges to the Commission's
determination not to order refunds for the Second Complaint refund period.[99]  We find no
reason in the court's decision or our review of the record here to change that
determination.  Accordingly, we reach the same determination that we did in Opinion
Nos. 569, 569-A, and 569-B that refunds cannot be ordered for the Second Complaint
refund period under FPA section 206.[100]

## III.     Conclusion

42.     For the reasons discussed above, we reverse the portions of Opinion Nos. 569-A
and 569-B that include the Risk Premium model in the Commission's ROE methodology
and maintain the other modifications to the Commission's ROE methodology in Opinion
No. 569, as modified by Opinion Nos. 569-A and 569-B.  Accordingly, we require the
MISO TOs to adopt a 9.98% base ROE, effective September 28, 2016, the date Opinion
No. 551 initially required the MISO TOs to adopt a 10.32% ROE.  As discussed above,
MISO TOs shall provide refunds based on a 9.98% base ROE, with interest, for the First
Complaint proceeding's 15-month refund period from November 12, 2013, through
February 11, 2015, and for the period from September 28, 2016, to the date of this order.
Finally, as discussed above, we continue to find that no refunds will be ordered in the
Second Complaint proceeding.

---

[98] Opinion No. 569-A, 171 FERC ¶ 61,154 at PP 167, 199; Opinion No. 569,
169 FERC ¶ 61,129 at PP 363-64, 558.

[99] *MISO TOs v. FERC*, 45 F.4th at 264-65 ("In addition to the customers'
challenge to FERC's new Return methodology, the customers challenged FERC's
determination that it could not order a refund for the second complaint's refund period.
But to the extent that any of that argument survives our earlier rejection of the customers'
statutory basis for their 'irrebuttable presumption' argument, *see* Part III.C.3, we decline
to opine on the customers' argument because we have already granted their petition to
vacate FERC's rate orders.").

[100] *See* Opinion No. 569-B, 173 FERC ¶ 61,159 at PP 169-82; Opinion No. 569-A,
171 FERC ¶ 61,154 at PP 260-67; Opinion No. 569, 169 FERC ¶ 61,129 at PP 566-73.

Document Accession #: 20241017-3039          Filed Date: 10/17/2024
Docket Nos. EL14-12-016 and EL15-45-015                                    - 23 -

The Commission orders:

      (A)    The Commission hereby modifies the vacated and remanded Opinion No. 569, *et seq.*, as discussed in the body of this order.

      (B)    MISO TOs' base ROE is set at 9.98%, with a total or maximum ROE including incentives not to exceed 12.58%, effective as of September 28, 2016, as discussed in the body of this order.

      (C)    MISO and MISO TOs are directed to provide refunds, with interest calculated pursuant to 18 C.F.R. § 35.19a (2024), by December 1, 2025, for the 15-month refund period for the First Complaint from November 12, 2013, through February 11, 2015, and for the period from September 28, 2016, to the date of this order, as discussed in the body of this order.

      (D)    MISO and MISO TOs are directed to file a refund report detailing the principal amounts plus interest paid to each of their customers by December 1, 2025.

By the Commission.  Commissioner Chang is not participating.

( S E A L )

Debbie-Anne A. Reese,
Secretary.

Docket Nos. EL14-12-016 and EL15-45-015                                    - 24 -

