**ORAL ARGUMENT NOT YET SCHEDULED**

## Nos. 25-1045, 25-1066, 25-1069, 25-1115, 25-1124, 25-1126

———————————————

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

MISO TRANSMISSION OWNERS *et al.*,

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

———————————————

On Petition for Review

---

## BRIEF FOR *AMICI CURIAE* IN SUPPORT OF
## THE TRANSMISSION OWNER PETITIONERS

---

*Counsel for Amici Curiae listed on inside cover*

August 21, 2025

**New England Power Company d/b/a National Grid**

Sean A. Atkins
Nicholas J. Cicale
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
(202) 973-4200
seanatkins@dwt.com
nicholascicale@dwt.com

Daniel Galaburda
National Grid
40 Sylvan Road
Waltham, MA 02451-1120
(781) 907-1847
daniel.galaburda@nationalgrid.com


**Central Maine Power Company and The United Illuminating Company**

Catherine McCarthy
Bracewell LLP
2001 M Street, NW
Washington, DC 20036
(202) 828-5839
cathy.mccarthy@bracewell.com


**New Hampshire Transmission, LLC**

Travis M. Contratto
NextEra Energy, Inc.
801 Pennsylvania Ave., NW Suite 220
Washington, DC 20004
(202) 904-5928
travis.contratto@nee.com

**Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire**

Richard L. Roberts (*Counsel of Record*)
Shaun M. Boedicker
Karen Bruni
Michelle L. Castaline
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6756
rroberts@steptoe.com
sboedicker@steptoe.com
kbruni@steptoe.com
mcastaline@steptoe.com

Mary E. Grover
Colin Francis
Eversource Energy Service Company
247 Station Drive, SE100
Westwood, MA 02090
(781) 441-8696
mary.grover@eversource.com
colin.francis@eversource.com


**Vermont Transco, LLC**

S. Mark Sciarrotta
Vermont Electric Power Company, Inc., as Manager of Vermont Transco LLC
366 Pinnacle Ridge Road
Rutland, VT 05701
(802) 282-3812
msciarrotta@velco.com

**The Narragansett Electric Company d/b/a Rhode Island Energy**

Steven M. Nadel
PPL Services Corp.
645 Hamilton Street, Suite 601
Allentown, PA 18101
(610) 774-4775
SMNadel@pplweb.com

William M. Keyser
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8186
wkeyser@steptoe.com

**Unitil Energy Systems, Inc. and Fitchburg Gas and Electric Light Company**

Patrick H. Taylor
Unitil Service Corp.
6 Liberty Lane West
Hampton, NH 03842
(603) 773-6544
taylorp@unitil.com

**Versant Power (f/k/a Emera Maine)**

Jeffrey M. Jakubiak
Melinda Warner
Vinson & Elkins LLP
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
(212) 237-0082
jjakubiak@velaw.com
mwarner@velaw.com

Arielle Silver Karsh
Versant Power
970 Illinois Avenue
Bangor, ME 04401
(207) 973-2890
Arielle.Silverkarsh@versantpower.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1)(A), counsel for *Amici Curiae* hereby certify the following as to parties, rulings, and related cases:

### Parties and *Amici*

All parties, intervenors, and *amici* appearing in this Court are listed in the Joint Brief of Petitioners, the Transmission Owner Petitioners.

### Rulings Under Review

In Case Nos. 25-1045, 25-1066, and 25-1069:

(1) *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Order on Remand, Docket Nos. EL14-12-016 & EL15-45-015, 189 FERC ¶ 61,036 (Oct. 17, 2024) ("Remand Order") (R. 681, JA____-JA____); and

(2) *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket Nos. EL14-12-017 & EL15-45-016, 189 FERC ¶ 62,128 (Dec. 19, 2024) (R. 690, JA____-JA____).

In Case Nos. 25-1115, 25-1124, and 25-1126:

(3) *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Order Addressing Arguments Raised on Rehearing, Docket Nos. EL14-12-017 & EL15-45-016, 190 FERC ¶ 61,184 (Mar. 25, 2025) ("Rehearing Order") (R. 696, JA____).

### Related Cases

*Amici* are not aware of any pending cases related to the current consolidated cases.

-iv-

Dated:  August 21, 2025

Respectfully submitted,

*/s/ Richard L. Roberts*
Richard L. Roberts
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-6756
rroberts@steptoe.com

*Attorney for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire, on behalf of Amici Curiae*

-v-

# CORPORATE DISCLOSURE STATEMENTS

## <u>Corporate Disclosure Statement of Eversource Energy Service Company</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Eversource Energy Service Company ("Eversource Service"), on behalf of *Amici* The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire, discloses the following:

Eversource Service is a wholly-owned service company subsidiary of Eversource Energy ("Eversource"), a registered holding company under the Public Utility Holding Company Act of 1935, 15 U.S.C § 79a, *et seq*. The common shares of Eversource are publicly held. Eversource, through its named subsidiaries, provides electric transmission and distribution services and engages in wholesale and retail sales of electric energy.

Eversource Service provides management and professional services to the subsidiaries of Eversource. In this proceeding, Eversource Service is acting on behalf of its electric utility company affiliates, which are: The Connecticut Light and Power Company, Public Service Company of New Hampshire, and NSTAR Electric Company (the "Eversource Companies").

The Eversource Companies are electric transmission owners in New England and provide electric transmission services pursuant to the rates, terms and conditions

-vi-

of the ISO New England Inc. Transmission, Markets and Services Tariff.  The

Eversource Companies are wholly-owned subsidiaries of Eversource.  Two of the

Eversource Companies, The Connecticut Light and Power Company and NSTAR

Electric Company, have issued preferred stock to the public.  The common shares of

Eversource are traded on the New York Stock Exchange under the symbol "ES."

Mutual funds managed by The Vanguard Group, Inc. and BlackRock, Inc. own

greater than 10% of Eversource's common shares.

Respectfully submitted,

*/s/ Mary E. Grover*
Mary E. Grover
Eversource Energy Service Company
247 Station Drive, SE100
Westwood, MA 02090
(781) 441-8696
mary.grover@eversource.com

*Attorney for Eversource Energy Service
Company on behalf of The Connecticut
Light and Power Company, NSTAR Electric
Company, and Public Service Company of*
Dated:  August 21, 2025                     *New Hampshire*

## **Corporate Disclosure Statement of New England Power Company**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Amicus New England Power Company d/b/a National Grid discloses the following:

All of the outstanding shares of common stock of New England Power Company are owned by National Grid USA. Relevant to this proceeding, National Grid USA, through its subsidiaries, provides transmission, distribution, and generation services and engages in wholesale and retail sales of electric energy. National Grid USA, through its subsidiaries, is a transmission owner in New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

All of the outstanding shares of common stock of National Grid USA are owned by National Grid North America Inc. All of the outstanding shares of common stock of National Grid North America Inc. are owned by National Grid (US) Partner 1 Limited. All of the outstanding ordinary shares of National Grid (US) Partner 1 Limited are owned by National Grid (US) Investments 4 Limited. All of the outstanding ordinary shares of National Grid (US) Investments 4 Limited are owned by National Grid (US) Holdings Limited. All of the outstanding ordinary shares of National Grid (US) Holdings Limited are owned by National Grid plc. National Grid plc is a public limited company organized under the laws of England

and Wales, with ordinary shares listed on the London Stock Exchange, and American Depositary Shares listed on the New York Stock Exchange.

Respectfully submitted,

*/s/ Daniel Galaburda*
Daniel Galaburda
National Grid
170 Data Drive
Waltham, MA 02451
(781) 907-1847
daniel.galaburda@nationalgrid.com

*Attorney for New England Power Company*

Dated:  August 21, 2025

## <u>Corporate Disclosure Statement of Central Maine Power Company and<br>The United Illuminating Company</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, *Amici* Central Maine Power Company ("CMP") and The United Illuminating Company ("UI") disclose the following:

CMP is a Maine corporation primarily engaged in the transmission and distribution of electricity generated by others to approximately 664,000 customers in central and southern Maine. CMP is a transmission owner in New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Inc. Open Access Transmission Tariff ("ISO-NE OATT").

