**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

**No. 25-1045, cons. w/ No. 25-1066, 25-1069, 25-1115, 25-1124, 25-1126**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**MISO Transmission Owners, et al.,**

*Petitioners*

*v.*

**Federal Energy Regulatory Commission,**

*Respondent*

---

**ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION**

---

**REPLY BRIEF FOR PETITIONER, LOUISIANA PUBLIC SERVICE
COMMISSION**

**Kathryn Bowman**
**Executive Counsel**
**Louisiana Public Service Commission**
**Galvez Building - 12th Floor**
**602 N. Fifth Street**
**Baton Rouge, Louisiana  70802**
**Telephone:  (225) 342-9888**
**Email: Kathryn.Bowman@la.gov**

**Noel J. Darce**
**Dana M. Shelton**
**Justin A. Swaim**
         **Of**
**STONE PIGMAN WALTHER
WITTMANN L.L.C.**
**909 Poydras Street, Suite 3150**
**New Orleans, Louisiana  70112**
**Telephone:  (504) 581-3200**
**Email: NDarce@stonepigman.com**
**DShelton@stonepigman.com**
**JSwaim@stonepigman.com**

*Special Counsel to the Louisiana
Public Service Commission*

6135962v.1

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS .................................................................................i

TABLE OF AUTHORITIES ........................................................................ iii

SUPPLEMENTAL GLOSSARY.....................................................................v

STATUTES AND REGULATIONS ...............................................................vi

SUMMARY OF ARGUMENT .......................................................................1

ARGUMENT .................................................................................................3

I.      THE LOUISIANA COMMISSION HAS DEMONSTRATED
        STANDING. ......................................................................................3

II.     THE LOUISIANA COMMISSION'S ARGUMENTS
        REGARDING THE INCONSISTENCIES BETWEEN FERC'S
        ORDERS AND FPA SECTION 206(B) ARE PROPERLY
        BEFORE THIS COURT AND REMAIN UNREBUTTED. .....................6

        A.      The Law-of-the-Circuit Doctrine Does Not Preclude the
                LPSC's Arguments Because FERC's Orders and This
                Court's Decision in *MISO TOs* Are Inconsistent With
                Earlier Precedent Of This Circuit. .......................................6

        B.      The LPSC's Arguments Are Not Barred By Issue
                Preclusion Because This Court's Statutory Interpretation of
                FPA Section 206 Was Not Essential To Its Decision in *MISO
                TOs*. ..............................................................................10

        C.      The Louisiana Commission Provides the Only Resolution to
                The Refund Issue That is Fully Consistent With FPA
                Section 206(b) and Respondent Has Never Rebutted The
                LPSC's Claims. ................................................................11

        D.      Contrary to Intervenors' Claim, the LPSC *Does* Challenge
                FERC's Decision Not to Set a New Rate to Be "Thereafter
                Observed and in Force" For the Second Complaint. ...................14

6135962v.1

III.    RESPONDENT FAILED TO MEANINGFULLY CONSIDER THE LPSC'S NEW BETA DATA IN VIOLATION OF THE ARBITRARY AND CAPRICIOUS STANDARD....................................15

    A.    Respondent's Claim That the LPSC Submitted New Beta Information "Too Late" is Moot Because FERC Considered That Evidence, Although in an Unlawful, Conclusory Fashion. ........................................................................15

    B.    Respondent Fails to Rebut the LPSC's Claims That FERC Changed Its Evidentiary Standard on Rehearing...........................17

    C.    Respondent's Preclusion Arguments Are Incorrect Because FERC Altered Its Requirements in Its Rehearing Order Without Prior Notice........................................19

IV.    RESPONDENT'S DECISION REGARDING WHETHER THE ADJUSTED BETAS CONTAINED IN THE BASE CAPITAL-ASSET MODEL COULD BE ALTERED TO UNADJUSTED BETAS FAILS THE ARBITRARY AND CAPRICIOUS STANDARD. .............................................................21

CONCLUSION................................................................................22

RULE 32(a)(7)(b) CERTIFICATE OF COMPLIANCE.................................23

CERTIFICATE OF SERVICE .........................................................24

6135962v.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Clean Power Ass'n v. FERC*, 54 F.4th 722 (D.C. Cir. 2022)...............3, 16, 17

*Am. Whitewater v. FERC*, 125 F.4th 1139 (D.C. Cir. 2025) ......................................4

*Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625 (D.C. Cir. 2010) ....................1, 10

*Columbia Gas Transmission Corp. v. FERC*, 477 F.3d 739 (D.C. Cir. 2007) ........................................................................................................19

*Entergy Ark., LLC v. FERC*, 134 F.4th 576 (D.C. Cir. 2025) ..................................4

*Exxon Mobil Corp. v. FERC*, 571 F.3d 1208 (D.C. Cir. 2009) ................................7