## Appendix I:  DCF Results

## First Complaint DCF Results

| Line | Company | Unadjusted Dividend Yield | Short-Term Yahoo! Finance | Long-Term GDP | Composite Growth | Dividend Yield Adjustment One-Step | Adjusted Dividend Yield | DCF Results |
|---|---|---|---|---|---|---|---|---|
| 1 | Consolidated Edison, Inc. | 4.14% | 2.38% | 4.39% | 2.78% | 101.19% | 4.19% | 6.97% |
| 2 | Public Service Enterprise Group | 3.74% | 2.95% | 4.39% | 3.24% | 101.48% | 3.80% | 7.03% |
| 3 | PPL Corporation | 4.39% | 2.23% | 4.39% | 2.66% | 101.12% | 4.44% | 7.10% |
| 4 | CenterPoint Energy, Inc. | 4.69% | 1.91% | 4.39% | 2.41% | 100.96% | 4.73% | 7.14% |
| 5 | IDACORP Inc. | 3.04% | 4.00% | 4.39% | 4.08% | 102.00% | 3.10% | 7.18% |
| 6 | OGE Energy Corp. | 3.09% | 4.00% | 4.39% | 4.08% | 102.00% | 3.15% | 7.23% |
| 7 | Westar Energy Inc. | 3.74% | 3.40% | 4.39% | 3.60% | 101.70% | 3.80% | 7.40% |
| 8 | Portland General Electric Co. | 3.11% | 4.70% | 4.39% | 4.64% | 102.35% | 3.18% | 7.82% |
| 9 | DTE Energy Co. | 3.38% | 4.51% | 4.39% | 4.49% | 102.26% | 3.46% | 7.94% |
| 10 | PG&E Corp. | 3.39% | 4.71% | 4.39% | 4.65% | 102.36% | 3.47% | 8.12% |
| 11 | The Southern Co. | 4.62% | 3.32% | 4.39% | 3.53% | 101.66% | 4.70% | 8.23% |
| 12 | SCANA Corp. | 3.91% | 4.30% | 4.39% | 4.32% | 102.15% | 3.99% | 8.31% |
| 13 | Xcel Energy Inc. | 3.68% | 4.69% | 4.39% | 4.63% | 102.35% | 3.77% | 8.40% |
| 14 | NorthWestern Corp. | 3.60% | 5.00% | 4.39% | 4.88% | 102.50% | 3.69% | 8.57% |
| 15 | Duke Energy Corp. | 4.05% | 4.49% | 4.39% | 4.47% | 102.25% | 4.14% | 8.61% |
| 16 | American Electric Power Co. Inc. | 3.68% | 5.08% | 4.39% | 4.94% | 102.54% | 3.77% | 8.72% |
| 17 | Vectren Corp. | 3.46% | 5.50% | 4.39% | 5.28% | 102.75% | 3.56% | 8.83% |
| 18 | Alliant Energy Corp. | 3.50% | 5.45% | 4.39% | 5.24% | 102.73% | 3.60% | 8.83% |

Document Accession #: 20241017-3039   Filed Date: 10/17/2024

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 19 | Avista Corp. | 3.93% | 5.00% | 4.39% | 4.88% | 102.50% | 4.03% | 8.91% |
| 20 | NextEra Energy, Inc. | 2.94% | 6.27% | 4.39% | 5.89% | 103.14% | 3.03% | 8.93% |
| 21 | Pinnacle West Capital Corp. | 3.74% | 5.30% | 4.39% | 5.12% | 102.65% | 3.84% | 8.96% |
| 22 | Empire District Electric Co. | 4.12% | 5.00% | 4.39% | 4.88% | 102.50% | 4.22% | 9.10% |
| 23 | Dominion Resources, Inc. | 3.58% | 5.89% | 4.39% | 5.59% | 102.95% | 3.69% | 9.28% |
| 24 | Eversource Energy (Northeast Utilities) | 3.27% | 6.60% | 4.39% | 6.16% | 103.30% | 3.38% | 9.54% |
| 25 | Ameren Corp. | 3.91% | 5.85% | 4.39% | 5.56% | 102.93% | 4.02% | 9.58% |
| 26 | El Paso Electric Co. | 3.01% | 7.00% | 4.39% | 6.48% | 103.50% | 3.12% | 9.59% |
| 27 | ALLETE Inc. | 3.85% | 6.00% | 4.39% | 5.68% | 103.00% | 3.97% | 9.64% |
| 28 | CMS Energy Corp. | 3.35% | 6.73% | 4.39% | 6.26% | 103.37% | 3.46% | 9.72% |
| 29 | Great Plains Energy, Inc. | 3.65% | 6.37% | 4.39% | 5.97% | 103.19% | 3.77% | 9.74% |
| 30 | Otter Tail Corp. | 4.06% | 6.00% | 4.39% | 5.68% | 103.00% | 4.18% | 9.86% |
| 31 | Black Hills Corp. | 3.28% | 7.00% | 4.39% | 6.48% | 103.50% | 3.39% | 9.87% |
| 32 | Sempra Energy | 2.59% | 7.93% | 4.39% | 7.22% | 103.97% | 2.69% | 9.91% |
| 33 | Exelon | 3.64% | 6.81% | 4.39% | 6.33% | 103.41% | 3.76% | 10.09% |
| 34 | PNM Resources | 2.85% | 8.56% | 4.39% | 7.73% | 104.28% | 2.97% | 10.70% |
| 35 | UIL Holdings | 3.59% | 7.79% | 4.39% | 7.11% | 103.90% | 3.73% | 10.84% |
| 36 | TECO Energy | 4.61% | 7.68% | 4.39% | 7.02% | 103.84% | 4.79% | 11.81% |
| 37 | ITC Holdings Corp. | 1.76% | 11.66% | 4.39% | 10.21% | 105.83% | 1.86% | 12.07% |
| 38 | Unitil Corp. | Merger | | | | | | |
| 39 | MGE Energy | Merger | | | | | | |
| 40 | Edison International | 2.66% | 0.37% | 4.39% | 1.17% | 100.19% | 2.66% | 4.38% |
| 41 | FirstEnergy Corp. | 3.97% | -0.64% | 4.39% | 0.37% | 99.68% | 3.96% | 5.01% |
| 42 | Entergy Corp. | 4.21% | -0.48% | 4.39% | 0.49% | 99.76% | 4.20% | 5.36% |