UI is a specially chartered Connecticut corporation. UI is engaged in the purchase, transmission, distribution and sale of electricity and related services to approximately 345,000 residential, commercial, and industrial customers in the greater New Haven and Bridgeport areas of Connecticut. In addition, UI owns a 50% interest in an entity which indirectly owns two peaking generating plants. UI is a transmission owner in New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO-NE OATT.

CMP is a direct and wholly-owned subsidiary of CMP Group, Inc., a Maine corporation, which, in turn, is a direct and wholly-owned subsidiary of Avangrid Networks, Inc. ("Avangrid Networks"). Avangrid Networks, a Maine corporation, is a direct and wholly-owned subsidiary of Avangrid, Inc., ("Avangrid") a New York

corporation.   UI is a wholly-owned subsidiary of UIL Holdings Corporation, a Connecticut corporation, which, in turn, is a direct and wholly-owned subsidiary of Avangrid Networks.   Avangrid is wholly-owned subsidiary of Iberdrola, S.A. ("Iberdrola").   Iberdrola is publicly traded on the Madrid Stock Exchange.   No publicly-held company has a ten percent or greater ownership interest in Iberdrola.

Respectfully submitted,

*/s/ Catherine McCarthy*
Catherine McCarthy
Bracewell LLP
2001 M Street, NW
Washington, DC 20036
(202) 828-5839
cathy.mccarthy@bracewell.com

*Attorney for Central Maine Power Company and The United Illuminating Company*

Dated:  August 21, 2025

**<u>Corporate Disclosure Statement of The Narragansett Electric Company</u>**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Amicus The Narragansett Electric Company d/b/a Rhode Island Energy ("RIE") discloses the following:

RIE provides electric transmission and distribution service and natural gas distribution service to more than 770,000 customers throughout the State of Rhode Island. RIE is a transmission owning member of ISO New England Inc. ("ISO New England") and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

RIE is an indirect wholly owned subsidiary of PPL Corporation, whose shares are publicly traded. The Vanguard Group has a 10% or greater ownership interest in PPL Corporation. No other publicly held company has a 10% or greater ownership interest in RIE or PPL Corporation.

Respectfully submitted,

*/s/ Steven M. Nadel*
Steven M. Nadel
PPL Services Corp.
645 Hamilton Street, Suite 601
Allentown, PA 18101
(610) 774-4775
SMNadel@pplweb.com

*Attorney for The Narragansett Electric Company d/b/a Rhode Island Energy*

Dated:  August 21, 2025

-xii-

**Corporate Disclosure Statement of Versant Power**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Amicus Versant Power (f/k/a Emera Maine) discloses the following:

Versant Power, a Maine corporation, is a direct subsidiary of BHE Holdings Inc., which holds all of its issued and outstanding common stock.[1] BHE Holdings Inc., in turn, is a direct wholly-owned subsidiary of ENMAX US Holdco Inc., which is a direct wholly-owned subsidiary of ENMAX Utility Holdco Inc., which is a directly wholly-owned subsidiary of ENMAX Corporation, a Calgary-based utility holding company that is wholly-owned by the City of Calgary, Alberta.

Versant Power provides electric transmission and distribution services in the State of Maine. In addition, Versant Power purchases limited amounts of electric energy from unaffiliated generating facilities that it resells into the markets operated by ISO New England Inc. ("ISO New England"). Versant Power is a transmission-owning member of ISO New England and provides electric transmission service pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

---

[1] A small amount of preferred shares of Versant Power, which convey voting rights, are held by unaffiliated third parties. These preferred shares constitute approximately 0.45 percent of the outstanding voting interests in Versant Power.

-xiii-

Respectfully submitted,

*/s/ Arielle Silver Karsh*
Arielle Silver Karsh
Versant Power
970 Illinois Avenue
Bangor, ME 04401
(207) 973-2890
Arielle.Silverkarsh@versantpower.com

*Attorney for Versant Power*

Dated:  August 21, 2025

-xiv-

## <u>Corporate Disclosure Statement of Vermont Transco LLC</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Amicus Vermont Transco LLC discloses the following:

Vermont Transco LLC is not publicly traded, has no parent corporation, and no publicly-held company owns more than 10 percent of it.

Respectfully submitted,

*/s/ S. Mark Sciarrotta*
S. Mark Sciarrotta
Vermont Electric Power Company, Inc., as
Manager of Vermont Transco LLC
366 Pinnacle Ridge Road
Rutland, VT 05701
(802) 282-3812
msciarrotta@velco.com

*Attorney for Vermont Transco LLC*

Date:  August 21, 2025

**<u>Corporate Disclosure Statement of Unitil Energy Systems, Inc.
and Fitchburg Gas and Electric Light Company</u>**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, *Amici* Fitchburg Gas and Electric Light Company ("Fitchburg") and Unitil Energy Systems, Inc. ("UES") disclose the following:

Fitchburg is a Massachusetts corporation which provides retail natural gas and electric service in the Fitchburg area of north central Massachusetts. Fitchburg is a transmission owner in New England and provides electric transmission services pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff. UES is a New Hampshire corporation which provides electric service in the southeastern seacoast and capital regions of New Hampshire. UES provides electric transmission services pursuant to the rates, terms and conditions of the ISO New England Transmission, Markets and Services Tariff.

Fitchburg and UES are wholly-owned subsidiaries of Unitil Corporation. Unitil Corporation is a registered holding company under the Public Utility Holding Company Act of 1935, 15 U.S.C § 79a, *et seq.*, incorporated under the laws of the State of New Hampshire. The common shares of Unitil Corporation are publicly held and listed on the New York Stock Exchange. There are no parent corporations or publicly-held companies that own a ten percent or greater ownership in Unitil Corporation.

Respectfully submitted,

*/s/ Patrick H. Taylor*
Patrick H. Taylor
Unitil Service Corp.
6 Liberty Lane West
Hampton, NH 03842
(603) 773-6544
taylorp@unitil.com

*Attorney for Unitil Energy Systems, Inc. and Fitchburg Gas & Electric Light Company*

Dated:  August 21, 2025

**Corporate Disclosure Statement of New Hampshire Transmission, LLC**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1 of this Court, Amicus New Hampshire Transmission, LLC ("NHT") discloses the following:

New Hampshire Transmission, LLC ("NHT") is a public utility located in Seabrook, New Hampshire. NHT owns regional transmission facilities that are under the operational control of ISO New England Inc. NHT is a direct, wholly-owned subsidiary of NextEra Energy Transmission, LLC, which in turn is a direct, wholly-owned subsidiary of NextEra Infrastructure, LLC, which is a direct, wholly-owned subsidiary of NextEra Energy Capital Holdings, Inc. NextEra Energy Capital Holdings, Inc. is a wholly-owned subsidiary of NextEra Energy, Inc. ("NextEra"). NextEra is a publicly-held company with shares listed on the New York Stock Exchange.

While not publicly held, The Vanguard Group, Inc. ("Vanguard") reported that, as of the end of Q2 2025, its family of funds held 10.78% of NextEra's outstanding voting securities, making it NextEra's ultimate upstream affiliate. *See The Vanguard Group, Inc.*, Quarterly Compliance Filing for Q2 2025, Docket No. EC19-57 (Aug. 6, 2025).