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ....................................19

*FedEx Home Delivery v. Nat'l Labor Relations Bd.*, 849 F.3d 1123 (D.C. Cir. 2017)........................................................................................2, 6

*Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28 (D.C. Cir. 1999) ........................................................9

*Lamax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020) ..................................................12

*Martin v. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007) ....................................10

*Md. People's Counsel v. FERC*, 760 F.2d 318 (D.C. Cir. 1985)..............................4

*MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) ("*MISO TOs*") ...................................................................1, 3, 8, 9, 10, 17, 20, 21

*Sierra Club v. Jackson*, 648 F.3d 848 (D.C. Cir. 2011) ..........................................6

*United States v. Old Dominion Boat Club*, 630 F.3d 1039 (D.C. Cir. 2011) ..........................................................................................................9

* Authorities on which we chiefly rely are marked with asterisks

- iii -

*Xcel Energy Servs., Inc. v. FERC*, 815 F.3d 947 (D.C. Cir. 2016) ...........................7

**Administrative Decisions**

*Centerfield Cooper Solar, LLC*, 176 F.E.R.C. ¶61,111 (2021) ................................5

*Entergy Servs., Inc.*, 153 F.E.R.C. ¶61,303 (2015) ...................................................5

*Letter Order*, No. ER17-215 (FERC Mar. 8, 2022) ...................................................6

*Midcontinent Indep. Sys. Operators, Inc.*, 169 F.E.R.C. ¶61,233 (2019)....................................................................................................................16

*Order Addressing Arguments Raised on Rehearing*, 190 F.E.R.C. ¶61,184 (2025) ("*Rehearing Order*") ............................................2, 15, 17, 18

*Order on Remand*, 189 F.E.R.C. ¶61,036 (2024) ("*Remand Order*") .....................14

*S. Co. Servs., Inc.*, 83 F.E.R.C. ¶61,079 (1998) .......................................................13

*Transource, LLC*, 168 F.E.R.C. ¶61,119 (2019) ......................................................18

**Statutes and Regulations**

*16 U.S.C. § 824e .................................................................................7, 11, 12, 13

16 U.S.C. § 825l................................................................................................8, 19

**Other Authorities**

*About Us*, DEMCO, https://demco.org/cooperative-difference (last visited Jan. 6, 2026) ...............................................................................5

\* Authorities on which we chiefly rely are marked with asterisks

6135962v.1

## SUPPLEMENTAL GLOSSARY

DEMCO

Dixie Electric Membership Corporation, an LPSC-jurisdictional electric cooperative that pays the transmission rate at issue in this proceeding.

NYSE

New York Stock Exchange

6135962v.1

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the Brief for Petitioner, Louisiana Public Service Commission.

6135962v.1

## SUMMARY OF ARGUMENT

Respondent's orders leave in place a Return methodology that violates Section 206 of the Federal Power Act ("FPA") and includes multiple errors that improperly raise costs for customers. Respondent did not meaningfully address arguments raised by the LPSC in the underlying FERC proceeding that would have fixed those errors and fails to do so again here. Instead, Respondent attempts to hide its mistakes through a barrage of preclusion defenses to the LPSC's claims. This Court should reject those defenses and decide the issues presented by the LPSC on the merits.

Respondent fails to provide any meaningful substantive response to the LPSC's arguments regarding the inconsistencies between FERC's orders and FPA Section 206. Respondent almost exclusively argues that the LPSC's claims are barred by preclusion theories such as the law-of-the-circuit doctrine and collateral estoppel. [Resp. Br. 70]. Respondent's claim that the LPSC's arguments are collaterally estopped is incorrect because this Court's ruling on the statutory interpretation issue in *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) ("*MISO TOs*"), was not "essential" to the Court's final decision. *See Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 634 (D.C. Cir. 2010). Moreover, the law-of-the-circuit doctrine does not apply here because there is a conflict within the

6135962v.1

Court's own precedent that must be resolved.  *See FedEx Home Delivery v. Nat'l Labor Relations Bd.*, 849 F.3d 1123, 1127 n.3 (D.C. Cir. 2017).

FERC's orders rely on *MISO TOs* to hold that the Commission must analyze the Return that results from the first complaint proceeding when determining whether the Return for the second complaint proceeding is just and reasonable. Applying that methodology violates earlier precedent of this Court that provides that FERC has the authority to issue refunds in complaint cases submitted under FPA Section 206.  FERC's decisions and this Court's holding in *MISO TOs* strip FERC of that power and effectively eliminate the fifteen-month refund effective period required by FPA Section 206.