| | |
|---|---|
| Moodys Baa Utility Bonds | 4.65% |
| Low With Outlier Test | 6.97% |
| High | 12.07% |

Document Accession #: 20241017-3039    Filed Date: 10/17/2024
Docket Nos. EL14-12-016 and EL15-45-015                                                    - 26 -

| | |
|---|---|
| Midpoint | 9.52% |
| Low-End Outlier Test | 6.47% |
| High-End Outlier Test | 17.67% |
| Mean | 8.93% |

Document Accession #: 20241017-3039    Filed Date: 10/17/2024

**Second Complaint DCF Results**

| Line | Company | Unadjusted Dividend Yield | Short-Term Yahoo! Finance | Long-Term GDP | Composite | Dividend Yield Adjustment One-Step | Adjusted Dividend Yield | DCF Results |
|---|---|---|---|---|---|---|---|---|
| 1 | Consol. Edison, Inc. | 4.08% | 2.95% | 4.35% | 3.23% | 101.48% | 4.14% | 7.37% |
| 2 | Westar Energy Inc. | 3.70% | 3.50% | 4.35% | 3.67% | 101.75% | 3.76% | 7.43% |
| 3 | Portland General Electric Co. | 3.33% | 4.11% | 4.35% | 4.16% | 102.06% | 3.40% | 7.56% |
| 4 | Vectren Corp. | 3.10% | 5.00% | 4.35% | 4.87% | 102.50% | 3.18% | 8.05% |
| 5 | Amer. Elec. Power Co., Inc. | 3.84% | 4.47% | 4.35% | 4.45% | 102.24% | 3.93% | 8.37% |
| 6 | Xcel Energy, Inc. | 3.68% | 4.68% | 4.35% | 4.61% | 102.34% | 3.77% | 8.38% |
| 7 | SCANA Corp. | 3.90% | 4.45% | 4.35% | 4.43% | 102.23% | 3.99% | 8.42% |
| 8 | PPL Corp. | 4.67% | 3.74% | 4.35% | 3.86% | 101.87% | 4.76% | 8.62% |
| 9 | Great Plains Energy | 3.83% | 4.80% | 4.35% | 4.71% | 102.40% | 3.92% | 8.63% |
| 10 | DTE Energy Co. | 3.75% | 5.00% | 4.35% | 4.87% | 102.50% | 3.84% | 8.71% |
| 11 | Pinnacle West Capital Corp. | 3.92% | 4.95% | 4.35% | 4.83% | 102.48% | 4.02% | 8.85% |
| 12 | Avista Corp. | 3.98% | 5.00% | 4.35% | 4.87% | 102.50% | 4.08% | 8.95% |
| 13 | Dominion Resources, Inc. | 3.72% | 5.49% | 4.35% | 5.26% | 102.75% | 3.82% | 9.08% |
| 14 | PG&E Corp. | 3.50% | 5.80% | 4.35% | 5.51% | 102.90% | 3.60% | 9.11% |
| 15 | Alliant Energy | 3.72% | 5.55% | 4.35% | 5.31% | 102.78% | 3.82% | 9.13% |
| 16 | ALLETE, Inc. | 4.16% | 5.00% | 4.35% | 4.87% | 102.50% | 4.26% | 9.13% |
| 17 | Eversource Energy | 3.39% | 6.57% | 4.35% | 6.13% | 103.29% | 3.50% | 9.63% |
| 18 | CMS Energy Corp. | 3.36% | 6.72% | 4.35% | 6.25% | 103.36% | 3.47% | 9.72% |
| 19 | Ameren Corporation | 3.96% | 6.00% | 4.35% | 5.67% | 103.00% | 4.08% | 9.75% |
| 20 | El Paso Elec. Co. | 3.20% | 7.00% | 4.35% | 6.47% | 103.50% | 3.31% | 9.78% |
| 21 | Otter Tail Corp. | 4.05% | 6.00% | 4.35% | 5.67% | 103.00% | 4.17% | 9.84% |
| 22 | NorthWestern Corp. | 3.61% | 6.81% | 4.35% | 6.32% | 103.41% | 3.73% | 10.05% |
| 23 | WEC Energy Group, Inc. | 3.58% | 7.55% | 4.35% | 6.91% | 103.78% | 3.72% | 10.63% |
| 24 | Sempra Energy | 2.84% | 9.35% | 4.35% | 8.35% | 104.68% | 2.97% | 11.32% |
| 25 | PNM Resources, Inc. | 2.92% | 9.30% | 4.35% | 8.31% | 104.65% | 3.06% | 11.37% |
| 27 | IDACORP, Inc. | 3.03% | 4.00% | 4.35% | 4.07% | 102.00% | 3.09% | 7.16% |
| 26 | CenterPoint Energy, Inc. | 5.47% | 0.40% | 4.35% | 1.19% | 100.20% | 5.48% | 6.67% |
| 28 | OGE Energy Corp. | 3.81% | 2.17% | 4.35% | 2.61% | 101.09% | 3.85% | 6.46% |
| 29 | Public Service Enterprise Group | 3.85% | 1.38% | 4.35% | 1.97% | 100.69% | 3.88% | 6.28% |