Respectfully submitted,

*/s/ Travis M. Contratto*
Travis M. Contratto
NextEra Energy, Inc.
801 Pennsylvania Ave., NW Suite 220
Washington, DC 20004
(202) 904-5928
travis.contratto@nee.com

*Attorney for New Hampshire Transmission, LLC*

Dated:  August 21, 2025

# TABLE OF CONTENTS

*Page*

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........... iv

CORPORATE DISCLOSURE STATEMENTS ....................................................... vi

TABLE OF AUTHORITIES ................................................................... xxi

GLOSSARY ................................................................................ xxiv

INTRODUCTION ................................................................................1

INTEREST OF *AMICI* ........................................................................4

ARGUMENT ...................................................................................6

    I.      FERC Exceeded its Statutory Authority by Requiring the Transmission Owner Petitioners to Pay Refunds for the Period beginning September 2016. ...................................................6

           A.    Section 206 of the FPA Prohibits FERC from Imposing Retroactive Relief Other than for a Fifteen-Month Refund Period. ...................................................7

           B.    FERC's Order that Refunds Be Paid Back to September 28, 2016 Based on the Fiction that the 9.98% ROE Was Fixed on, and Is Effective as of, that Date Nullifies the Sequential Two-Step Structure of Section 206 .......................12

           C.    FPA Section 309 and FERC's Use of the Legal Error Doctrine Cannot Overcome Section 206's Express Limitations. ...................................................17

    II.    FERC'S Failure to Dismiss "Pancaked" ROE Complaints Circumvents the STRICT Fifteen-Month Refund Period in Section 206(b) and Is Contrary to Sound Administrative Practice and Precedent. ...................................................22

CONCLUSION ................................................................................27

CERTIFICATE OF COMPLIANCE ............................................................. i

CERTIFICATE OF SERVICE ................................................................. ii

-xx-

# TABLE OF AUTHORITIES

*Page(s)*

**Federal Cases**

*Allegheny Def. Project v. FERC*,
964 F.3d 1 (D.C. Cir. 2020)............................................................................23

*Atlantic City Electric Co. v. FERC*,
295 F.3d 1 (D.C. Cir. 2002)......................................................................10, 11

*City of Anaheim v. FERC*,
558 F.3d 521 (D.C. Cir. 2009)..............................................................6, 11, 15

*Electrical District No. 1 v. FERC*,
774 F.2d 490 (D.C. Cir. 1985)..................................................................13, 15

*Emera Maine v. FERC*,
854 F.3d 9 (D.C. Cir. 2017)................................. 1, 2, 3, 4, 6, 12, 13, 14, 15, 21

*Exxon Mobil Corp. v. FERC*,
571 F.3d 1208 (D.C. Cir. 2009)..............................................................1, 7, 18

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)........................................................................................11

*MISO Transmission Owners v. FERC*,
45 F.4th 248 (D.C. Cir. 2022).........................................................1, 6, 7, 19, 23

*New England Power Co. v. FPC*,
467 F.2d 425 (D.C. Cir. 1972)........................................................................17

*Niagara Mohawk Power Corp. v. FPC*,
379 F.2d 153 (D.C. Cir. 1967)........................................................................17

*Okla. Gas & Elec. Co. v. FERC*,
11 F.4th 821 (D.C. Cir. 2021)........................................................................18

*Pac. Gas & Elec. Co. v. FERC*,
113 F.4th 943 (D.C. Cir. 2024).......................................................................11

*Pub. Utils. Comm'n of State of Cal. v. FERC*,
988 F.2d 154 (D.C. Cir. 1993)................................................................17, 18, 20

*TNA Merch. Projects, Inc. v. FERC*,
857 F.3d 354 (D.C. Cir. 2017).........................................................................18

*Towns of Concord, Norwood & Wellesley v. FERC*,
955 F.2d 67 (D.C. Cir. 1992)........................................................................6, 15

*Verso Corp. v. FERC*,
898 F.3d 1 (D.C. Cir. 2018)........................................................................17, 18

*Vill. of Morrisville v. FERC*,
136 F.4th 1117 (D.C. Cir. 2025).......................................................................11

**FERC Administrative Cases**

*Allegheny Elec. Coop., Inc. v. Niagara Mohawk Power Corp.*,
58 FERC ¶ 61,096 (1992)..........................................................................10, 25

*Ariz. Pub. Serv. Co.*,
Opinion No. 137, 18 FERC ¶ 61,197 (1982)......................................................15

*Ariz. Pub. Serv. Co.*,
Order on Remand, 26 FERC ¶ 61,087 (1984) ....................................................15

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys.
Operator, Inc.*,
Order Directing Briefs, 165 FERC ¶ 61,118 (2018) ...........................................20

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys.
Operator, Inc.*,
Order on Remand, 189 FERC ¶ 61,036 (2024) ..................................................21

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys.
Operator, Inc.*,
Order on Rehearing, 190 FERC ¶ 61,184 (2025) ......................12, 13, 14, 16, 17

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys.
Operator, Inc.*,
Opinion No. 569, 169 FERC ¶ 61,129 (2019)..............................................20, 21

*Coakley v. Bangor Hydro-Elec. Co.*,
   Opinion No. 531-A, 149 FERC ¶ 61,032 (2014)....................................................21

*Consumer Advocate Div. of Pub. Serv. Comm'n of W. Va. v. Allegheny
   Generating Co.*,
   67 FERC ¶ 61,288, *order on reh'g*, 68 FERC ¶ 61,207 (1994) .........................26

*EPIC Merch. Energy NJ/PA, L.P. v. PJM Interconnection, L.L.C.*,
   136 FERC ¶ 61,041 (2011)...................................................................................26

*ISO New England Inc. v. Bangor Hydro-Elec. Co.*,
   Order Rejecting Compliance Filing, 161 FERC ¶ 61,031 (2017) ..................4, 16

*S. Co. Servs., Inc.*,
   68 FERC ¶ 61,231 (1994)......................................................................................26

*San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Servs.*,
   128 FERC ¶ 61,004 (2009).....................................................................................24

## Legislative History

133 Cong. Rec. H9029 (daily ed. Oct. 27, 1987) ......................................................8

H.R. Rep. No. 100-384 (1987)...................................................................................9

*Regulatory Fairness Act: Hearings on S. 1567 and H.R. 2858 Before the
   S. Comm. on Energy & Nat. Res.*, 100th Cong. (1988)....................................8, 9

S. Rep. No. 100-491 (1988) .................................................................................8, 10

## Federal Statutes

Federal Power Act
   16 U.S.C. § 824e(a) ..............................................................................................6
   16 U.S.C. § 824e(b) .........................................................6, 7, 13, 16, 22, 23

# GLOSSARY

| Abbreviation/ Term | Definition |
|---|---|
| FERC | Respondent Federal Energy Regulatory Commission |
| FPA | Federal Power Act |
| MISO Briefing Order | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc*., 165 FERC ¶ 61,118 (Nov. 15, 2018) (R. 525, JA____-JA____) |
| MISO Transmission Owners | Petitioners ALLETE, Inc., for its operating division Minnesota Power (and its subsidiary Superior Water, L&P); Ameren Services Company, as agent for Union Electric Company d/b/a Ameren Missouri, Ameren Illinois Company d/b/a Ameren Illinois, and Ameren Transmission Company of Illinois (collectively, "Ameren"); American Transmission Company LLC; Cleco Power LLC; Duke Energy Business Services, LLC for Duke Energy Indiana, LLC; Entergy Arkansas, LLC; Entergy Louisiana, LLC; Entergy Mississippi, LLC; Entergy New Orleans, LLC; Entergy Texas, Inc.; Indianapolis Power & Light Company d/b/a AES Indiana; International Transmission Company d/b/a ITC*Transmission*; ITC Midwest LLC; Michigan Electric Transmission Company, LLC; MidAmerican Energy Company; Montana-Dakota Utilities Co.; Northern Indiana Public Service Company LLC; Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation, subsidiaries of Xcel Energy Inc.; Northwestern Wisconsin Electric Company; Otter Tail Power Company; Southern Indiana Gas & Electric Company (d/b/a CenterPoint Energy Indiana South); and Wolverine Power Supply Cooperative, Inc. |

| Abbreviation/ Term | Definition |
|---|---|
| New England Transmission Owners | *Amici* Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire; New England Power Company d/b/a National Grid; Central Maine Power Company and The United Illuminating Company; The Narragansett Electric Company d/b/a Rhode Island Energy; Unitil Energy Systems, Inc. and Fitchburg Gas and Electric Light Company; Vermont Transco, LLC; Versant Power (f/k/a Emera Maine); and New Hampshire Transmission LLC |
| Opinion No. 531 | *Coakley v. Bangor Hydro-Elec. Co.,* Opinion No. 531, 147 FERC ¶ 61,234 (June 19, 2014) |
| Opinion No. 531-A | *Coakley v. Bangor Hydro-Elec. Co.*, 149 FERC ¶ 61,032 (Oct. 16, 2014) |
| Opinion No. 531-B | *Coakley v. Bangor Hydro-Elec. Co.*, 150 FERC ¶ 61,165 (Mar. 3, 2015) |
| Opinion No. 551 | *Ass'n of Businesses Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 551, 156 FERC ¶ 61,234 (Sept. 28, 2016) (R. 466, JA____-JA____) |
| Opinion No. 569 | *Ass'n of Bus. Advocating Tariff Equity, v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569, Order on Briefs, Rehearing, and Initial Decision, Docket Nos. EL14-12-003 and EL15-45-000, 169 FERC ¶ 61,129 (Nov. 21, 2019) (R. 560, JA____-JA____) |
| Opinion No. 569-A | *Ass'n of Bus. Advocating Tariff Equity, v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569-A, Order on Rehearing, Docket Nos. EL14-12-004 and EL15-45-013, 171 FERC ¶ 61,154 (May 21, 2020) (R. 611, JA____-JA____) |