For the LPSC's arguments regarding FERC's approval of a Capital Asset Model that includes betas calculated using the New York Stock Exchange as a benchmark with an expected market return of only S&P 500 companies, the Respondent again relies on preclusion theories in an attempt to bar review of the merits of those claims.  Respondent asserts that the LPSC's arguments are precluded because the Louisiana Commission provided data to support its argument "too late" and that the argument is barred by *res judicata*.  [Resp. Br. 74].  But FERC exercised its discretion to consider the LPSC's new evidence in its *Rehearing Order*; it did not reject that evidence outright as Respondent suggests.  *See Rehearing Order*, ¶42; JA___.  Once FERC made the decision to address the evidence, it was required to

6135962v.1

engage in reasoned decision-making, which it failed to do. *Am. Clean Power Ass'n v. FERC*, 54 F.4th 722, 723, 728 (D.C. Cir. 2022).

Regarding the LPSC's claim that FERC failed to correct a mathematical error in the Capital Asset Model that adds a size premium calculated with unadjusted betas to base model beta inputs that were adjusted, Respondent concludes that the LPSC's claims are "irremediably tardy, barred by the law-of-the-circuit doctrine and general preclusion principles, and presented in the wrong forum." [Resp. Br. 78]. The LPSC interprets this Court's decision in *MISO TOs* as only deciding that it was acceptable for FERC to include a size premium adjustment in its Return methodology; the Court did not opine on whether FERC could or should correct the betas within the base Capital Asset model to be consistent with those in the size premium adjustment. *See MISO TOs*, 45 F.4th at 260. If this Court confirms the LPSC's interpretation, the issue is properly before this Court and FERC's decision to continue including a mathematical error in its Return methodology should be reversed.

## ARGUMENT

### I. THE LOUISIANA COMMISSION HAS DEMONSTRATED STANDING.

FERC attempts to distract from the LPSC's substantive arguments by first arguing that the LPSC does not have standing to challenge the *Remand Order* and *Rehearing Order*. [Resp. Br. 26-29]. But contrary to Respondent's claims, there

6135962v.1

is no real standing controversy here because the LPSC's standing is patently obvious and its opening brief adequately demonstrated standing. *See Entergy Ark., LLC v. FERC*, 134 F.4th 576, 582 (D.C. Cir. 2025). The LPSC was also an intervenor and active party in *MISO TOs* where its standing was unchallenged, despite being required in that case. *See Am. Whitewater v. FERC*, 125 F.4th 1139, 1151 (D.C. Cir. 2025) ("Intervenors must also satisfy standing requirements.").

As the LPSC explained in its opening brief, the "Louisiana Public Service Commission is a State commission aggrieved by orders issued by FERC because the orders that are the subject of the LPSC's petitions for review result in increased rates for certain LPSC-jurisdictional customers." [LPSC Br. 16-17]. This Court has already determined that state public service commissions have standing to represent the interests of customers within their jurisdictions in appeals against FERC because Congress provided that standing through statute. *Md. People's Counsel v. FERC*, 760 F.2d 318 (D.C. Cir. 1985); 16 U.S.C. § 825l.

Respondent alleges that the LPSC failed to explain which LPSC-jurisdictional customers would be injured and how those customers would be harmed. [FERC Br. 29]. LPSC-jurisdictional customers that pay the Transmission Owner rates that include an inflated Return are those that are harmed. Indeed, customers that pay a higher, unlawful rate suffer economic injury.

6135962v.1

Respondent argues that it could not identify "'the certain Louisiana Commission-jurisdictional customers' that are impacted" by its orders. [Resp. Br. 28]. But prior FERC decisions accepted Midcontinent transmission rate filings that listed the Louisiana customers that pay those rates, which are the subject of this proceeding, and the Commission has repeatedly stated that it "is aware of its own precedent." *See Centerfield Cooper Solar, LLC*, 176 F.E.R.C. ¶61,111, ¶25 (2021); *Entergy Servs., Inc.*, 153 F.E.R.C. ¶61,303, ¶7 n.30 (2015).

In a compliance filing to effectuate FERC *Opinion Nos. 569-A* and *Opinion No. 569-B*, the Transmission Owners provided FERC with revised Tariff records that listed the "Network Customers" of those Transmission Owners. [MISO Filing, No. ER17-215 (Jan. 31, 2022)]. For Entergy Louisiana, LLC, the revised Tariff record showed the Louisiana "Network Customers" that pay the transmission rate that is at issue in this proceeding. [*Id.* Att. B at 257; JA___]. One of those "Network Customers" is Dixie Electric Membership Corporation ("DEMCO"), an LPSC-jurisdictional cooperative that is harmed by FERC's orders because it pays the inflated Return that is at issue here.[1] [*Id.*]. FERC later accepted the Transmission

---

[1] Dixie Electric Membership Corporation is an LPSC-jurisdictional not-for-profit "[m]ember-owned local electric distribution cooperative . . . [p]owering 119,120+ meters" in a "[s]even-parish service area" in Louisiana. *About Us*, DEMCO, https://demco.org/cooperative-difference (last visited Jan. 6, 2026).