Document Accession #: 20241017-3039     Filed Date: 10/17/2024

| | | | | | | | | |
|----|---------------------|--------|--------|-------|-------|--------|-------|-------|
| 30 | FirstEnergy Corp. | 4.51% | -0.92% | 4.35% | 0.13% | 99.54% | 4.49% | 5.38% |
| 31 | Edison International | 2.85% | -0.51% | 4.35% | 0.46% | 99.75% | 2.84% | 3.92% |
| 32 | Black Hills Corp. | Merger | | | | | | |
| 33 | Cleco Corp. | Merger | | | | | | |
| 34 | Duke Enegy Corp. | Merger | | | | | | |
| 35 | Empire District | Merger | | | | | | |
| 36 | Exelon Corp. | Merger | | | | | | |
| 37 | Hawaii Elec. Ind. Inc. | Merger | | | | | | |
| 38 | ITC Holdings | Merger | | | | | | |
| 39 | NextEra Energy Inc. | Merger | | | | | | |
| 40 | Pepco Holdings Inc. | Merger | | | | | | |
| 41 | Souther Co. | Merger | | | | | | |
| 42 | TECO Energy Inc. | Merger | | | | | | |
| 43 | UIL Energy | Merger | | | | | | |

| | |
|--------------------------|--------|
| Moodys Baa Utility Bonds | 5.41% |
| Low With Outlier Test | 7.37% |
| High | 11.37% |
| Midpoint | 9.37% |
| High-End Outlier Test | 17.43% |
| Low-End Outlier Test | 7.18% |

## Appendix II:  Overall Results

| First Complaint | Zone of Reasonableness | | Lower Third | | Middle Third | | Upper Third | |
|---|---|---|---|---|---|---|---|---|
| | Lower | Upper | Lower | Upper | Lower | Upper | Lower | Upper |
| DCF (1) | 6.97% | 12.07% | 6.97% | 8.67% | 8.67% | 10.37% | 10.37% | 12.07% |
| CAPM (2) | 7.80% | 13.09% | 7.80% | 9.56% | 9.56% | 11.33% | 11.33% | 13.09% |
| Average | 7.39% | 12.58% | 7.39% | 9.12% | 9.12% | 10.85% | 10.85% | 12.58% |
| Midpoint | **9.98%** | | | | | | | |