| Abbreviation/ Term | Definition |
|---|---|
| Opinion No. 569-B | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion No. 569-B, Order on Rehearing, Docket Nos. EL14-12-015 and EL15-45-014, 173 FERC ¶ 61,159 (Nov. 19, 2020) (R. 651, JA____-JA____) |
| Rehearing Order | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Order Addressing Arguments Raised on Rehearing, Docket Nos. EL14-12-017 and EL15-45-016, 190 FERC ¶ 61,184 (Mar. 25, 2025) (R. 696, JA____-JA____). |
| Remand Order | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Order on Remand, Docket Nos. EL14-12-016 and EL15-45-015, 189 FERC ¶ 61,036 (Oct. 17, 2024) (R. 681, JA____-JA____) |
| ROE | Return on equity |
| Transmission Owner Petitioners | Petitioners Ameren and the MISO Transmission Owners |

## INTRODUCTION

In *Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) ("*Emera Maine*"), this Court emphasized that "[o]nly *after* having made the determination that [a] utility's existing rate [is unjust and unreasonable] may [the Federal Energy Regulatory Commission ("FERC")] exercise its section 206 [of the Federal Power Act ("FPA")] authority to impose a new rate." *Id*. at 21 (alteration in original) (citations omitted). If FERC makes the determinations that section 206 requires, it may only "order a refund of overcharges paid during a limited [fifteen-month] time period that begins after the filing of a complaint." *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1212 (D.C. Cir. 2009) ("*Exxon Mobil*"); *see also MISO Transmission Owners v. FERC*, 45 F.4th 248, 262 (D.C. Cir. 2022) (citation omitted) (noting "the strict fifteen-month refund limit that Congress placed on Section 206 proceedings.").

The orders under review violate these fundamental principles. FERC held that a new return on equity ("ROE") should be effective as of September 28, 2016, even though FERC admitted it had not made a valid finding that the existing ROE is not just and reasonable under section 206 as of that date. The Commission further violated section 206 by ordering refunds for a period of more than eight years beyond the statutory fifteen-month refund period.

*Amici* (the "New England Transmission Owners") are transmission-owning public utilities that may face similar orders from FERC, which orders have sat on

-1-

pending complaints against the New England Transmission Owners' ROE for more than eight years after this Court's issuance of *Emera Maine*. The New England Transmission Owners submit this brief in support of the Transmission Owner Petitioners to provide the Court with additional context as to how FERC's orders violate section 206 of the FPA, and have led to unlawful refunds, protracted litigation, and uncertain rates for nearly a decade and a half. Two points bear emphasis.

*First*, FERC has no authority to require the Transmission Owner Petitioners to provide refunds for the eight-year period beginning September 2016. Section 206(b) grants FERC specific, limited authority to order retroactive refunds solely for a single fifteen-month period from the refund effective date. FERC ordered those refunds for the period from November 2013 through February 2015. Those are the only refunds permitted under the statute.

FERC's approach also exceeds its authority under section 206(a), which permits FERC to fix rates prospectively only *after* making a valid finding that the existing rate is unjust and unreasonable. In this case, FERC did not make a legally valid finding until after September 2016, meaning that the ROE it established cannot be effective from that date. Accepting FERC's theory would all but nullify this Court's findings in *Emera Maine*, which emphasized that the step one finding "is the condition precedent" for FERC to modify any ROE. *Emera Maine*, 854 F.3d at 25.

Indeed, FERC's error in applying retroactive refunds to the Transmission Owner Petitioners would be even more stark if FERC were to apply it to the New England Transmission Owners given that this Court expressly rejected and vacated FERC's finding that the New England Transmission Owners' rates were unjust and unreasonable. *See id.* at 27, 30.

Under FERC's reading of the statute, it can take an indefinite period to make the requisite section 206 finding using methods, analysis, and evidence from further proceedings and from a later date, backdate its finding and then require utilities to bear an open-ended refund obligation for that entire period. FERC has suggested it has comparable retroactive authority for a period back to October 2014 in the New England ROE cases. But FERC does not have the statutory authority to do that, and the Court should rule so.

*Second*, FERC's orders setting successive ROE complaints for hearing while the first complaint was pending violate section 206(b), are contrary to precedent recognizing the statutory limits of section 206, and are incompatible with sound administrative practice. The New England Transmission Owners' ROE has been the subject of four successive or "pancaked" FPA section 206 complaints that FERC improperly allowed to proceed, going back to September 2011. The burdensome, now years-frozen timeline of these four complaints in New England is distinct from

-3-

the timeline of the cases in this appeal, but that difference only highlights the danger

of accepting the (mis)interpretation of section 206 that FERC relies on here.

## **INTEREST OF *AMICI*[1]**

The New England Transmission Owners have spent nearly fifteen years

litigating the ROE component of their rates for electric transmission service under

the ISO New England Inc. Open Access Transmission Tariff in four "pancaked"

complaint proceedings.  The first complaint was lodged against the New England

Transmission Owners in 2011 and between 2012 and 2016, three additional

complaints were filed.  Not one of those complaints has been resolved.

In *Emera Maine*, this Court vacated and remanded FERC's order addressing

the first New England ROE complaint, finding that (among other things) FERC

"fail[ed] to satisfy its dual burden under section 206" and "acted arbitrarily and

outside    of    its    statutory    authority    in    setting    a    new    base    ROE"

for the New England Transmission Owners.  *Id.* 854 F.3d at 27.  More than eight

year later, FERC has not yet issued a substantive order on remand of *Emera Maine*

nor permitted the New England Transmission Owners to change the rate established

by the vacated order.  *See ISO New England Inc. v. Bangor Hydro-Elec. Co.*, Order

Rejecting Compliance Filing, 161 FERC ¶ 61,031 (2017) (requiring the New

---

[1] This brief was not authored in whole or part by counsel for a party.  No person or entity other than *amici curiae* or their counsel made a monetary contribution to preparation or submission of this brief.

England Transmission Owners to continue to charge a base ROE that the Court vacated in *Emera Maine*). The FERC orders currently before the Court addressing the merits of two pancaked section 206 complaints against the Transmission Owner Petitioners' ROE have procedurally evolved to their current state, in part, due to this Court's decision in *Emera Maine*.

On October 16, 2018, FERC initiated a supplemental "paper hearing," directing participants in all four of the New England Transmission Owners' pancaked complaint proceedings to submit briefs and additional evidence regarding a revised ROE methodology proposed by FERC to remedy the infirmities identified by this Court in *Emera Maine*. On November 15, 2018, FERC issued a similar order initiating a paper hearing and directing briefs in the Transmission Owner Petitioners' complaint proceedings. To date, FERC has not acted on remand of *Emera Maine* nor on the paper hearing initiated in October 2018. By contrast, FERC has issued five orders seeking to apply this Court's holding in *Emera Maine* to the Transmission Owner Petitioners.

*Amici* have a distinct interest in the outcome of this appeal, particularly regarding: (1) the Court's review of FERC's claim of retroactive refund authority and (2) FERC's willingness to permit pancaked complaints. *Amici* respectfully request that the Court overturn FERC's orders on both issues. Additionally, the Court should apply caution in this proceeding to preserve the rights of the New

England Transmission Owners, successful litigants in *Emera Maine*, to address specific issues affecting them in any future proceeding in this Court.

## **ARGUMENT**

**I.    FERC EXCEEDED ITS STATUTORY AUTHORITY BY REQUIRING THE TRANSMISSION OWNER PETITIONERS TO PAY REFUNDS FOR THE PERIOD BEGINNING SEPTEMBER 2016.**

Section 206 of the FPA establishes the full scope of FERC's authority to change the Transmission Owner Petitioners' ROE and order refunds related to those changes. Two explicit and unambiguous directives in section 206 apply here.