6135962v.1

Owners' filing. *Letter Order*, No. ER17-215 (Mar. 8, 2022); JA___-___.  FERC has actual knowledge of the contents of the filing that it was accepting.

## II.   THE LOUISIANA COMMISSION'S ARGUMENTS REGARDING THE INCONSISTENCIES BETWEEN FERC'S ORDERS AND FPA SECTION 206(B) ARE PROPERLY BEFORE THIS COURT AND REMAIN UNREBUTTED.

### A.    The Law-of-the-Circuit Doctrine Does Not Preclude the LPSC's Arguments Because FERC's Orders and This Court's Decision in *MISO TOs* Are Inconsistent With Earlier Precedent Of This Circuit.

FERC's *Remand* and *Rehearing Orders* are inconsistent with FPA Section 206(b) because, despite what FERC may claim, those orders effectively prohibit refunds for a second complaint and ignore the fact that the statute equates the actual rate paid by customers with the rate that is "the subject of the proceeding." [Int. Br. 18-27].  Instead of addressing those arguments directly, Respondent alleges that the LPSC's claims are barred by the law-of-the-circuit-doctrine and principles of issue preclusion.  [Resp. Br. 69-70].  Those assertions are incorrect.

The law-of-the-circuit doctrine does not apply "when a conflict exists within [the Court's] own precedent," as is the case here.  *FedEx Home Delivery v. Nat'l Labor Relations Bd.*, 849 F.3d 1123, 1127 n.3 (D.C. Cir. 2017); *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).  FERC's review of the Return that results from the first complaint to assess the merits of the second complaint is inconsistent with FPA Section 206(b) and this Court's precedent in numerous cases.

- 6 -

6135962v.1

Section 206(b) unambiguously provides FERC the authority to issue refunds in proceedings instituted under that section for amounts paid in excess of the just and reasonable rate. 16 U.S.C. § 824e. This Court has consistently recognized that authority and held that Section 206(b) provides the Commission authority to issue refunds. *See, e.g.*, *Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1211–12 (D.C. Cir. 2009) ("Section 206(b) of the FPA permits FERC . . . to order 'refunds of any amounts paid' in excess of the just and reasonable rate."); *Xcel Energy Servs., Inc. v. FERC*, 815 F.3d 947, 950 (D.C. Cir. 2016) ("[T]he Commission may . . . order refunds of the difference between the rate charged and the just and reasonable rate.").

By analyzing the Return that resulted from the first complaint to determine whether the Return for the second complaint is just and reasonable, the Respondent has violated this Court's long-standing precedent. [*See* LPSC Br. 18-23]. Section 206(b) only allows FERC to order refunds "to those persons who have paid those rates or charges which are the subject of the proceeding." 16 U.S.C. § 824e. Because no customer during the second complaint period ever paid the 9.98% Return that resulted from the first complaint proceeding, FERC's orders effectively preclude the Commission from ordering refunds for the second complaint period, even if FERC had found the new 9.98% rate to be unjust and unreasonable.

FERC's orders and this Court's ruling in *MISO TOs* eliminate the Commission's refund ability in another way that is unjust and unreasonable. When

6135962v.1

FERC finds that a rate is unjust and unreasonable under FPA Section 206, it must set a rate to be "thereafter observed and in force." 16 U.S.C. § 824e(a). In those instances, the utility charging the rate must file a request for rehearing before it can seek judicial review of the Commission order. 16 U.S.C. § 825l(b). In many cases, by the time FERC addresses the utility's rehearing request, the utility will have already implemented the new just and reasonable rate ordered by the Commission. Thus, if "FERC must look to the current [rate] at the time of decision," as this Court and FERC now require, the Commission would have to review ***the new just and reasonable rate*** that had just been implemented. *MISO TOs*, 45 F.4th at 262. Consequently, FERC would often be required to dismiss the complaint at the rehearing stage because the "currently effective" rate would now be just and reasonable.

This result occurs organically because of FERC's rehearing process and the judicial review requirements of the Federal Power Act. But utilities could also put this process into motion independently. Assume, for example, that in this case the Transmission Owners had submitted a new Section 205 filing to change their Return to 9.98% the day after this Court issued its decision in *MISO TOs*. In that scenario, FERC would have been required to analyze the Transmission Owners' newly-filed 9.98% rate when it issued its *Remand Order* because that would have been the "currently effective" rate at "the time of decision." The Commission would

- 8 -

have found the 9.98% rate to be just and reasonable for both the first and second complaint periods, leading to the dismissal of both complaints and potentially precluding FERC from being able to order refunds in either proceeding.