| Second Complaint | Zone of Reasonableness | | Lower Third | | Middle Third | | Upper Third | |
|---|---|---|---|---|---|---|---|---|
| | Lower | Upper | Lower | Upper | Lower | Upper | Lower | Upper |
| DCF (3) | 7.37% | 11.37% | 7.37% | 8.70% | 8.70% | 10.03% | 10.03% | 11.37% |
| CAPM (4) | 8.35% | 12.63% | 8.35% | 9.78% | 9.78% | 11.21% | 11.21% | 12.63% |
| Average | 7.86% | 12.00% | 7.86% | 9.24% | 9.24% | 10.62% | 10.62% | 12.00% |
| Midpoint | **9.93%** | | | | | | | |

(1) Appendix I.

(2) Trial Staff Initial Br. (I), Attachment A to App. 2 at 6.

(3) Appendix I.

(4) Trial Staff Initial Br. (II), Attachment A to App. 2 at 6.

Document Accession #: 20241017-3039        Filed Date: 10/17/2024

Document Content(s)

EL14-12-016.docx...................................................................1

189 FERC ¶ 62,128
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Association of Businesses Advocating Tariff Equity          Docket Nos.  EL14-12-017
Coalition of MISO Transmission Customers
Illinois Industrial Energy Consumers
Indiana Industrial Energy Consumers, Inc.
Minnesota Large Industrial Group
Wisconsin Industrial Energy Group

                                    v.

Midcontinent Independent System Operator, Inc.
ALLETE, Inc.
Ameren Illinois Company
Ameren Missouri
Ameren Transmission Company of Illinois
American Transmission Company LLC
Cleco Power LLC
Duke Energy Business Services, LLC
Entergy Arkansas, Inc.
Entergy Gulf States Louisiana, LLC
Entergy Louisiana, LLC
Entergy Mississippi, Inc.
Entergy New Orleans, Inc.
Entergy Texas, Inc.
Indianapolis Power & Light Company
International Transmission Company
ITC Midwest LLC
Michigan Electric Transmission Company, LLC
MidAmerican Energy Company
Montana-Dakota Utilities Co.
Northern Indiana Public Service Company LLC
Northern States Power Company-Minnesota
Northern States Power Company-Wisconsin
Otter Tail Power Company
Southern Indiana Gas & Electric Company

Document Accession #: 20241219-3003    Filed Date: 12/19/2024

Arkansas Electric Cooperative Corporation                    EL15-45-016
Mississippi Delta Energy Agency
Clarksdale Public Utilities Commission
Public Service Commission of Yazoo City
Hoosier Energy Rural Electric Cooperative, Inc.


                    v.


ALLETE, Inc.
Ameren Illinois Company
Ameren Missouri
Ameren Transmission Company of Illinois
American Transmission Company LLC
Cleco Power LLC
Duke Energy Business Services, LLC
Entergy Arkansas, Inc.
Entergy Gulf States Louisiana, LLC
Entergy Louisiana, LLC
Entergy Mississippi, Inc.
Entergy New Orleans, Inc.
Entergy Texas, Inc.
Indianapolis Power & Light Company
International Transmission Company
ITC Midwest LLC
Michigan Electric Transmission Company, LLC
MidAmerican Energy Company
Montana-Dakota Utilities Co.
Northern Indiana Public Service Company LLC
Northern States Power Company-Minnesota
Northern States Power Company-Wisconsin
Otter Tail Power Company
Southern Indiana Gas & Electric Company


NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION


(December 19, 2024)


Rehearing has been timely requested of the Commission's order issued on
October 17, 2024, in this proceeding.  *Ass'n of Bus. Advocating Tariff Equity v.*
*Midcontinent Indep. Sys. Operator, Inc.*, 189 FERC ¶ 61,036 (2024).  In the absence of
Commission action on a request for rehearing within 30 days from the date it is filed, the

Document Accession #: 20241219-3003          Filed Date: 12/19/2024
Docket Nos. EL14-12-017 and EL15-45-016                                          -2-

request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2024); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the requests for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Secretary.

Document Accession #: 20241219-3003     Filed Date: 12/19/2024

Document Content(s)

EL14-12-017.docx...................................................................1