*First*, in section 206(a), 16 U.S.C § 824e(a), Congress granted FERC authority to change rates *prospectively* from the date it makes a statutory finding that satisfies a "dual burden": FERC must show that existing rates are unjust and unreasonable, and FERC shall determine new rates to be "thereafter" in effect. *See, e.g.*, *Emera Maine*, 854 F.3d at 24-25; *City of Anaheim v. FERC*, 558 F.3d 521, 523 (D.C. Cir. 2009) ("*City of Anaheim*"); *Towns of Concord, Norwood & Wellesley v. FERC*, 955 F.2d 67, 72 (D.C. Cir. 1992) ("*Towns of Concord*").

*Second*, section 206(b) grants the Commission specific, limited authority to order retroactive refunds solely for a single fifteen-month period from the refund effective date. 16 U.S.C. § 824e(b) ("[T]he Commission may order refunds of any amounts paid, for the period subsequent to the refund effective date through a date fifteen months after such refund effective date."). This limitation is "strict." *MISO*

*Transmission Owners*, 45 F.4th at 262. Accordingly, "refunds of any amounts paid outside of the refund period are forbidden." *Exxon Mobil*, 571 F.3d at 1215 (citation modified).

Here, FERC violated both statutory directives by: (1) ordering refunds outside the fifteen-month period and (2) seeking to fix rates retroactively to a date prior to when FERC satisfied its dual burden of finding that existing rates were unjust and unreasonable and determining a new just and reasonable rate.

**A.    Section 206 of the FPA Prohibits FERC from Imposing Retroactive Relief Other than for a Fifteen-Month Refund Period.**

The statutory text of section 206(b) forbids FERC's imposition of refunds for a period greater than fifteen months after a refund effective date. 16 U.S.C. § 824e(b). In *Exxon Mobil*, this Court expressly recognized that "Section 206(b) provides the relief FERC may order for amounts paid in excess of the just and reasonable rate[]" and that "[R]efunds of any amounts paid outside the refund period are forbidden." *Exxon Mobil*, 571 F. 3d at 1215 (citation omitted). As the Court made clear, "FERC cannot order utilities to give back money already collected (except for money collected during the *limited* refund period)." *Id.* (emphasis added). There is no credible interpretation of section 206(b) permitting refunds beyond the fifteen-month limitation established by statute and recognized by this Court.

Section 206(b)'s legislative history is unambiguous and affirms the plain text of the statute. In 1988, when Congress amended the FPA and authorized FERC to order refunds pursuant to section 206(b), Congress limited FERC's authority to direct refunds for the express purpose of preventing public utilities from being exposed to the uncertainty associated with open-ended refund obligations. *See* S. Rep. No. 100-491 at 6 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2684, 2688; *see also Regulatory Fairness Act: Hearings on S. 1567 and H.R. 2858 Before the S. Comm. on Energy & Nat. Res.*, 100th Cong., 74-76, 85-87, 91-92, 99-100, 107-08, 115-17, 138, 295-97 (1988) [hereinafter *Hearings on S. 1567 and H.R. 2858*] (testimony addressing concerns regarding potential open-ended refund liability).

When initially passed by the House of Representatives as H.R. 2858, the Regulatory Fairness Act of 1988, which granted FERC its authority to issue refunds under section 206(b), did not include the fifteen-month refund limitation. *See* 133 Cong. Rec. H9029 (daily ed. Oct. 27, 1987). During consideration of H.R. 2858 in both the House of Representatives and in the Senate, spokespeople from the public utility and financial industries advocated for limits to H.R. 2858's grant of refund authority, arguing that the potential for unlimited refunds would undermine the validity of financial reports and revenue forecasts issued by utilities, thus increasing their costs of financing and risking serious commercial harm. *See, e.g., Hearings on S. 1567 and H.R. 2858*, at 74-76, 85-87, 91-92, 99-100, 107-08, 115-17, 138, 295-

97 (testimony addressing concerns regarding potential open-ended refund liability); *id.* at 86 (Testimony of Rodney O. Mundy, Partner, Balch & Bingham, on behalf of Edison Elec. Inst.) ("[H.R. 2858] would expose utility companies to substantial, added financial risk. Given the nature of a section 206 investigation, the bill would do this by creating potentially unlimited liabilities for refunds to wholesale customers."). This testimony affirmed the House Committee on Energy and Commerce's findings that "a utility's financial viability and ability to serve customers might be jeopardized if huge refunds were ordered." *See* H.R. Rep. No. 100-384, at 8 (1987).

Following the passage of H.R. 2858, the Senate Committee on Energy and Natural Resources considered the merits of a refund limitation. H.R. 2858's primary sponsor Rep. Terry Bruce testified, "the major concern was that the fear of investor-owned utilities, that they would be financially ruined by large retrospective awards." *Hearings on S. 1567 and H.R. 2858*, at 26 (statement of Terry L. Bruce). "[I]t is clearly not in the public interest for us to make it impossible for a wholesale supplier of energy to continue," Rep. Bruce added. *Id.* The Senate then proposed, and Congress ultimately passed, an amendment to section 206(b) that:

> [W]ould permit refunds to be ordered for a period beginning with a "refund effective date" (established not less than two months or more than seven months after the filing of a complaint or publication of the Commission's notice of intent to initiate a section 206 proceeding) and ending 15 months from such date.

*See* S. Rep. No. 100-491, at 3.  The Senate Committee on Energy and Natural Resources report confirmed that "[i]n general, refunds may only be ordered for amounts paid in excess of lawful rates during the period within 15 months of the refund effective date."  *Id.* at 6.

FERC itself has previously acknowledged Congress' intent to limit FERC's refund authority, conceding that it would "thwart Congress' intent in establishing the limited fifteen-month refund protection period" to establish a refund period that extends beyond fifteen months.  *Allegheny Elec. Coop., Inc. v. Niagara Mohawk Power Corp.*, 58 FERC ¶ 61,096, at 61,349 (1992).  Indeed, "the Regulatory Fairness Act mandates that, absent dilatory behavior by the utility, refund protection for customers be limited to a single fifteen-month period."  *Id.* (citing 16 U.S.C. § 824e (1988)).  But it is FERC, not the Transmission Owner Petitioners, who have delayed action in this case for two years, after already changing its methodology four times.

In addition to being inconsistent with legislative intent, FERC's issuance of refunds beyond section 206(b)'s express fifteen-month limitation exceeds FERC's statutory authority, and it is impermissible for FERC to interpret section 206(b) to expand its authority in a way that is inconsistent with the statute.  In *Atlantic City Electric Co. v. FERC*, the Court confirmed that FERC is entirely a "creature of statute" and has no powers others than those expressly granted to it by Congress. 295 F.3d 1, 8 (D.C. Cir. 2002).  As the Court noted, "[i]n the absence of statutory

-10-

authorization for its act, an agency's 'action is plainly contrary to law and cannot stand.'" *Id.* (citation omitted).

Particularly in the context of FERC interpreting an express limit to its own authority, this Court owes FERC no deference and should reject FERC's attempt to exercise authority that the plain text of the statute does not provide. It is now settled law that "agency interpretations of statutes—like agency interpretations of the Constitution—are not entitled to deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391 (2024). Rather, "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." *Id.* at 403. When addressing a question of statutory interpretation, the Court begins with the text and construes the text according to the ordinary meaning of its key terms. *See Pac. Gas & Elec. Co. v. FERC*, 113 F.4th 943, 947-48 (D.C. Cir. 2024) (citations omitted). Such questions of law are reviewed *de novo*. *Vill. of Morrisville v. FERC*, 136 F.4th 1117, 1125 (D.C. Cir. 2025) (citing *Loper Bright Enters.*, 603 U.S. at 391). As long acknowledged by the Court, "[t]he precise words of the statutory text matter." *City of Anaheim*, 558 F.3d at 522.

Accordingly, FERC's decision to order the Transmission Owner Petitioners to pay refunds for the 96-month period from September 28, 2016, to October 17, 2024, violates the precise words limiting FERC's refund authority under section 206(b).