The two scenarios presented above show that FERC's holdings effectively strip the Commission of its powers to order refunds in Section 206 proceedings, in violation of the unambiguous language of the statute and this Court's precedent.  When a panel of this court is faced with a conflict that exists within its own precedent it is "bound by the earlier decision." *Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999); *United States v. Old Dominion Boat Club*, 630 F.3d 1039, 1045 (D.C. Cir. 2011).  This Court should interpret Section 206(b) consistent with its precedent that provides FERC authority to issue refunds for a fifteen month period under the statute; not its precedent in *MISO TOs* that remove that authority.

Lastly, this Court in *MISO TOs* left open the possibility to hear arguments regarding "some clearer indication of congressional intent" that showed that analyzing the actual Return paid by customers for the second complaint period would not upend the fifteen-month refund period.  *MISO TOs*, 45 F.4th at 262.  The LPSC has provided that "clearer indication of congressional intent" through explanations of and citations to the plain language of the statute.  [LPSC Br. 20-27].

6135962v.1

**B.      The LPSC's Arguments Are Not Barred By Issue Preclusion Because This Court's Statutory Interpretation of FPA Section 206 Was Not Essential To Its Decision in *MISO TOs*.**

The LPSC's arguments are not barred by issue preclusion as the Respondent alleges.  [Resp. Br. 70].  As the party moving to use preclusion to prevent relitigation of an issue, the Respondent has the burden of proving the three elements of issue preclusion, which includes whether the issue was "actually and necessarily determined by a court of competent jurisdiction in the prior case." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007); *see also Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 634 (D.C. Cir. 2010) ("[I]ssue preclusion does not apply . . . where the determination of an issue was . . . not 'essential to the judgment.'").

Respondent has not shown that this Court's previous findings regarding the Return to be used to adjudicate the second complaint was "essential to" the Court's decision in *MISO TOs*.  That analysis is likely absent because the ruling regarding the proper rate to be used for the second complaint period was not "essential" to the Court's final decision.  In *MISO TOs*, this Court ultimately vacated FERC's decisions and remanded the case on the basis that the Risk Premium model should not be used in FERC's methodology.  *MISO TOs*, 45 F.4th at 264.  It was not necessary for the Court to opine on any other issue once it had determined that the

6135962v.1

underlying FERC orders should be vacated and remanded due to FERC's use of the Risk Premium model.

### C. The Louisiana Commission Provides the Only Resolution to The Refund Issue That is Fully Consistent With FPA Section 206(b) and Respondent Has Never Rebutted The LPSC's Claims.

The LPSC and Respondent interpret Section 206(b) similarly, except that the Respondent ignores the last sentence of that provision. The LPSC agrees with FERC that the plain language of the statute controls and that the FPA does not prohibit successive complaints. [*See* Resp. Br. 67-69]. Respondent admits, and the LPSC agrees, that "FERC *must* set a refund effective date at the beginning of the complaint proceeding." [*Id.* at 68]. And Respondent acknowledges that "the up-to-15-month refund period exists only if FERC orders refunds *at the end* of FERC's deliberation." [*Id.* at 68.]. The LPSC agrees with that statement as well.

As far as the LPSC can tell, the only meaningful difference between the LPSC's interpretation of FPA Section 206 and that of the Respondent is that FERC fails to acknowledge the unambiguous language of the last sentence of Section 206(b) that equates the rate that is "the subject of the proceeding" with the rate that was actually "paid." 16 U.S.C. § 824e(b). A complete reading of the statute, without ignoring that critical language, provides the same methodology that Respondent espouses, *except* that it requires FERC to analyze the second complaint using the actual 12.38% Return that was in effect during the second complaint period. Neither

- 11 -

6135962v.1

the Respondent nor the Transmission Owner Intervenors attempt to reconcile the last sentence of Section 206(b) with their interpretations of the statute.

The Transmission Owner Intervenors argue that the LPSC's interpretation of Section 206(b) "would entitle customers to thirty months of refunds **based on challenges to a single rate** that had been found to be unjust and unreasonable." [Int. Br. 11 (emphasis added)]. But the text of Section 206(b) does not limit refunds to 15 months **per challenged rate** as the Transmission Owners claim. Instead, the statute only limits refunds to the fifteen-month period after the refund effective date that is set for each complaint. 16 U.S.C. § 824e(b). Contrary to the intervenors representations, Section 206(b) requires FERC to establish a refund effective date every time it institutes a proceeding under that section. *Id.* ("**Whenever** the Commission institutes a proceeding under this section, the Commission shall establish a refund effective date." (emphasis added)).

Congress also did not limit the frequency upon which a rate could be challenged; it only limited the duration of the refund period **for each complaint**. *See id.* As Respondent explains, "[t]his court may not narrow a provision's reach by inserting words Congress chose to omit." [Resp. Br. 56 (quoting *Lamax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020))].