-11-

**B.    FERC's Order that Refunds Be Paid Back to September 28, 2016 Based on the Fiction that the 9.98% ROE Was Fixed on, and Is Effective as of, that Date Nullifies the Sequential Two-Step Structure of Section 206.**

FERC found "the procedural facts of this case are sufficient to justify the Commission's ordering of refunds from September 28, 2016 through the date of the October 17[, 2024 Remand] Order."  Rehearing Order at P 69 (R. 696, JA____-JA____).  FERC reasons that it "initially granted relief for the First Complaint on September 28, 2016—the date of Opinion No. 551," *id*. at P 64 (R. 696, JA____-JA____), and because of that it can make the new ROE established in the Remand Order "effective September 28, 2016[,]" *id*. at PP 5, 26, 55 (R. 696, JA____-JA____).  FERC is back-dating its ROE finding and holding the Transmission Owner Petitioners liable for eight years of refunds.  By imposing a new rate retroactively for the entire back-dated period, FERC violates the requirements of section 206(a).

To fix a new rate under FPA section 206(a), FERC must follow the unambiguous procedures that the statute establishes.  "Section 206 requires FERC to determine whether an existing rate is unjust, unreasonable, unduly discriminatory or preferential.  Only *after* having made the determination that the utility's existing rate fails that test may FERC exercise its section 206 authority to impose a new rate."  *Emera Maine*, 854 F.3d at 21 (citation modified).  Then, after FERC satisfies both

-12-

steps, it can order refunds.  16 U.S.C. § 824e(b) ("At the conclusion of any proceeding under this section, the Commission may order refunds . . . .").

The Transmission Owner Petitioners' brief explains why FERC's back-dating approach in this case is inconsistent with section 206 and this Court's precedent in *Electrical District No. 1 v. FERC*, 774 F.2d 490 (D.C. Cir. 1985).  Joint Brief at 17-20.  *Amici* emphasize that FERC's holding that it fixed the ROE "at each stage" of this multi-year proceeding, Rehearing Order at P 60 (R. 696, JA____-JA____), is just a repackaged version of what FERC argued, and this Court rejected, in *Emera Maine*.

As this Court emphasized in *Emera Maine*, "a finding that an existing rate is unjust and unreasonable is *the condition precedent* to FERC's exercise of its section 206 authority to change that rate."  *Emera Maine*, 854 F.3d at 25 (emphasis added) (citations omitted).  In other words, "section 206 mandates a two-step procedure that requires FERC to make an explicit finding that the existing rate is unlawful before setting a new rate."  *Id*. at 24.  Here, FERC did not validly meet its condition precedent by finding the existing rate unjust and unreasonable until the October 2024 Remand Order.  In fact, FERC never validly met either step under the section 206 analysis until the Remand Order.  FERC admits this:

In the October [2024] Order, the Commission performed a new analysis under step 1 *and* step 2 of section 206 . . . .  At step 1, the [Remand] Order found the existing 12.38% MISO ROE that was challenged in the First Complaint unjust and unreasonable based on the corrected [Remand] Order analysis.

Rehearing Order at P 63 (R. 696, JA____-JA____).

FERC is using its determination that the existing ROE is unjust and unreasonable (step one) in 2024 to back-date its establishment of a new rate finding (step two) by eight years.  But this turns the two-step inquiry on its head.  FERC converts a statutory "condition precedent" into a largely irrelevant inquiry despite this Court's holding in *Emera Maine*.  *See Emera Maine*, 854 F.3d at 24-25.  FERC made no valid step one finding in Opinion No. 551 in 2016.  FERC concedes this: "Opinion No. 551 . . . used the same reasoning from *Emera Maine* that the D.C. Circuit found was insufficient to satisfy the Commission's burden under section 206."  Rehearing Order at P 70 (R. 696, JA____-JA____).  Without a valid step one finding until 2024, FERC could not modify the existing ROE until 2024.  *Emera Maine*, 854 F.3d at 25 ("Without a showing that the existing rate is unlawful, FERC has no authority to impose a new rate.").  Therefore, FERC's claim that it fixed the ROE "at each stage" of this proceeding, Rehearing Order at P 60 (R. 696, JA____-JA____), including in 2016, ignores the requirements of the statute and conflates the sequential "two-step procedure" that the "stricter" section 206 requires with the

-14-

procedure for section 205, just as FERC did in *Emera Maine*. *Emera Maine*, 854 F.3d at 24.

The legal error doctrine, addressed more fully in Section I.C below, does not change this analysis. This Court should not conflate, as FERC has, FERC's failure to meet its statutory burden with a legal error. That approach reveals a perverse path to evade the statute: FERC can grant itself unlimited retroactive refund authority by failing to meet its statutory burden and repeatedly changing the ROE (as it did here). As FERC would have it, by *not* meeting its burden in 2016, FERC expanded its authority and ensured that refunds could go back all the way to 2016 whenever it did meet its burden. That is nonsensical.

Finally, the primary case FERC relies on in support of its back-dating finding, *Ariz. Pub. Serv. Co.*, Order on Remand, 26 FERC ¶ 61,087 (1984), was vacated by this Court in *Electrical District*, 774 F.2d at 494, and is not on point, as it arose under FPA section 205, not section 206. *See Ariz. Pub. Serv. Co.*, Opinion No. 137, 18 FERC ¶ 61,197 (1982). The holding FERC infers from *Arizona* is also contrary to this Court's on-point precedents under section 206. *See, e.g.*, *City of Anaheim*, 558 F.3d at 523 ("On its face, § 206(a) prohibits retroactive adjustment of rates. And not surprisingly, the Supreme Court and this Court have read this language to mean what it says."); *Towns of Concord,* 955 F.2d at 72 (holding that section 206(a) "allows the Commission to fix rates and charges, but only prospectively").

The New England Transmission Owners' circumstances illustrate the consequences of FERC's misinterpretation of section 206.[2] In *Emera Maine*, this Court held that FERC failed to make the necessary legal finding to change the New England Transmission Owners' ROE. Today, over eight years after the remand of that case, FERC still has not issued an order on remand addressing the merits of that now fourteen-year-old complaint, much less made a valid legal finding that the New England Transmission Owners' rates are unjust and unreasonable. And FERC has not done so despite its explicit obligation under section 206(b) to "act as speedily as possible." 16 U.S.C. § 824e(b).

Nonetheless, FERC has asserted that it has—and will exercise—authority to retroactively change the New England Transmission Owners' rates for "the entire period between Opinion No. 531-A [*i.e.*, October 16, 2014] and the [still-unknown future] date of the order on remand." *ISO New England Inc.*, 161 FERC ¶ 61,031, at P 24.[3] FERC claims to have retroactive refund authority for a period of over ten years and counting for the New England Transmission Owners, even though it has *never* made a valid finding that the New England Transmission Owners' existing

---

[2] FERC repeatedly emphasizes that its holding is mandated by the "procedural facts of this case." Rehearing Order at PP 53, 69, 75, 76 (R. 696, JA____-JA____). If the Court is inclined to agree with FERC—which it should not—it should similarly limit any holding to the particular procedural facts of this proceeding.

[3] The order where FERC claimed this authority is the subject of a petition for review before this Court in Case No. 20-1329, which is currently being held in abeyance.

ROE is unjust and unreasonable. Indeed, this Court explicitly *vacated* FERC's finding as insufficient in *Emera Maine*.

### C. FPA Section 309 and FERC's Use of the Legal Error Doctrine Cannot Overcome Section 206's Express Limitations.

FERC's primary argument in support of its authority to order years of retroactive refunds (on top of refunds for the statute's fifteen-month period) is the legal error doctrine, implemented through FPA section 309. *See* Rehearing Order at PP 74-76 (R. 696, JA____-JA____). But section 309 and the legal error doctrine cannot overcome section 206's express limitations.