The Intervenors argue the LPSC's interpretation would allegedly read the fifteen-month refund period "right out of the statute." [Int. Br. 12]. But that is

- 12 -

6135962v.1

not true.  As all parties seem to agree, FERC has discretion regarding whether it issues refunds in a Section 206 proceeding.  [*See* Resp. Br. 71; Int. Br. 14].  As a result, if FERC determines that a second complaint was submitted for the sole purpose of evading the fifteen-month refund period, the Commission has the discretion to deny refunds.  That discretion makes certain that successive complaints do not necessarily violate the fifteen-month refund limit.  FERC precedent is consistent with that interpretation and establishes that the Commission should not grant refunds for a successive complaint if it was initiated for the sole purpose of evading the fifteen-month refund period.  *See, e.g.*, *S. Co. Servs., Inc.*, 83 F.E.R.C. ¶61,079, at 61,386 (1998).

The Transmission Owners allege that the "Louisiana Commission makes no attempt to reconcile its reading of section 206(b) with the other explicit terms of that section."  [Int. Br. 12].  But no reconciliation is necessary because the LPSC's interpretation is not inconsistent with the statute.  The intervenors, on the other hand, are guilty of the allegations that they levy against the LPSC.  Neither the intervenors nor FERC have ever explained how the Commission can analyze the new 9.98% rate for the second complaint proceeding when Section 206(b) equates the rate that is the subject of that proceeding with the rate that was actually paid.  16 U.S.C. § 824e(b).  As the intervenors acknowledge, "[t]he words of a statute matter," yet they selectively ignore the words that are dispositive of the issue.  [Int. Br. 12].

6135962v.1

**D.    Contrary to Intervenors' Claim, the LPSC *Does* Challenge FERC's Decision Not to Set a New Rate to Be "Thereafter Observed and in Force" For the Second Complaint.**

Intervenors claim that the "Louisiana Commission does not appear to challenge FERC's decision not to set a new rate 'to be thereafter observed and in force'" for the second complaint. [Int. Br. 17]. That is not true. Because FERC analyzed the wrong rate for the second complaint period, the Commission was not able to set a new rate "to be thereafter observed and in force" for that period. FERC only held that the Return for the second complaint period was just and reasonable because the Commission reviewed the wrong Return. *See Remand Order*, ¶35; JA___.

FERC found that the composite zone of reasonableness for the Second Complaint proceeding was 7.86% to 12%. *Remand Order*, ¶39; JA ___. It found that the zone of "presumptively just and reasonable [Returns]" for that period was 9.24% to 10.62%. *Id.*, ¶40; JA ___. By comparing the newly-determined 9.98% Return to the applicable ranges, FERC found that the Return for the Second Complaint period—that was never paid by any customer—was just and reasonable. *Id.* Had the 12.38% rate that customers actually paid been analyzed, that rate would have fallen outside the composite zone of reasonableness and the range of presumptively just and reasonable Returns. Thus, had FERC analyzed the proper Return for the Second Complaint, it would have found the rate to be unjust and

- 14 -

unreasonable and been required to set a new just and reasonable rate "to be thereafter observed and in force."

## III.   RESPONDENT FAILED TO MEANINGFULLY CONSIDER THE LPSC'S NEW BETA DATA IN VIOLATION OF THE ARBITRARY AND CAPRICIOUS STANDARD.

### A.   Respondent's Claim That the LPSC Submitted New Beta Information "Too Late" is Moot Because FERC Considered That Evidence, Although in an Unlawful, Conclusory Fashion.

Regarding FERC's failure to correct the mismatch between the *Value Line* beta inputs used in the Capital Asset Model and the pool of companies used to calculate the expected market return component within the model, FERC primarily defends its orders on the basis that the LPSC provided its new beta calculations "too late." [Resp. Br. 73-74]. Respondent argues that the LPSC "failed to conduct its new calculations before FERC's issuance of [now vacated] Opinion No. 569-A." [*Id.* at 73]. Those arguments may have had merit if FERC had completely refused to consider the LPSC's beta calculations. But FERC did the opposite—it considered the LPSC's new evidence and decided, without adequate explanation, that the data could not be relied upon.[2] *Rehearing Order*, ¶42; JA ___-___ ("Nevertheless, we

---

[2] The LPSC stated in its opening brief that FERC "failed to address" the LPSC's new evidence regarding the beta issue. [LPSC Br. 27]. The LPSC clarifies that its statement was only intended to refer to a detailed substantive analysis of the LPSC's data, as opposed to the cursory review that the Commission performed. FERC clearly addressed the LPSC's new evidence by reviewing it and concluding that data for 29 of the 40 proxy companies was unreliable. *Rehearing Order*, ¶42; JA___. FERC's error was finding that the LPSC's evidence could not be relied upon without any meaningful consideration of its substance after the Commission voluntarily addressed the new information, albeit in an unlawful, conclusory manner.

6135962v.1

address the Louisiana Commission's arguments for the sake of clarity."). Respondent's decision to review the LPSC's evidence required it to meaningfully address the data and engage in reasoned decision making.  Respondent failed that statutory duty.