Under the legal error doctrine, when an agency commits legal error, parties must be "put in the position they would have been in had an error not been made." *Pub. Utils. Comm'n of State of Cal. v. FERC*, 988 F.2d 154, 168 (D.C. Cir. 1993) (citation omitted) (citation modified). Section 309 authorizes FERC "to perform any and all acts, and to prescribe such orders as it may find necessary or appropriate to carry out the provisions of the FPA." *Niagara Mohawk Power Corp. v. FPC*, 379 F.2d 153, 158 & n.17 (D.C. Cir. 1967) (citation modified). However, FERC's authority under section 309 is limited. That section merely augments existing power conferred upon FERC by Congress; it does not confer independent authority to act. *New England Power Co. v. FPC*, 467 F.2d 425, 430 (D.C. Cir. 1972). Remedial orders under section 309 thus must be "consistent with the [FPA]." *Verso Corp. v. FERC*, 898 F.3d 1, 10 (D.C. Cir. 2018) (citation omitted). Section 309 "cannot be

used to supersede specific statutory strictures." *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354, 359 (D.C. Cir. 2017) ("*TNA*").

FERC "may craft a variety of remedies under Section 309 of the Federal Power Act; however, the filed rate doctrine limits that remedial authority." *Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 832 (D.C. Cir. 2021) (citation modified). If FERC's actions "violated the filed rate doctrine or the rule against retroactive ratemaking, [the court] would not then invoke the Commission's assessment of the equities to overcome those violations." *Id.* (citing *Pub. Utils. Comm'n of Cal.*, 988 F.2d at 168 n.12).

FERC cannot use section 309 or the legal error doctrine to order additional refunds here. FERC's order of refunds for an eight-plus-year period, in addition to the fifteen-month statutory period, is not "consistent with the [FPA section 206(b)]," *Verso Corp.*, 898 F.3d at 10, and therefore unlawfully "supersede[s] specific statutory strictures." *TNA*, 857 F.3d at 359. As this Court has repeatedly held (and as discussed above), under the FPA, refunds of any amounts paid outside section 206's fifteen-month refund period are forbidden. *E.g.*, *Exxon Mobil*, 571 F.3d at 1215. Imposition of such a remedy would violate "[t]he rule against retroactive ratemaking," which "bars FERC from refunding these overpayments unless they occurred during the refund period." *Id.*

As discussed above, section 206(b)'s legislative history is clear that FERC's refund authority was limited for the very purpose of not exposing public utilities to open-ended refund obligations. As this Court found in the last proceeding, a "theory [that] would upend the strict fifteen-month refund limit that Congress placed on Section 206 proceedings" should not be read into the statute "[a]bsent some clearer indication of congressional intent." *MISO Transmission Owners*, 45 F.4th at 262 (citation omitted). But FERC's theory *does* create open-ended refund liability that means Congress's fifteen-month limit "accomplishes nothing." *Id*. It would be contrary to Congressional intent to allow FERC to exercise section 309 authority to expose the Transmission Owner Petitioners to refund exposure inconsistent with section 206. The statutory scheme does not permit such use of section 309.

FERC cannot use section 309 or the legal error doctrine to back-date its ROE finding. FERC's shortcoming in this proceeding in Opinion No. 551 was a failure to meet its statutory burden under section 206 to impose a rate change. FERC offers no demonstration of how or why its failure to meet a statutory burden is legal error, and the notion is nonsensical: under section 206 *if* FERC met its legal burden, it could change the relevant rate as of the date it met its burden. But under FERC's theory, *not* meeting its legal burden is a "legal error" whereby FERC can still come back years later—with new evidence, analysis, and argument at its disposal—and obtain the exact same outcome. As explained above, that notion is entirely

inconsistent with *Emera Maine* and would nullify section 206's two-step requirements.

Even if the Court accepted that FERC's action in Opinion No. 551 constituted legal error, FERC's remedy vastly exceeded what the doctrine allows. FERC's orders here go far beyond "put[ting parties] in the position they would have been in had an error not been made." *Pub. Utils. Comm'n of Cal*, 988 F.2d at 168 (citation omitted). After FERC determined that it had erred in Opinion No. 551—by changing an existing rate without first satisfying the burden under the statute, as the Court explained in *Emera Maine*—FERC did not limit itself to fixing this error, *i.e.*, by reinstating the existing rate until FERC satisfied the statute's "condition precedent" to setting a new rate. Instead, FERC re-opened the record, and in November 2018, established a supplemental "paper hearing." FERC directed participants to submit briefs and additional evidence on various aspects of the case—including how a proposed new methodology would meet the "[FERC]'s burden under the first prong of the FPA section 206 inquiry." MISO Briefing Order at P 33, ordering para. (R. 525, JA____-JA____).

Opinion No. 569, issued in 2019, relies on evidence that was introduced years after Opinion No. 551 was issued in 2016, to find that Transmission Owner Petitioners' rates are unjust and unreasonable. *See, e.g.*, Opinion No. 569 at P 140 n.301 (citing McKenzie Aff. (I) at 47 and Aff. (II) at 43-44, (filed Feb. 13 and 14,

-20-

2019, respectively)) (R. 560, JA____-JA____); *id.* P 205 n.431 (citing McKenzie Reply Aff. (I) at 65 and Reply Aff. (II) at 65, (filed Apr. 10, 2019)) (R. 560, JA____-JA____); *id.* P 34 n.83 (citing Keyton Aff. (I) at 11 and Aff. (II) at 10, (filed Feb. 13, 2019)) (R. 560, JA____-JA____); *id.* P 215 n.454 (citing Keyton Reply Aff. (I) at 5 and Reply Aff. (II) at 5, (filed Apr. 10, 2019)) (R. 560, JA____-JA____); *id.* P 285 n.609 (citing Parcell Aff. (I) at 11 and Aff. (II) at 10, (filed Feb. 13, 2019)) (R. 560, JA____-JA____). So too does the Remand Order. Remand Order at Appendix II (R. 681, JA____-JA____). Parties could never have been in the place they are now in 2016, because FERC's evidence and analysis did not exist in 2016.

The New England Transmission Owners' circumstances further illustrate the inequitable consequences of FERC's misinterpretation of sections 206 and 309. In October 2014, FERC issued Opinion No. 531-A and changed the New England Transmission Owners' 11.14 percent base ROE to 10.57 percent. Opinion No. 531-A at P 10, ordering para. (A). This Court, in *Emera Maine*, vacated and remanded Opinion No. 531-A. *Emera Maine*, 854 F.3d at 30. It has now been over eight years since this Court in *Emera Maine* vacated and remanded Opinion No. 531-A and FERC still has not acted on remand, meaning FERC still has not met its statutory burden to modify the New England Transmission Owners' ROE. Applying FERC's claimed section 309 authority to the facts of the New England Transmission Owners

potentially could replace the Congressionally mandated fifteen-month refund period with refunds for a period of well over a decade.

This Court has not previously found that it is within FERC's discretion to invoke section 309 or the legal error doctrine for the purpose employed in FERC's orders. Nor should it do so here.

## II. FERC'S FAILURE TO DISMISS "PANCAKED" ROE COMPLAINTS CIRCUMVENTS THE STRICT FIFTEEN-MONTH REFUND PERIOD IN SECTION 206(B) AND IS CONTRARY TO SOUND ADMINISTRATIVE PRACTICE AND PRECEDENT.

Congress limited refunds under section 206(b) to a fifteen-month refund period.[4] Despite the statute's clear text, parties in the FERC proceedings underlying this case sought to evade this fifteen-month refund limit through the filing of a "pancaked" complaint (FERC Docket No. EL15-45) alleging nearly-identical claims and facts as the first complaint (FERC Docket No. EL14-12) before FERC acted on the first complaint. In the proceedings for the New England Transmission Owners, there are four pancaked ROE complaints. Both here and in the New England cases, FERC established a new refund effective date in each pancaked case and set it for hearing. But this approach is contrary to FPA section 206(b)'s statutorily-prescribed fifteen-month limit on refunds for customers.

---

[4] The statute's sole exception applies only if the proceeding exceeds fifteen months due to the public utility's dilatory behavior, as determined by the Commission. 16 U.S.C. § 824e(b). That exception has not been invoked in this case, and would not apply to the New England Transmission Owners' cases.