In a similar case, *American Clean Power Association v. FERC*, 54 F.4th 722 (D.C. Cir. 2022), this Court held that when FERC exercises its discretion to consider new evidence on remand, the Commission must meaningfully analyze the new evidence and not dismiss it in conclusory fashion.  There, FERC considered **new evidence** that was presented **on rehearing** after the case had been remanded by this Court—specifically "new evidence that many MISO-region transmission owners also own generators."  *See id.* at 723.  After reviewing that information, FERC found that the new evidence was "not adequate by itself to demonstrate that there [was] undue discrimination."  *Midcontinent Indep. Sys. Operators, Inc.*, 169 F.E.R.C. ¶61,233, ¶38 (2019).

On appeal, this Court found that FERC's explanation was insufficient and that the Commission had "failed to adequately address [the] new evidence." *Am. Clean Power*, 54 F.4th at 723.  The Court stated that FERC "simply said that the evidence . . . was inadequate to demonstrate discrimination, without explaining why this was so." *Id.* at 728.

6135962v.1

The facts in *American Clean Power Association v. FERC* are analogous to this case. In *MISO TOs*, this Court found that FERC's decision to "combine adjusted betas based on the New York Stock Exchange with an expected return based on the S&P 500" was not arbitrary and capricious because "no party provided adjusted betas from the appropriate time frame based on the S&P 500." *MISO TOs*, 45 F.4th at 260. Just as in *American Clean Power*, the LPSC provided new evidence on remand to rectify the deficiency pointed out by the Court. And as it did in *American Clean Power*, FERC addressed the evidence in cursory fashion without any meaningful consideration. The Commission concluded, without any explanation, that FERC could not rely on the LPSC's data because it was only provided for 29 of the 40 proxy companies. *Rehearing Order*, ¶42; JA___.

Once FERC decided to address the LPSC's evidence, it was obligated to do so in a meaningful manner. FERC's failure to explain why it could not rely on data provided for over 70% of the proxy companies to "demonstrate[] that betas derived from the New York Stock Exchange would be materially different than betas derived from the S&P 500" violates the arbitrary and capricious standard. *Am. Clean Power*, 54 F.4th at 728.

**B.    Respondent Fails to Rebut the LPSC's Claims That FERC Changed Its Evidentiary Standard on Rehearing.**

FERC argues that it "did not change its position . . . on whether to accept incomplete data" to prove the disparity between S&P 500 benchmarked betas and

6135962v.1

betas benchmarked against the New York Stock Exchange. [Resp. Br. 76]. But that is not an accurate representation of the issue. The issue raised by the LPSC was that FERC improperly increased the evidentiary burden on the Louisiana Commission without acknowledging that it was doing so. FERC initially rejected the use of S&P 500 benchmarked betas on the basis that no party had "**demonstrated** that betas derived from the New York Stock Exchange would be materially different than betas derived from the S&P 500." [*See* LPSC Br. 33-34 (emphasis added)]. But after the LPSC made that demonstration in its rehearing request, FERC changed the evidentiary burden on the LPSC and ruled that a "complete" set of data for all proxy companies was needed—a higher evidentiary burden than a demonstration that there is a material difference between NYSE-benchmarked betas and S&P 500-benchmarked betas. *Rehearing Order*, ¶42; JA___.

In Section 206 proceedings a challenger is only required to show that a rate is unjust and unreasonable by a preponderance of the evidence. *E.g.*, *Transource, LLC*, 168 F.E.R.C. ¶61,119, ¶51 (2019). That standard is consistent with FERC's initial requirement that the LPSC "demonstrate" the material difference between S&P 500 betas and *Value Line* betas. The LPSC's evidence satisfied that requirement, showing that 28 of the 29 S&P 500 betas were lower than their *Value Line* counterparts. Even assuming the remaining 11 proxy group companies defied that strong trend, the evidence the LPSC provided was still sufficient to demonstrate

6135962v.1

that S&P 500 betas for 70% of the 40 proxy group companies were lower than the *Value Line* beta counterparts.  FERC never explained why such a strong demonstration of evidence was unreliable, nor did it acknowledge its shift in the evidentiary burden when it required a complete set of S&P 500-benchmarked betas. FERC's decision is arbitrary and capricious because it failed to explain why it was increasing the evidentiary burden on the LPSC or even acknowledge that it was doing so.  *See F.C.C. v. Fox Television Stations, Inc.,* 556 U.S. 502, 515 (2009).