This Court appeared to recognize as much in its last order in these proceedings. There, the Court held that "[i]f customers can just file new complaints challenging the same Return every fifteen months, the limit [*i.e.*, the 'strict fifteen-month refund limit that Congress placed on Section 206 proceedings'] accomplishes nothing." *MISO Transmission Owners*, 45 F.4th at 262. While the Court cautioned this holding should not be read to endorse an argument against pancaked complaints, that was premised on the notion that "FERC has an explanation for allowing successive complaints that it says reconciles the practice with" section 206(b). *Id.* at 262 n.10. But FERC has not put forth such an explanation, and no such explanation exists—successive pancaked complaints mean that Congress's strict fifteen-month refund period "accomplishes nothing." *Id.* at 262.

FERC's decision to allow pancaked ROE complaint cases frustrates Congress's clear directive to facilitate resolution of section 206 proceedings "as speedily as possible." 16 U.S.C. § 824e(b). Allowing pancaked complaints disrupts the link between FERC's review timeline and refund limits, undermining the provision's intent to bar refunds when FERC fails to complete its work within fifteen months. It is not unlike FERC's prior practice, struck down by this Court, of issuing tolling orders to avoid Congressionally-imposed timing requirements. *See Allegheny Def. Project v. FERC*, 964 F.3d 1, 15 (D.C. Cir. 2020) ("The Commission has no authority to erase and replace the statutorily prescribed consequences of its

-23-

inaction.  Agencies, no less than courts, cannot render statutory language a nullity and leave entire operative clauses with no job to do.") (citation modified).

As a practical matter, FERC's failure to dismiss pancaked complaints forces utilities to litigate multiple cases, causing significant uncertainty that, if this proceeding is any guide, may not be resolved for more than a decade.  The purpose of the fifteen-month refund period is to provide utilities and ratepayers with critical rate certainty.  And rate certainty benefits customers by ensuring clear and predictable outcomes. *See, e.g.*, *San Diego Gas & Elec. Co. v. Sellers of Energy & Ancillary Servs.*, 128 FERC ¶ 61,004, at P 18 (2009).  Allowing pancaked complaints denies these benefits to ratepayers and investors.  The results of FERC's improper approach to pancaked ROE complaints for the New England Transmission Owners is depicted below.



Even ultimate dismissal of a pancaked complaint does not ameliorate the harm it causes. Based on the New England Transmission Owners' experience, FERC's election to set the second "pancaked" complaint against the Transmission Owner Petitioners for hearing resulted in substantial and prolonged litigation costs, well after FERC should have found the second complaint to be impermissible pursuant to section 206.

FERC's failure to timely dismiss the pancaked complaints here, as well as the New England complaints, is also inconsistent with FERC precedent. *Allegheny Elec. Coop., Inc.*, 58 FERC at 61,349 (explaining that "if we were to accept both complaints and establish different refund effective dates, we would thwart Congress'

intent in establishing the limited fifteen-month refund protection period"). FERC has recognized that successive complaints with separate refund periods are impermissible except in limited factual circumstances. *S. Co. Servs., Inc.*, 68 FERC ¶ 61,231 (1994), *reh'g denied*, 83 FERC ¶ 61,079 (1998); *Consumer Advocate Div. of Pub. Serv. Comm'n of W. Va. v. Allegheny Generating Co.*, 67 FERC ¶ 61,288, *order on reh'g*, 68 FERC ¶ 61,207 (1994). FERC precedent only allows for a second complaint to proceed on matters already before FERC when it establishes a substantively "different issue," *Allegheny Generating Co.*, 68 FERC at 61,998, based on "a material changed circumstance." *EPIC Merch. Energy NJ/PA, L.P. v. PJM Interconnection, L.L.C.*, 136 FERC ¶ 61,041, at P 14 (2011). That standard has not been met here or in the pending New England cases.

The fact that different parties may file successive complaints does not change the limitations under section 206 and applicable precedent. Such an exception would create opportunities for gaming inconsistent with the statute. For example, the parties filing the second complaint at issue here were intervenors allied with the complainants in the first complaint and sought to justify the second complaint with the same expert witness analysis and testimony that they introduced as evidence to support their position in the first complaint proceeding. FERC should have timely dismissed the second complaint against the Transmission Owner Petitioners, as well as the successive complaints against the New England Transmission Owners.

# CONCLUSION

*Amici* respectfully ask the Court to grant the petitions for review of the Transmission Owner Petitioners.  A plain and unambiguous reading of section 206 of the FPA requires reversal of both FERC's directive that the Transmission Owner Petitioners provide refunds back-dated to the date of FERC's issuance of Opinion No. 551 for periods outside the fifteen-month refund period established under FPA section 206(b) and FERC's determination to allow pancaked ROE complaints.


Dated:  August 21, 2025                    Respectfully submitted,

*/s/ Richard L. Roberts*
Richard L. Roberts
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-6756
rroberts@steptoe.com

*Attorney for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire, on behalf of Amici Curiae*

**New England Power Company d/b/a National Grid**

Sean A. Atkins
Nicholas J. Cicale
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
(202) 973-4200
seanatkins@dwt.com
nicholascicale@dwt.com

Daniel Galaburda
National Grid
40 Sylvan Road
Waltham, MA 02451-1120
(781) 907-1847
daniel.galaburda@nationalgrid.com

**Central Maine Power Company and The United Illuminating Company**

Catherine McCarthy
Bracewell LLP
2001 M Street, NW
Washington, DC 20036
(202) 828-5839
cathy.mccarthy@bracewell.com

**New Hampshire Transmission, LLC**

Travis M. Contratto
NextEra Energy, Inc.
801 Pennsylvania Ave., NW Suite 220
Washington, DC 20004
(202) 904-5928
travis.contratto@nee.com

**Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire**

Richard L. Roberts (*Counsel of Record*)
Shaun M. Boedicker
Karen Bruni
Michelle L. Castaline
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6756
rroberts@steptoe.com
sboedicker@steptoe.com
kbruni@steptoe.com
mcastaline@steptoe.com

Mary E. Grover
Colin Francis
Eversource Energy Service Company
247 Station Drive, SE100
Westwood, MA 02090
(781) 441-8696
mary.grover@eversource.com
colin.francis@eversource.com

**Vermont Transco, LLC**

S. Mark Sciarrotta
Vermont Electric Power Company, Inc., as Manager of Vermont Transco LLC
366 Pinnacle Ridge Road
Rutland, VT 05701
(802) 282-3812
msciarrotta@velco.com

**The Narragansett Electric Company d/b/a Rhode Island Energy**

Steven M. Nadel
PPL Services Corp.
645 Hamilton Street, Suite 601
Allentown, PA 18101
(610) 774-4775
SMNadel@pplweb.com

William M. Keyser
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8186
wkeyser@steptoe.com

**Unitil Energy Systems, Inc. and Fitchburg Gas and Electric Light Company**

Patrick H. Taylor
Unitil Service Corp.
6 Liberty Lane West
Hampton, NH 03842
(603) 773-6544
taylorp@unitil.com

**Versant Power (f/k/a Emera Maine)**

Jeffrey M. Jakubiak
Melinda Warner
Vinson & Elkins LLP
1114 Avenue of the Americas, 32nd Floor
New York, NY 10036
(212) 237-0082
jjakubiak@velaw.com
mwarner@velaw.com

Arielle Silver Karsh
Versant Power
970 Illinois Avenue
Bangor, ME 04401
(207) 973-2890
Arielle.Silverkarsh@versantpower.com

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,158 words, excluding the parts of the brief exempted by Circuit Rule 32(a)(1), as determined by the word-counting feature of Microsoft Word.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Richard L. Roberts*
Richard L. Roberts
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-6756
rroberts@steptoe.com

*Attorney for Eversource Energy*
*Service Company on behalf of*
*The Connecticut Light and Power*
*Company, NSTAR Electric Company,*
*and Public Service Company of New*
*Hampshire, on behalf of Amici Curiae*

Dated:  August 21, 2025

**CERTIFICATE OF SERVICE**

I hereby certify under Circuit Rule 25(c), that on this 21st day of August, 2025, I electronically filed the foregoing Brief with the Court using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Richard L. Roberts
Richard L. Roberts
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, D.C. 20036
(202) 429-6756
rroberts@steptoe.com

*Attorney for Eversource Energy Service Company on behalf of The Connecticut Light and Power Company, NSTAR Electric Company, and Public Service Company of New Hampshire, on behalf of Amici Curiae*

Dated: August 21, 2025

-ii-