**C.  Respondent's Preclusion Arguments Are Incorrect Because FERC Altered Its Requirements in Its Rehearing Order Without Prior Notice.**

Respondent claims that the LPSC's argument regarding the evidentiary standard that FERC required the LPSC to demonstrate is jurisdictionally forfeited for failure to raise the argument on rehearing.  [Resp. Br. 76].  But the LPSC's argument falls squarely within the "reasonable grounds" exception to the issue exhaustion requirements of the Federal Power Act.  *See* 16 U.S.C. § 825l(b).  In *Columbia Gas Transmission Corp. v. FERC*, 477 F.3d 739, 742 (D.C. Cir. 2007), this Court held that "when a party filing a petition for rehearing was not on notice of the rationale that FERC would adopt in the rehearing order, the party has a 'reasonable ground' for not having addressed that rationale in its petition and accordingly may do so for the first time in court."  *Id.*  That exception applies here.

6135962v.1

The LPSC was unable to raise the issue regarding FERC's new "complete set" standard in its request for rehearing of the *Remand Order* because FERC did not require that showing until the Commission issued its *Rehearing Order*. The LPSC could not have known that FERC would raise the burden for showing the beta disparity in its *Rehearing Order*.

Lastly, Respondent claims that the LPSC's arguments are barred by *res judicata* "because the Louisiana Commission could have pressed this evidence before the Court in *Midcontinent.*" [Resp. Br. 74]. But the LPSC was not permitted to introduce new evidence at the appeal stage of the proceeding, so it could not have raised the argument there as Respondent alleges. Instead, the LPSC properly brought its new evidence before FERC on remand after the Commission's prior opinions had been vacated and after this Court invited that evidence. *See MISO TOs*, 45 F.4th at 260 ("[N]o party provided adjusted betas from the appropriate time frame based on the S&P 500."). Moreover, the petitions for review were granted in *MISO TOs*, thus there was no reason for the LPSC to seek rehearing of non-essential rulings from the Court's decision when the case was vacated and remanded to FERC to "reopen proceedings" and calculate the correct Return "afresh." *Id.* at 265; [Resp. Br. 39-40].

6135962v.1

**IV.    RESPONDENT'S DECISION REGARDING WHETHER THE ADJUSTED BETAS CONTAINED IN THE BASE CAPITAL-ASSET MODEL COULD BE ALTERED TO UNADJUSTED BETAS FAILS THE ARBITRARY AND CAPRICIOUS STANDARD.**

For the issue regarding the mismatch between the betas used in the base capital asset model and those used in the size premium adjustment, the LPSC interprets this Court's decision in *MISO TOs* as concluding that FERC was stuck with the decision of choosing "between 'imperfect correspondence' and no size adjustment at all." [LPSC Br. 41]; *MISO TOs*, 45 F.4th at 260. The LPSC continues to believe that this Court never considered whether the mathematical error that exists because of FERC's use of adjusted betas in the base capital-asset model with a size premium that incorporated unadjusted betas could or should be corrected by changing the betas used in the base capital asset model. In other words, the LPSC interprets *MISO TOs* as only deciding that the use of the size premium adjustment was not unjust and unreasonable despite the imperfect correspondence, but it did not opine on whether the betas in the base capital-asset model should be corrected. *MISO TOs*, 45 F.4th at 260.

However, if this Court confirms that it already considered the possibility that the betas included in the base capital-asset model could be converted to unadjusted betas in its *MISO TOs* decision, the LPSC concedes that the issue is likely barred. But if this Court confirms that the issue was never addressed in *MISO*

- 21 -

6135962v.1

*TOs*, then FERC was required to address the LPSC's arguments in its *Rehearing Order*, which it failed to do.

## CONCLUSION

FERC's orders should be remanded for the Commission to correct the beta mismatch issues and to revise its refund methodology to be consistent with Federal Power Act Section 206.

Respectfully submitted,

*/s/ Justin A. Swaim*

Noel J. Darce
Dana M. Shelton
Justin A. Swaim
   Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112-4042
Telephone: (504) 581-3200
Email: ndarce@stonepigman.com
dshelton@stonepigman.com
jswaim@stonepigman.com

Kathryn Bowman
Executive Counsel
Louisiana Public Service Commission
Galvez Building – 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
Telephone: (225) 342-9888
Email: Kathryn.bowman@la.gov

*Attorneys for the Louisiana Public Service Commission*

6135962v.1

- 23 -

**RULE 32(a)(7)(b) CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with Rule 32(a)(7)(b) and this Court's July 11, 2025 Order Setting Briefing Schedule.  It contains 4,960 words and has been prepared using Microsoft Word in 14-point Times New Roman font.


   */s/ Justin A. Swaim*
Justin A. Swaim

6135962v.1

## CERTIFICATE OF SERVICE

I hereby certify that copies of the above and foregoing Reply Brief for Petitioner have been served upon the Solicitor of the Federal Energy Regulatory Commission and all counsel of record through the Court's CM/ECF system this 7th day of January, 2026.

/s/ *Justin A. Swaim*
Justin A. Swaim

- 24 -

6135962v.1