**ORAL ARGUMENT SCHEDULED FOR MARCH 17, 2026**

Nos. 25-1045, 25-1066, 25-1069, 25-1115, 25-1124, 25-1126
(consolidated)

———————————————

# United States Court of Appeals
# for the District of Columbia Circuit

———————————————

MISO Transmission Owners, *et al.*
and
Louisiana Public Service Commission,
*Petitioners*,

v.

Federal Energy Regulatory Commission,
*Respondent*.

———————————————

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———————————————

**INTERVENOR BRIEF OF THE
LOUISIANA PUBLIC SERVICE COMMISSION
AND OTHER ALIGNED INTERVENORS**

———————————————

*(Counsel listed on inside cover)*

Final Brief: January 26, 2026

ALLIANT ENERGY CORPORATE
SERVICES, INC.
*/s/ James K. Mitchell*
James K. Mitchell
James K. Mitchell Law PLLC
1629 K Street, NW, Suite 306
Washington, DC 20006
703-969-0402
jameskmitchelllaw@gmail.com


INDUSTRIAL CONSUMERS
GROUP
*/s/ Kenneth R. Stark*
Kenneth R. Stark
Matthew L. Garber
100 Pine Street
Harrisburg, PA 17101
717-237-5378
717-260-1666
kstark@mcneeslaw.com
mgarber@mcneeslaw.com

*Counsel to the Coalition of MISO
Transmission Customers and on
behalf of Association of Businesses
Advocating Tariff Equity, Illinois
Industrial Energy Consumers,
Indiana Industrial Energy
Consumers, Inc., and Wisconsin
Industrial Energy Group*

AMERICAN MUNICIPAL POWER,
INC.
*/s/ Gerit F. Hull*
Gerit F. Hull
Deputy General Counsel for
Regulatory Affairs
American Municipal Power, Inc.
1111 Schrock Road, Suite 100
Columbus, OH 43229
(614) 540-0852
ghull@amppartners.org

Jason T. Gray
Duncan & Allen LLP
1730 Rhode Island Ave., NW
Suite 700
Washington, DC 20036
(202) 842-8197
jtg@duncanallen.com

LOUISIANA PUBLIC SERVICE
COMMISSION
*/s/ Noel J. Darce*
Noel J. Darce
Dana M. Shelton
Justin A. Swaim
STONE PIGMAN WALTHER
WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112-4042
(504) 581-3200
ndarce@stonepigman.com
dshelton@stonepigman.com
jswaim@stonepigman.com

Kathryn Bowman
Executive Counsel
Louisiana Public Service Commission
Galvez Building – 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
(225) 342-9888
Kathryn.bowman@la.gov

*Attorneys for the Louisiana Public
Service Commission*

MISSISSIPPI PUBLIC SERVICE
COMMISSION, ET AL.
*/s/ Jeffrey M. Bayne*
Stephen C. Pearson
Jeffrey M. Bayne
David E. Pomper
Spiegel & McDiarmid LLP
1818 N Street NW
8th Floor
Washington, DC 20036
(202) 879-4000
steve.pearson@spiegelmcd.com
jeffrey.bayne@spiegelmcd.com
david.pomper@spiegelmcd.com

*Attorneys for the Mississippi Public
Service Commission, Missouri Public
Service Commission, and Missouri
Joint Municipal Electric Utility
Commission d/b/a the Missouri
Electric Commission*

NORRIS ELECTRIC COOPERATIVE
*/s/ Bhaveeta K. Mody*
Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Norris Electric
Cooperative*

ORGANIZATION OF MISO
STATES, INC.
*/s/ Andrea I. Sarmentero*
Andrea I. Sarmentero Garzón
Kevin M. Kurzeja
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street N.W.
Suite 700
Washington D.C. 20006
(202) 791-3729
asg@dwgp.com
kmk@dwgp.com

*Counsel to the Organization of
MISO States, Inc.*

RESALE POWER GROUP OF IOWA
*/s/ Katherine Ann Wade*
Katherine Ann Wade
James H. Holt
kaw@bettsandholt.com
jhh@bettsandholt.com
Betts & Holt LLP
1101 Connecticut Ave., N.W.,
Ste. 450
Washington, D.C. 20036
(202) 530-3380

*Counsel for Resale Power Group of
Iowa*

RURAL ELECTRIC
CONVENIENCE COOPERATIVE
*/s/ Bhaveeta K. Mody*
Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Rural Electric
Convenience Cooperative*

SOUTHWESTERN ELECTRIC
COOPERATIVE, INC.
*/s/ Bhaveeta K. Mody*
Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Southwestern Electric
Cooperative, Inc.*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties:

The parties appearing before this Court and before the Federal Energy Regulatory Commission are as stated in the Federal Energy Regulatory Commission's Brief.

### B.    Rulings under review:

The rulings under review before this Court are as stated in the Federal Energy Regulatory Commission's Brief.

### C.    Related Cases:

This case concerns the review of Federal Energy Regulatory Commission Orders issued on remand from this Court's decision in *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022). To counsel's knowledge, there are no related cases pending elsewhere.

Respectfully submitted,

/s/ *Andrea Sarmentero*
Andrea I. Sarmentero Garzón
Kevin M. Kurzeja
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street N.W.
Suite 700
Washington D.C. 20006
(202) 791-3729
asg@dwgp.com
kmk@dwgp.com

*Counsel to the Organization of MISO States,
Inc.*

Dated: January 26, 2026

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, the following intervenors submit the required Disclosure Statements:[1] Alliant Energy Corporate Services, Inc.; American Municipal Power, Inc.; Industrial Customer Group; Organization of MISO States, Inc.; Norris Electric Cooperative; Resale Power Group of Iowa; Rural Electric Convenience Cooperative; and Southwestern Electric Cooperative, Inc.

## Corporate Disclosure Statement of
## Alliant Energy Corporate Services, Inc.

Alliant Energy Corporate Services, Inc. ("Alliant Services") is a direct, wholly owned subsidiary of Alliant Energy Corporation ("Alliant"), a regulated investor-owned public utility holding company incorporated in Wisconsin with corporate headquarters in Madison, Wisconsin. There is no corporation that owns a 10% or greater interest in Alliant.

Alliant Services is agent for Interstate Power and Light Company and Wisconsin Power and Light Company (collectively, the "Alliant Operating Companies"), each of which is a wholly owned subsidiary of Alliant. Collectively,

---

[1] The Louisianna Public Service Commission, the Mississippi Public Service Commission, Missouri Public Service Commission, and Missouri Joint Municipal Electric Utility Commission d/b/a the Missouri Electric Commission, as government entities, are exempt from providing Corporate Disclosure Statements under Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1.

the Alliant Operating Companies provide regulated electric and natural gas service to approximately 992,300 electric and approximately 426,150 natural gas customers in Iowa and Wisconsin.

The Alliant Operating Companies purchase electric transmission service from the Midcontinent Independent System Operator for delivery of electricity to their retail and wholesale electric service customers pursuant to rates regulated by and on file at the Federal Energy Regulatory Commission ("FERC"). In the orders under review, FERC ordered a reduction in the return on equity used to calculate such rates being charged to the Alliant Operating Companies. The FERC also ordered payment of refunds to transmission service customers of Midcontinent, including the Alliant Operating Companies, based on the reduced Return.

### Corporate Disclosure Statement of American Municipal Power, Inc.

American Municipal Power, Inc. ("AMP") is a non-profit Ohio corporation with more than 130 municipal members in the states of Indiana, Kentucky, Maryland, Michigan, Ohio, Pennsylvania, Virginia, and West Virginia, and the Delaware Municipal Electric Corporation, a joint action agency with eight Delaware members. AMP is a wholesale power supplier and services provider for its members' electric systems.

AMP issues no stock, has no parent corporation, and is not owned in whole or in part by any publicly held corporation.

## Corporate Disclosure Statements of
## Industrial Customer Group

Association of Businesses Advocating Tariff Equity ("ABATE") is a voluntary association of large industrial businesses that are located in and doing business in the state of Michigan. ABATE has been formed for the express purpose of participating in regulatory proceedings to protect the interests of businesses in connection with energy and utility matters. Members of ABATE consume substantial quantities of electricity and natural gas, and, in Michigan alone, their combined gas and electric bills are approximately $1.2 billion per year. ABATE has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in ABATE.

Coalition of MISO Transmission Customers ("CMTC") is a continuing ad hoc association of large industrial and commercial end-users of electricity in the Midwest operated for the purposes of representing the interests of industrial energy consumers before regulatory, judicial, and legislative bodies. CMTC members have facilities throughout the Midcontinent Independent System Operator, Inc. region, and CMTC is a Midcontinent Independent System Operator, Inc. member. CMTC has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in CMTC.

Illinois Industrial Energy Consumers ("IIEC") is an association of large industrial customers in the State of Illinois. They are eligible to choose a retail

v

supplier other than their electric utility under Illinois law, and they are eligible for transmission service under the applicable Regional Transmission Organization and Independent System Operator tariffs. They consume approximately 13 billion kilowatt-hours of electricity and employ approximately 90,000 people in the State of Illinois. They have members served by Ameren Illinois, a member of Midcontinent Independent System Operator, Inc. They also have manufacturing facilities located within the Midcontinent Independent System Operator, Inc.'s region. IIEC has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in IIEC.

Indiana Industrial Energy Consumers, Inc. ("INDIEC") is a not-for-profit 501(C)(6) corporation incorporated and doing business in the State of Indiana. INDIEC was formed to provide large energy users an independent voice in regulatory and legislative matters that impact utility rates and energy policies. INDIEC's 23 member companies' electric spend is over $529 million annually. INDIEC has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in INDIEC.

Wisconsin Industrial Energy Group ("WIEG") is a voluntary member association consisting of large industrial and commercial customers in the State of Wisconsin. As key drivers of economic growth and development throughout the state, WIEG members collectively employ approximately 50,000 people in

Wisconsin and consume approximately 3.6 billion kilowatt-hours of electricity annually. WIEG has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in WIEG.

**Corporate Disclosure Statement of
Norris Electric Cooperative**

Norris Electric Cooperative is an electric distribution cooperative that serves rural consumers in southern Illinois.  Norris Electric Cooperative's members are located within the Ameren Illinois Company rate zone within the Midcontinent footprint.  Norris Electric Cooperative also takes transmission service at rates calculated by Ameren Illinois Company's transmission rate formula.

Norris Electric Cooperative has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in Norris Electric Cooperative.

**Corporate Disclosure Statement of
Organization of MISO States, Inc.[2]**

The Organization of MISO States, Inc. is a Non-Profit Domestic Corporation (under the Indiana Nonprofit Corporation Act of 1991), self-governed, member-based organization of representatives from entities with regulatory jurisdiction over utilities participating in the Midcontinent Independent System Operator, Inc. The purpose of the Organization of MISO States is to promote the public interest and social welfare by providing means for its members to act in concert when deemed to be in the common interest of their affected publics. The Organization of MISO States does not issue securities to the public and is not owned by any publicly held company.

---

[2] The Organization of MISO States is submitting this brief because the following members voted in support of filing: Arkansas Public Service Commission, Illinois Commerce Commission, Iowa Utilities Commission, Kentucky Public Service Commission, Louisiana Public Service Commission, Michigan Public Service Commission, Minnesota Public Utilities Commission, Mississippi Public Service Commission, Missouri Public Service Commission, Montana Public Service Commission, New Orleans City Council, North Dakota Public Service Commission, South Dakota Public Utilities Commission, Public Service Commission of Wisconsin, and Public Utility Commission of Texas. The Manitoba Public Utilities Board and the Indiana Utility Regulatory Commission did not participate in the vote on this filing.

## Corporate Disclosure Statement of
## Resale Power Group of Iowa

Resale Power Group of Iowa ("RPGI") is a special-purpose governmental entity organized pursuant to Chapter 28E of the Code of Iowa to purchase electric supply, transmission and related services as an agent for its members. RPGI does not issue stock or debt securities and does not have a parent company. RPGI's members are 24 Iowa municipal utilities, one cooperative, and one privately-owned utility. RPGI's members hold joint ownership interests in its assets. As local government entities, these members do not issue shares, and, to the best of RPGI's knowledge and belief, do not issue debt securities to the public.

## Corporate Disclosure Statement of
## Rural Electric Convenience Cooperative

Rural Electric Convenience Cooperative is an electric distribution cooperative that serves rural consumers in Illinois. Rural Electric Convenience Cooperative's members are located within the Ameren Illinois Company rate zone within the Midcontinent footprint. Rural Electric Convenience Cooperative also takes transmission service at rates calculated by Ameren Illinois Company's transmission rate formula.

Rural Electric Convenience Cooperative has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in Rural Electric Convenience Cooperative.

**Corporate Disclosure Statement of**
**Southwestern Electric Cooperative, Inc.**

Southwestern Electric Cooperative, Inc. ("Southwestern") is an electric distribution cooperative that serves rural consumers in Bond, Clay, Clinton, Effingham, Fayette, Macoupin, Madison, Marion, Montgomery, Shelby, and St. Clair counties in the State of Illinois. Located approximately 45 miles east of St. Louis, Missouri and 85 miles south of Springfield, Illinois, Southwestern serves nearly 24,000 members and operates over 3,500 miles of energized electric line. Southwestern is a Midcontinent transmission customer located within the Ameren Illinois Company rate zone and takes service under the Ameren Illinois Company transmission rate formula.

Southwestern Electric Cooperative, Inc. has no parent companies, and there are no publicly held companies that have a 10% or greater ownership interest in Southwestern Electric Cooperative, Inc.

Respectfully submitted,

x

ALLIANT ENERGY CORPORATE
SERVICES, INC.
*/s/ James K. Mitchell*
James K. Mitchell
James K. Mitchell Law PLLC
1629 K Street, NW, Suite 306
Washington, DC 20006
703-969-0402
jameskmitchelllaw@gmail.com

INDUSTRIAL CONSUMERS
GROUP
*/s/ Kenneth R. Stark*
Kenneth R. Stark
Matthew L. Garber
100 Pine Street
Harrisburg, PA 17101
717-237-5378
717-260-1666
kstark@mcneeslaw.com
mgarber@mcneeslaw.com

*Counsel to the Coalition of MISO
Transmission Customers and on
behalf of Association of Businesses
Advocating Tariff Equity, Illinois
Industrial Energy Consumers,
Indiana Industrial Energy
Consumers, Inc., and Wisconsin
Industrial Energy Group*

AMERICAN MUNICIPAL
POWER, INC.
*/s/ Gerit F. Hull*
Gerit F. Hull
Deputy General Counsel for Regulatory
Affairs
American Municipal Power, Inc.
1111 Schrock Road, Suite 100
Columbus, OH 43229
(614) 540-0852
ghull@amppartners.org

Jason T. Gray
Duncan & Allen LLP
1730 Rhode Island Ave., NW
Suite 700
Washington, DC 20036
(202) 842-8197
jtg@duncanallen.com

MISSISSIPPI PUBLIC SERVICE
COMMISSION, ET AL.
*/s/ Jeffrey M. Bayne*
Stephen C. Pearson
Jeffrey M. Bayne
David E. Pomper
Spiegel & McDiarmid LLP
1818 N Street NW
8th Floor
Washington, DC 20036
(202) 879-4000
steve.pearson@spiegelmcd.com
jeffrey.bayne@spiegelmcd.com
david.pomper@spiegelmcd.com

*Attorneys for the Mississippi Public
Service Commission, Missouri Public
Service Commission, and Missouri Joint
Municipal Electric Utility Commission
d/b/a the Missouri Electric Commission*

LOUISIANA PUBLIC SERVICE
COMMISSION
*/s/ Noel J. Darce*
Noel J. Darce
Dana M. Shelton
Justin A. Swaim
STONE PIGMAN WALTHER
WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112-4042
(504) 581-3200
ndarce@stonepigman.com
dshelton@stonepigman.com
jswaim@stonepigman.com

Kathryn Bowman
Executive Counsel
Louisiana Public Service Commission
Galvez Building – 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
(225) 342-9888
Kathryn.bowman@la.gov

*Attorneys for the Louisiana Public
Service Commission*

NORRIS ELECTRIC COOPERATIVE
*/s/ Bhaveeta K. Mody*
Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Norris Electric Cooperative*

ORGANIZATION OF MISO STATES,
INC.
*/s/ Andrea I. Sarmentero*
Andrea I. Sarmentero Garzón
Kevin M. Kurzeja
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street N.W.
Suite 700
Washington D.C. 20006
(202) 791-3729
asg@dwgp.com
kmk@dwgp.com

*Counsel to the Organization of MISO
States, Inc.*

xii

RESALE POWER GROUP OF IOWA
*/s/ Katherine Ann Wade*
Katherine Ann Wade
James H. Holt
kaw@bettsandholt.com
jhh@bettsandholt.com
Betts & Holt LLP
1101 Connecticut Ave., N.W.,
Ste. 450
Washington, D.C. 20036
(202) 530-3380

*Counsel for Resale Power Group of Iowa*

SOUTHWESTERN ELECTRIC
COOPERATIVE, INC.
*/s/ Bhaveeta K. Mody*
Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Southwestern Electric Cooperative, Inc.*

RURAL ELECTRIC
CONVENIENCE COOPERATIVE
*/s/ Bhaveeta K. Mody*
Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Rural Electric Convenience Cooperative*

xiii

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES................ i

CORPORATE DISCLOSURE STATEMENTS ....................................................... iii

TABLE OF AUTHORITIES.................................................................................xv

GLOSSARY ...................................................................................................... xviii

STATUTES AND REGULATIONS ...........................................................................1

SUMMARY OF ARGUMENT................................................................................1

ARGUMENT ........................................................................................................3

    I.  FERC Properly Ordered September 2016 as the Prospective Effective Rate for the 9.98% Return.................................................................................3

        A.  Opinion 551 Fixed the Replacement Rate and Followed the Section 206 Predicates for Prospective Relief. .....................................................4

            1) Having found the existing Return unjust and unreasonable, FERC was obligated to promptly establish an effective prospective Return. 5

            2) The FPA and precedent confirm that FERC has authority to maintain the September 2016 effective date. ...................................................7

        B.  FERC Properly Acted to Correct Prior Legal Errors. ...........................11

            1) Binding Circuit Precedent Confirms the Error-Correction Authority FERC Applied Here. ..........................................................................11

            2) FERC's Revisions to the Replacement Return Were Necessary to Correct Legal Errors..........................................................................14

        C.  FERC's Remedy Serves the FPA's Consumer Protection Purposes. .....16

    II.  This Court should reject Owners' arguments regarding the Second Complaint. ..............................................................................................19

CONCLUSION ...................................................................................................21

## TABLE OF AUTHORITIES

**COURT CASES:**

*Alexandria, Minn. v. Fed. Power Comm'n*,
555 F.2d 1020 (D.C. Cir. 1977) ...................................................................17

*Bluefield Waterworks & Improvement Co. v. Pub. Serv.*
*Comm'n of W. Va.*, 262 U.S. 679 (1923) .....................................................5

*Canadian Ass'n of Petroleum Producers v. FERC*,
254 F.3d 289 (D.C. Cir. 2001) ...................................................................16

*City of Redding v. FERC*,
693 F.3d 828 (9th Cir. 2012) .......................................................................9

*Consolidated Gas Transmission Corp. v. FERC*,
771 F.2d 1536 (D.C. Cir.1985) ...................................................................9

*Elect. Dist. No. 1 v. FERC*,
774 F.2d 490 (D.C. Cir. 1985) ..................................................................8,9

*Emera Me. v. FERC*,
854 F.3d 9 (D.C. Cir. 2017) ...............................................................1, 7, 14

*Fed. Power Comm'n v. Hope Nat. Gas Co.*,
320 U.S. 591 (1944) .....................................................................................5

*Fed. Power Comm'n v. Nat. Gas Pipeline Co.*,
315 U.S. 575 (1942) ..................................................................................6, 7

*Hughes v. Talen Energy Mktg., LLC*,
578 U.S. 150 (2016) .....................................................................................7

*Indep. U.S. Tanker Owners Comm. v. Dole*,
809 F.2d 847 (D.C. Cir. 1987) ...................................................................13

*La. Pub. Serv. Comm'n v. FERC*,
184 F.3d 892 (D.C. Cir. 1999) .....................................................................6

*MISO Transmission Owners v. FERC*,
45 F.4th 248 (D.C. Cir. 2022) ..................................................6, 13, 14, 19

*Mun. Light Bds. v. Fed. Power Comm'n*,
   450 F.2d 1341 (D.C. Cir. 1971) ................................................................17

*Nat. Gas Clearinghouse v. FERC*,
   965 F.2d 1066 (D.C. Cir. 1992) ....................................................11, 12, 18

*Niagara Mohawk Power Corp. v. Fed. Power Comm'n*,
   379 F.2d 153 (D.C. Cir. 1967) ................................................................12

*Off. of Consumers' Counsel, State of Ohio v. FERC*,
   826 F.2d 1136 (D.C. Cir. 1987) ....................................................7, 12, 16

*Okla. Gas & Elec. Co. v. FERC*,
   11 F.4th 821 (D.C. Cir. 2021) ................................................................18

*Tenn. Valley Mun. Gas Ass'n v. Fed. Power Comm'n*,
   470 F.2d 446 (D.C. Cir. 1972) ..............................................7, 12, 16, 18

*TNA Merch. Projects, Inc. v. FERC*,
   857 F.3d 354 (D.C. Cir. 2017) ....................................................11, 12, 13

*Town of Concord v. FERC*,
   955 F.2d 67 (D.C. Cir. 1992) ..............................................................9, 12

*United Gas Improvement Co. v. Callery Props., Inc.*,
   382 U.S. 223 (1965) ................................................................................11

*Verso Corp. v. FERC*,
   898 F.3d 1 (D.C. Cir. 2018) ......................................................................9

*Xcel Energy Servs., Inc. v. FERC*,
   815 F.3d 947(D.C. Cir. 2016) ............................................................12, 13

## ADMINISTRATIVE CASES:

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator,*
   *Inc.*, 148 FERC ¶ 61,049 (2014) ..............................................................21

*Arkansas Elec. Coop. Corp. v. ALLETE, Inc.,*
   151 FERC ¶ 61,219 (2015)........................................................................21

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. System Operator,*
   *Inc.*, 153 FERC ¶ 63,027 (2015) ..............................................................5

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator*, *Inc.*,
Opinion 551, 156 FERC ¶ 61,234 (Sept. 28, 2016) ........................................1, 4, 5

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator*, *Inc.*,
165 FERC ¶ 61,118 (November 15, 2018)....................................................14, 15, 19

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator*, *Inc.*,
Opinion 569, 169 FERC ¶ 61,129 (Nov. 21, 2019)...............................................19

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*,
Opinion 569-A, 171 FERC ¶ 61,154 (May 21, 2020) ....................................................

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator*, *Inc.*,
Opinion 569-B, 173 FERC ¶ 61,159 (Nov. 19, 2020).......................................5, 17

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator,
Inc.*, 189 FERC ¶ 61,036 (Oct. 17, 2024) .......................................................4, 21

*Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*,
190 FERC ¶ 61,184 (Mar. 25, 2025)....................................................................

*Martha Coakley, et al v. Bangor Hydro-Electric Co., et al.*,
Opinion 531, 147 FERC ¶ 61,234 (2014) ............................................................14

**STATUTES:**

16 U.S.C. § 824e (FPA Section 206)................................................................*passim*

16 U.S.C. § 825h (FPA Section 309) ................................................................8, 12

16 U.S.C. § 825*l* (FPA Section 313) ....................................................................8

**CONGRESSIONAL MATERIALS:**

134 Cong. Rec. H8094-02 (daily ed. Sept. 23, 1988)...............................................9

# GLOSSARY

| | |
|---|---|
| *Amicus* | New England Transmission Owners |
| *Amicus* Br. | Brief of the New England Transmission Owners |
| Briefing Order | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator*, *Inc*., 165 FERC ¶ 61,118 (November 15, 2018) |
| *Clearinghouse* | *Nat. Gas Clearinghouse v. FERC*, 965 F.2d 1066 (D.C. Cir. 1992) |
| Commission or FERC | Respondent Federal Energy Regulatory Commission |
| *Emera Maine* | *Emera Me. v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) |
| FERC Br. | Opening Brief of Respondent, the Federal Energy Regulatory Commission |
| First Complaint | November 12, 2013, complaint filed in Docket No. EL14-12 by Association of Businesses Advocating Tariff Equity, et al. |
| First Complaint Hearing Order | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 148 FERC ¶ 61,049 (2014) |
| FPA | Federal Power Act |
| Initial Decision | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. System Operator, Inc.*, 153 FERC ¶ 63,027 (2015) |
| July 2017 Refund Report | Midcontinent, Refund Report, ER17-215, (July 29, 2017) |

xviii

| | |
|---|---|
| Midcontinent | Midcontinent Independent System Operator, Inc. |
| *MISO Transmission* | *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) |
| NGA | Natural Gas Act |
| *OCC Ohio* | *Off. of Consumers' Counsel, State of Ohio v. FERC*, 826 F.2d 1136 (D.C. Cir. 1987) |
| Opinion 551 | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion 551,156 FERC ¶ 61,234 (Sept. 28, 2016) |
| Opinion 569 | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion 569, 169 FERC ¶ 61,129 (Nov. 21, 2019) |
| Opinion 569-A | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion 569-A, 171 FERC ¶ 61,154 (May 21, 2020) |
| Opinion 569-B | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, Opinion 569-B, 173 FERC ¶ 61,159 (Nov. 19, 2020) |
| Opinion 531 | *Martha Coakley, et al v. Bangor Hydro-Electric Co., et al.*, Opinion 531, 147 FERC ¶ 61,234 (2014) |
| Owners | Petitioners MISO Transmission Owners |
| Owners Br. | Opening Brief of Petitioners MISO Transmission Owners |

xix

| | |
|---|---|
| Remand Order | *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 189 FERC ¶ 61,036 (Oct. 17, 2024) |
| Return | Return on Equity |
| Second Complaint | February 12, 2015, complaint filed in Docket No. EL15-45 by Arkansas Electric Cooperative Corporation, et al. |
| Second Complaint Hearing Order | *Arkansas Elec. Coop. Corp. v. ALLETE, Inc.*, 151 FERC ¶ 61,219 (2015) |
| *Tennessee* | *Tenn. Valley Mun. Gas Ass'n v. Fed. Power Comm'n*, 470 F.2d 46 (D.C. Cir. 1972) |
| *TNA* | *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354 (D.C. Cir. 2017) |
| *Xcel* | *Xcel Energy Servs., Inc. v. FERC*, 815 F.3d 947 (D.C. Cir. 2016) |

## STATUTES AND REGULATIONS

The pertinent statutes and regulations are produced in an Addendum to this brief.

## SUMMARY OF ARGUMENT

The Federal Energy Regulatory Commission ("Commission or FERC") satisfied all three Federal Power Act ("FPA") Section 206(a) predicates for placing a replacement rate into effect upon complaint. FERC heard the MISO Transmission Owners' ("Owners") defense of the prior 12.38% return on equity ("Return"), found such Return unjust and unreasonable, and in 2016 specified a replacement Return to apply thereafter. Opinion 551, P67, JA0882. However, the replacement Return FERC initially selected (10.32%) embodied reversible error, made plain while this case remained pending before FERC, in light of this Court's related 2017 decision in *Emera Me. v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) ("*Emera Maine*"). In 2018, FERC invited further briefing and new evidence to support a replacement Return free of that error, to be implemented with the same 2016 effective date ordered in Opinion 551.

Owners initially supported the 2016 effective date, arguing for a replacement Return exceeding 10.50%. Intervenors accepted the reopening of the record, and the resulting delay, because the 2016 effective date placed them in the position they would have occupied without FERC's legal error. In 2019-2020, after working its way through Owners' multifaceted arguments for Return-increasing method

1

changes, FERC revised the replacement Return first to 9.88% and later to 10.02%. At this point, Owners launched their challenge to the 2016 effective date. In 2022, this Court granted, in part, a petition for review from customers, finding FERC's Return method arbitrary and vacating and remanding FERC's 2019-2020 orders. In the 2024-25 remand orders now under review, FERC further adjusted the replacement Return to 9.98%. Owners accept this Return level but contend that FERC should have let them continue charging an unjust and unreasonable Return until 2024.

Owners claim that enactment of Section 206(b) implicitly amended Section 206(a) to require that replacement rates cannot take effect until "the conclusion" of proceedings thereunder, and that such conclusion occurs only with a final, non-appealable FERC order. The statutory text, legislative history, and controlling precedent before and after that 1988 amendment all belie that claim. Indeed, FERC has explicit statutory authority, recognized in controlling precedent, to repair an erroneous replacement rate while keeping its effective date, so as to place parties in the position they would have occupied but for FERC's error.

Owners complain that the September 2016 effective date undermines rate "predictability." But all parties were on notice, from the day Opinion 551 was challenged on rehearing, that the replacement Return was subject to change while maintaining September 2016 as the "thereafter" effective date. Reversing course

2

now to delay FERC's remedy by over eight years would subject customers to hundreds of millions of dollars in unjust and unreasonable overcharges.

Finally, because FERC ultimately granted no relief for the February 12, 2015, complaint filed in Docket No. EL15-45 by Arkansas Electric Cooperative Corporation, *et al* ("Second Complaint"), Owners' arguments that FERC should not have even entertained the Second Complaint is moot. Moreover, Owners' claim that serial complaints are categorically precluded by FPA Section 206 is without merit.

## ARGUMENT

**I.     FERC Properly Ordered September 2016 as the Prospective Effective Rate for the 9.98% Return.**

Owners assert that FERC must perpetuate an unjust and unreasonable rate until it gets the replacement rate perfectly right—that if FERC holds a hearing, finds a rate unreasonable, sets a prospective replacement rate, and then reconsiders and alters that replacement rate on rehearing or remand to correct errors that would not survive judicial review, the prior, unjust and unreasonable rate must apply until FERC issues a final non-appealable order establishing a legally sound replacement. Owners Br. 17. This assertion violates the statutory text and legislative intent, as construed by binding precedent.

### A. Opinion 551 Fixed the Replacement Rate and Followed the Section 206 Predicates for Prospective Relief.

Owners maintain that FERC did not fix a rate until *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys. Operator, Inc.*, 189 FERC ¶ 61,036, JA1781-1810 (Oct. 17, 2024) ("Remand Order"), because the extensive process following Opinion 551 nullified its rate-fixing effect. Owners Br. 22. Owners further argue that because the allowed fifteen months of retrospective refunds under Section 206(b) follow "the conclusion" of complaint proceedings, the effective date of a Section 206(a) prospective replacement rate must likewise await the very end of FERC's process. *Id.* 24. These claims lack merit.

Both FPA Section 206(a) and analogous Natural Gas Act ("NGA") Section 5 require only a prior hearing, a resulting finding that the prior rate was unreasonable, and a published order specifying a replacement rate to apply thereafter. FERC satisfied all three statutory predicates for placing a replacement rate into effect upon complaint. Here, after a full hearing proved that the prior 12.38% Return was unreasonable, Opinion 551 established a specific replacement Return, 10.32%, to apply thereafter. Opinion 551, P 67, JA0882. Nothing in FPA Section 206(a) prohibits FERC from continuing to use the September 2016 effective date established in Opinion 551 because it refined the replacement Return to address fatal flaws with the approach that produced the 10.32% value.

4

### 1) Having Found the Existing Return Unjust and Unreasonable, FERC was Obligated to Promptly Establish an Effective Prospective Return.

In Opinion 551, PP 7, 9, JA0852, JA0854, FERC affirmed the Initial Decision's finding that the existing 12.38% Return was unjust and unreasonable under the longstanding *Hope* and *Bluefield* ratemaking standard.[1] FERC adopted findings that the existing Return would exploit consumers and exceed the standards of *Hope* and *Bluefield*. Opinion 551, PP 11-13 & nn.20-23, JA0854-0855 (citing Initial Decision, P 24, JA0704).[2] Although FERC revised its Return methodology over the course of this proceeding, every subsequent substantive order confirmed that 12.38% was unjust and unreasonable. Indeed, no one now disputes that the 12.38% pre-existing Return, the 10.32% Return of Opinion 551, and the 10.02% Return of Opinion 569-B all exceeded the just and reasonable level for all periods at issue.

---

[1]  *See Bluefield Waterworks & Improvement Co. v. Pub. Serv. Comm'n of W. Va.*, 262 U.S. 679 (1923); *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591 (1944). Opinion 551, PP 11-13, JA0854-0855.

[2]  Indeed, the Initial Decision found that the 12.38% Return "exceed[ed] the high end of the zone of reasonableness" and was thus clearly unjust and unreasonable. Initial Decision, PP 110-12, JA0729. FERC agreed that 12.38% was unjust and unreasonable but explained that FPA Section 206 "does not require complainants or the Commission to demonstrate that an existing [Return] falls outside the zone of reasonableness in order for that [Return] to be considered unjust and unreasonable." Opinion 551, P 16, JA0856.

*Amicus* New England Transmission Owners ("*Amicus*") would sweep that unreasonableness finding under the rug, trapping FERC in a doom loop unable to keep parties whole by timely correcting legal errors. They argue that because the Order on Remand confirmed FERC's unreasonableness finding under its revised analysis, earlier unreasonableness findings fail to meet the "step one" predicate to Section 206(a) relief. (*Amicus* Br. 13-15). As FERC points out, this argument is jurisdictionally barred as outside Owners' rehearing requests. FERC Br. 52-53. In any case, it is wrong. Opinion 551 included an explicit unreasonableness finding, which, as discussed above, rested on a different and better-explained basis than that critiqued in *Emera Maine*. This Court's opinion in *MISO Transmission Owners v. FERC*, 45 F.4th 248 (D.C. Cir. 2022) ("*MISO Transmission*") recognized that FERC's 2019-2020 orders did not nullify Opinion 551's unreasonableness finding, but rather "more effectively *verif[ied]*" that same finding. *MISO Transmission*, 45F.4th at 261 (emphasis added).

Having ruled in 2016 that 12.38% was unreasonable, FERC was clearly authorized, indeed obliged, to promptly set a just and reasonable replacement rate. FPA Section 206(a) ("shall"); *La. Pub. Serv. Comm'n v. FERC*, 184 F.3d 892, 897 (D.C. Cir. 1999) (FERC "has the duty—not the option—to reform rates that by virtue of changed circumstances are no longer just and reasonable"). That duty empowers FERC to make its remedies timely. *Cf. Fed. Power Comm'n v. Nat. Gas Pipeline*

6

*Co.*, 315 U.S. 575, 583-85 (1942) (upholding interim order "decreasing revenues" prior to the Commission "establishing a specific [replacement] schedule of rates" as "in harmony with the purpose of the Act"). Delaying the effective date of the replacement rate for eight years after finding the existing rate unreasonable would have constituted legal error. *See Off. of Consumers' Counsel, State of Ohio v. FERC*, 826 F.2d 1136, 1139 (D.C. Cir. 1987) ("*OCC Ohio*") (having found a rate unreasonable, FERC's "legal error was in failing to remedy that violation.").

### 2) The FPA and Precedent Confirm that FERC has Authority to Maintain the 2016 Effective Date.

Contrary to Owners' claims, neither Section 206(a), nor the parallel NGA Section 5, prevents FERC from establishing the effective date of a replacement rate prior to the "conclusion" of a proceeding in a final non-appealable order. Owners Br. 24. Both statutory provisions clearly permit further process to refine the replacement rate after giving it effect "thereafter." *See Nat. Gas Pipeline Co.*, 315 U.S. 583-85; *Tenn. Valley Mun. Gas Ass'n v. Fed. Power Comm'n*, 470 F.2d 46, 452–53 (D.C. Cir. 1972) ("*Tennessee*").[3] The "conclusion" clause of FPA Section 206(b) makes sense there, because it relates to FERC's authority to extend the 15-

---

[3]  Courts have routinely found that the relevant provisions of the FPA and the NGA are analogous and are to be construed *in pari materia*. *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 164 n.10 (2016); *Emera Maine v. FERC*, 854 F.3d 9, 20 (D.C. Cir. 2017) ("judicial interpretations of the FPA and the NGA may be followed interchangeably").

month retrospective refund period if a utility is dilatory any time before that conclusion. When Congress enacted Section 206(b) in 1988, it could have added the "conclusion" clause to Section 206(a) as well. Instead, Congress chose to leave intact the provisions for effectiveness prior to refinement that *Tennessee* had recognized in 1972.

Other FPA provisions confirm FERC's authority to keep September 2016 as the prospective effective date for the replacement rate. Because FPA Section 313 authorizes FERC to modify its orders and findings "in whole or in part," a request for rehearing as to the replacement rate's level does not preclude the Commission from changing the rate before the record is filed in a court of appeals. 16 U.S.C. § 825*l*(a). FPA Section 309 (discussed *infra* in Part I.B.1) also authorizes FERC to "perform any and all acts," including "amend[ing] … orders," "as it may find necessary or appropriate to carry out the provisions of" the FPA. 16 U.S.C. § 825h. Thus, FERC was expressly authorized to retain Opinion 551's replacement rate effective date while modifying its level.

As FPA Sections 313(a) and 313(b) are parallel ("modify or set aside, in whole or in part" parallels "affirming, modifying, or setting aside, in whole or in part"), FERC's authority to modify orders on rehearing parallels that of this Court on judicial review. Just as this Court backdated a replacement rate effective date to cure legal error in *Tennessee*, FERC has authority to do so here.

8

Owners' contrary arguments, based on FPA Section 206(b) and *Electrical District v. FERC*, 774 F.2d 490 (D.C. Cir. 1985), lack merit. The 1988 enactment of FPA Section 206(b) only *expanded* FERC's pre-existing authorities under FPA Sections 206(a), 309, and 313. *City of Redding v. FERC*, 693 F.3d 828, 838 (9th Cir. 2012); *see, e.g.*, 134 Cong. Rec. H8094-02 (daily ed. Sept. 23, 1988) (statement of Rep. Gejdenson) (explaining that the amendment sought to "to make the current regulatory process more equitable, giving electric consumers the same protections and considerations that supplying utilities currently receive"). Moreover, Section 206(b)'s text does not diminish FERC's broad pre-existing powers under FPA Section 309. Indeed, Section 309 and Section 206(b) serve distinct purposes. *See, e.g.*, *Verso Corp. v. FERC*, 898 F.3d 1, 10 (D.C. Cir. 2018); *see also Town of Concord v. FERC*, 955 F.2d 67, 73 (D.C. Cir. 1992) (explaining parallel refund authorities under FPA Section 309 and NGA Section 16); *Consolidated Gas Transmission Corp. v. FERC*, 771 F.2d 1536, 1551 (D.C. Cir.1985).

Next, Owners twist this Court's decision in *Electrical District* to contend that only the last rate determination counts as "fixing" a rate. However, FERC here did precisely what *Electrical District* suggested it should: "ensure that just and reasonable rates are made effective *as soon as possible*" by "complet[ing] the [rate specification] process itself and fix[ing] the rates in its initial order." *Electrical Dist. No. 1*, 774 F.2d at 494 (Emphasis added).

9

Nothing in *Electrical District* requires this "initial" order fixing the rate to become the last word before it can take prospective effect. To the contrary, *Electrical District* invited an initial, rate-fixing order with "refund [of] any excess payments if final review of the rates produces an adjustment." *Id.*

The concern expressed in *Electrical District* was that merely setting "basic principles," i.e., general concepts eventually distillable to specific rates, provides insufficient notice of the rate applicable to ongoing transactions. *Id.* at 493. Such open-ended uncertainty differs markedly from the situation here, where FERC ordered a specific replacement rate that faced specific challenges on rehearing and appeal. While some degree of uncertainty inherently persists during rehearing and appeal, procedural requirements cabin the issues and notify all that rates paid remain subject to adjustment.

The present appeal underscores the difference between FERC acting to correct errors identified on rehearing and appeal and FERC belatedly arriving at a specific rate after previously setting merely general principles. The eight years between Opinion 551 and the Order on Remand were not spent on a *de novo* attempt to reduce the general principle of financial cost recovery to a specific Return. Rather, they were spent correcting substantial errors embedded in the specific Return FERC had fixed; errors which this Court recognized were, or would have been, fatal on direct judicial review.

10

### B.    FERC Properly Acted to Correct Prior Legal Errors.

#### 1)    Binding Circuit Precedent Confirms the Error-Correction Authority FERC Applied Here.

Binding Court precedent establishes FERC's authority to repair its errors by establishing corrected replacement rates effective as of the error date. In *Nat. Gas Clearinghouse v. FERC*, 965 F.2d 1066 (D.C. Cir. 1992) ("*Clearinghouse*"), this Court approved FERC's decision to order "retroactive recoupment of refunds that were found on judicial review to have been improperly ordered." *Clearinghouse*, 965 F.2d at 1074. Owners elide both *Clearinghouse* and this Court's explanation that FERC's remedial authority "emanates from an understanding that an 'agency, like a court, can undo what is wrongfully done by virtue of its order.'" *TNA Merch. Projects, Inc. v. FERC*, 857 F.3d 354, 361 (D.C. Cir. 2017) ("*TNA*") (quoting *United Gas Improvement Co. v. Callery Props., Inc.*, 382 U.S. 223, 229 (1965)). This Court explained: "[o]ur case law makes it clear that both § 309 and FERC's implicit remedial authority under the [FPA] provide [FERC] with considerable latitude when…attempting to undo harms caused by its own mistaken or unlawful acts." *TNA*, 857 F.3d at 360. FERC has clear authority, in fashioning remedies, to consider equitable principles, one of which is to regard as being done that which should have been done. *Clearinghouse*, 965 F.2d at 1071-72.

Accordingly, as this Court found in *OCC Ohio*, FERC may "impose [the updated rate] with a measure of retroactivity in order to place the petitioner 'in the

11

same position that it would have occupied had the error not been made.'" *OCC Ohio*, 826 F.2d at 1139 (Quoting *Tennessee*, 470 F.2d at 452). The Court distinguished between retroactive ratemaking ("belated determinations that rates charged in the past were excessive") and the fact that rates that had been updated, but were later corrected, were subject to refund. *Id.* (citing *Tennessee*, 470 F.2d at 452).

FERC has the same authority under the FPA. *See supra* note 3; *see also Town of Concord v. FERC*, 955 F.2d 67, 73 (D.C. Cir. 1992); *Xcel Energy Servs. v. FERC*, 815 F.3d 947, 955 (D.C. Cir. 2016) ("*Xcel*"). This authority includes, but is not limited to, authority "to implement judicial reversals." *Clearinghouse*, 965 F.2d at 1073. Again, it broadly encompasses *mistaken or unlawful* acts. *TNA*, 857 F.3d at 360.

Owners downplay and seek to cabin that broad remedial authority. Owners Br. 28-36. Contrary to Owners' position, however, FERC's 15-month refund authority under FPA Section 206(b) does not limit its Section 309 authority. *See supra,* Part I.A.2. Before and after the 1988 enactment of Section 206(b), FERC was and is authorized to "perform any and all acts ... as it may find necessary or appropriate" to carry out the FPA's consumer-protecting provisions. 16 U.S.C. § 825h. Accordingly, a remedy need not be "spelled out in detail" in the FPA for FERC to prescribe it. *Niagara Mohawk Power Corp. v. Fed. Power Comm'n*, 379 F.2d 153, 158 (D.C. Cir. 1967). So long as the chosen remedial action conforms with

the intent of Congressional intent and does not otherwise "contravene any terms" of the FPA—which FERC's action here does not—the action must stand. *TNA*, 857 F.3d at 359.

In particular, Section 309 "affords the agency broad authority to 'remedy its errors' and correct unjust situations." *Id.* (quoting *Xcel*, 815 F.3d at 956). Section 309 authorizes FERC to identify and repair its own mistakes, remediating past actions that it or a court determines to be wrong. *Xcel*, 815 F.3d at 954-56. An agency must have the ability to right its own mistakes to ensure the agency is otherwise complying with its statutory obligations, *i.e.*, FERC's duty to ensure that *all* jurisdictional rates are just and reasonable. *See Xcel*, 815 F.3d at 955-56.

Owners deem it "absurd" that Opinion 551 fixed a replacement rate, because Opinion 551 was subsequently vacated. Owners Br. 22. That gets the error-correction doctrine backwards; because FERC's underlying orders were vacated, FERC had to set the new Return and "confront the problem anew." FERC Br. 40 (quoting *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 854 (D.C. Cir. 1987)). Following *vacatur*, so long as it respected this Court's direction, FERC was authorized to reinstate the vacated orders "in whole or in part," just as it was free to retain non-erroneous rulings on rehearing under FPA Section 313(a).

In *MISO Transmission*, 45 F.4th at 252, this Court "agree[d] with the customers that FERC's development of the new Return methodology was arbitrary

and capricious." This Court, therefore, expressly did not reach Owners' effective-date issue. Instead, it remanded "for further proceedings" and "vacate[d] FERC's 'rate-determination orders.'" *Id.* at 265. Nothing in *MISO Transmission* suggests that this Court intended to hand Owners years of unjust enrichment at a 12.38% Return, far above the 10.02% that this Court had just found to arbitrarily aggrieve customers. Yet, that is what Owners seek.

### 2) FERC's Revisions to the Replacement Return Were Necessary to Correct Legal Errors.

Owners are wrong to claim that FERC was not acting in its error-correcting capacity. Owners Br. 31-37. *Emera Maine*'s ruling on FERC's use of the upper midpoint required FERC to revisit Opinion 551 to craft a legally defensible order. *Emera Maine* found that FERC "did not set forth a rational connection between the record evidence and its placement of the base [Return]" at "the midpoint of the upper half of the zone of reasonableness." *Emera Maine*, 854 F.3d at 27. "Rather than citing record evidence demonstrating that 10.57 percent was … just and reasonable …, FERC simply noted that it 'traditionally looked to the central tendency'… and then chose the midpoint of the upper half of the zone of reasonableness because it had done so 'in the past.'" *Id.* at 29 (quoting Opinion 531 PP 151-52). In response, FERC proposed methodology changes that would (i) produce a higher midpoint, and (ii) rely on that midpoint rather than the upper midpoint. *Ass'n of Bus. Advocating Tariff Equity v. Midcontinent Indep. Sys.*

14

*Operator, Inc.,* 165 FERC ¶ 61,118, P 60, JA1011 (November 15, 2018) ("Briefing Order").

Although reopening lengthened proceedings that had already lasted five years, FERC assured parties that it would use its "broad remedial authority" to correct its "legal error" as of the date FERC had erred. Briefing Order, P 61, JA1011. Far from challenging the effective date, Owners (while proposing a higher replacement Return of 10.5%) affirmatively supported it. Supplemental Initial Brief of Owners, R.542 1, 28, JA1224, JA1251 (stating "support" for FERC's "overall approach," as "statutorily and procedurally sound," and specifically asking FERC to make the replacement Return "effective for the applicable statutory refund period of November 12, 2013, to February 11, 2015, *and, prospectively, as of September 28, 2016*") (emphasis added). Owners did not challenge the September 2016 effective date until FERC's review of the resulting expanded record produced a replacement Return below that of Opinion 551.

Given that FERC's proposal to retain the September 2016 effective date was not challenged by Owners, Intervenors accepted the resulting procedural re-opening and lengthening, both before FERC and by refraining from seeking judicial mandamus as FERC took years to consider the expanded record. The resulting lengthy process eventually corrected FERC's erroneous Opinion 551 upper midpoint placement (along with its unsupported use of the risk-premium model identified in

15

*MISO Transmission*) and adjusted the methods FERC had proposed to substitute for that placement. FERC was not obliged to offset that error correction by wrongly (and as discussed below, quite inequitably) altering the replacement rate effective date.

### C.     FERC's Remedy Serves the FPA's Consumer Protection Purposes.

The remedy at issue merely puts consumers "in the same position that [they] would have occupied had the error not been made." *OCC Ohio*, 826 F.2d at 1139 (Citing *Tennessee*). As in *OCC Ohio*, FERC here made no "belated determination" about a past rate. Rather, FERC resolved issues with the replacement rate for the unjust and unreasonable 12.38% Return, issues which had been continually disputed since Opinion 551 specified a replacement in September 2016. Given that the replacement rate was never subject to a final, non-appealable order, it was always apparent that those rates were subject to change. *See Canadian Ass 'n of Petroleum Producers v. FERC*, 254 F.3d 289, 299-300 (D.C. Cir. 2001).

Undoing FERC's remedy would delay effectiveness of a replacement rate by over eight years. Owners argue that the 9.98% just and reasonable Return should apply (i) in calculating refunds for the fifteen-month period after the First Complaint (November 2013 to February 2015); and (ii) starting almost ten years later (so eight-plus years after Opinion 551) in October 2024, upon issuance of the Remand Order. Owners Br. 19. Owners are notably silent as to what Return would apply between those dates, but the logic of their claim that FERC fixed the just and reasonable rate

16

only in October 2024 demands that the excessive 12.38% Return would apply for that entire, nearly decade-long interim.

Such delays would merely perpetuate the errors of FERC's erroneous prior orders adopting higher Returns. Indeed, it would punish customers with hundreds of millions of dollars in excessive rates for their *serial success* in reducing the Return to 10.02% (when FERC addressed the same flaws that this Court identified in *Emera Maine*) and then 9.98% (on remand from *MISO Transmission*).

In July 2017, when Midcontinent Independent System Operator, Inc. ("Midcontinent") resettled 15 months of transmission charges for the difference between the former Return of 12.38% and the 10.32% of Opinion 551, it showed hundreds of millions of dollars in associated refunds. *See* July 2017 Refund Report. In April 2022, Midcontinent further reported the effect, over additional years, of reducing that 10.32% to the 10.02% of Opinion 569-B; it showed hundreds of millions of dollars in further resettlements. *Id.* Owners would unwind those substantial resettlements, delay the effectiveness of reasonable rates needed to cure FERC's legal errors, and discourage customers from seeking judicial review of erroneous FERC orders. None of those results are consistent with the FPA's primary aim: "protection of consumers from excessive rates and charges." *Alexandria, Minn. v. Fed. Power Comm'n*, 555 F.2d 1020, 1028 (D.C. Cir. 1977) (quoting *Mun. Light Bds. v. Fed. Power Comm'n*, 450 F.2d 1341, 1348 (D.C. Cir. 1971)).

Against those powerful considerations, Owners claim only that FERC's retention of the September 2016 rate replacement date would somehow deprive them of desirable "predictability." Owners Br. 21. But predictability, in a regulated environment, must yield to notice that rates charged are subject to the pending resolution of disputed issues. *See Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 830-33 (D.C. Cir. 2021). Rehearing and appeal activate the notice exception and allow ratemaking to take effect as of prior decision dates that might otherwise be considered improperly retroactive. *See Clearinghouse*, 965 F.2d at 1075. Under *Tennessee*, although the FPA and its filed rate doctrine seek to protect "established expectations under *legally established* rate schedules," they do not protect expectations premised on "legal error by the Commission" that "wrongfully and unfairly prolongs" the applicability of excessive rates. *Tennessee*, 470 F.2d at 452-53 (emphasis added).

Here, all parties knew, as they labored through this lengthy litigation, that the 10.32% Return set in Opinion 551 was subject to change on rehearing with September 2016 effectiveness. Far from challenging such effectiveness, Owners supported it—until FERC arrived at a replacement rate they disfavored. To be sure, that rehearing process took years and admitted new evidence, as FERC considered method changes that would raise the midpoint on which it now contemplated relying. FERC bent over backwards to consider Owners' myriad ways of doing so, such as

18

disregarding cost (*see*, Opinion 569, PP 200-28, JA1356-1372) and laboriously echoing Returns set in prior cases reflecting higher capital costs (*see MISO Transmission*, 45 F.4th at 263-64). But customers accepted that lengthening given FERC's then-unchallenged promise to retain Opinion 551's September 2016 effective date. Briefing Order, P 61, JA1011 . *That* is the expectation deserving protection.

## II.    This Court should Reject Owners' Arguments Regarding the Second Complaint.

Owners claim that FERC erred in even entertaining the Second Complaint, which it ultimately denied. Owners Br. 37-41 (Supported by *Amicus* Br. 22-26). As FERC explains, FERC's decision to grant no relief as an outcome of the Second Complaint moots and precludes judicial review of contentions that such denial should have occurred earlier, as a "dismissal."[4] FERC Br. 61-67.

We note, however, that if Owners were to prevail in reinstating 12.38% as the Return effective until October 2024, then FERC would need to consider on remand whether 12.38%, rather than the considerably lower Returns that FERC applied as existing in its analyses dismissing the Second Complaint, should be treated as the existing Return for purposes of the Second Complaint. *See MISO Transmission*, 45

---

[4]    This assumes FERC's denial of all relief. LPSC has briefed separately, and we do not here address, its position that FERC should have granted refunds based on the Second Complaint.

F.4th at 262 ("FERC must look to the current Return at the time of decision"). And we add three points supporting FERC's further argument on the merits of Owners' successive complaints claim. FERC Br. 67-69.

First, Owners err in contending that serial complaints serve "solely to circumvent" the FPA's fifteen-month refund limitation. Owners Br. 37. Financial market conditions change continuously, sometimes dramatically. As *Amicus* concede, FERC precedent allows second complaints to proceed "based on 'a material changed circumstance.'" *Amicus* Br. 26 (quoting cases). But in order for FERC to evaluate whether circumstances have changed materially such that a second complaint should produce its own relief, FERC first must entertain it.

Indeed, in some circumstances, FERC could deny a first complaint for failing to prove an existing Return unreasonable but find that a second complaint *does* meet that burden based on more recent financial data. Dismissing the second complaint in this circumstance would allow an unjust rate to continue, contrary to the FPA, and it would be especially unjust if one customer's decision to file the first complaint forfeited a different customer's opportunity to file later, perhaps for years.

Second, Owners err in contending that FERC entertained serial complaints "challenging the very same rates" based on "identical data." Owners Br. 37-39. Under FERC's disposition, the Second Complaint was resolved as a challenge to the First Complaint's "thereafter" outcome of 9.98%, *not* the 12.38% target of the First

Complaint. Remand Order, P 34, JA1799. The data periods and ranges FERC applied to those respective challenges also differed. *Id.*, PP 27-28, 37-38, JA1797-1798, JA1800-1801. And the initial analysis filed in 2015 to support the second complainants' request for a hearing on the Second Complaint presented a different witness, different time frame, and different methods from what the first complainants had filed in 2013 to support their request for a hearing on the First Complaint.[5]

Third, *contra* Owners' Br. 40, FERC did not "render[] the refund limit a nullity." That limit produced a 17-month refund gap (between February 2015 and September 2016) that cost consumers hundreds of millions of dollars. *See* supra, Part I.B.2.

## CONCLUSION

In closing, the frustration voiced by Owners in this protracted litigation is deeply magnified for the customers who have borne the weight of excessive Returns. While there are debates about whether FERC complied with the expediency mandate of FPA Section 206(b), there is no question that this drawn-out process has had significant economic impact on customers, including industrial entities facing

---

[5]    The differences are plainly shown by comparing the Second Complaint Hearing Order, PP 6-13, JA0651-0654, with First Complaint Hearing Order, PP 7-22, JA0137-0143.

intense global competition and who rely on reasonable electric rates to remain viable, and economically stressed families juggling tight budgets.

Justice requires that customers—who have already suffered lost refunds from February 2015 to September 2016 and years of subsequent overcharges—should not be further penalized, and that Owners must not recoup or retain the unjust windfalls obtained from their years-long collections of excessive Returns. The Court should deny the Petitions for Review of Owners.

Respectfully submitted,

ALLIANT ENERGY CORPORATE
SERVICES, INC.
*/s/ James K. Mitchell*
James K. Mitchell
James K. Mitchell Law PLLC
1629 K Street, NW, Suite 306
Washington, DC 20006
703-969-0402
jameskmitchelllaw@gmail.com

AMERICAN MUNICIPAL
POWER, INC.
*/s/ Gerit F. Hull*
Gerit F. Hull
Deputy General Counsel for
Regulatory Affairs
American Municipal Power, Inc.
1111 Schrock Road, Suite 100
Columbus, OH 43229
(614) 540-0852
ghull@amppartners.org

Jason T. Gray
Duncan & Allen LLP
1730 Rhode Island Ave., NW
Suite 700
Washington, DC 20036
(202) 842-8197
jtg@duncanallen.com

22

INDUSTRIAL CONSUMERS
GROUP
*/s/ Kenneth R. Stark*
Kenneth R. Stark
Matthew L. Garber
100 Pine Street
Harrisburg, PA 17101
717-237-5378
717-260-1666
kstark@mcneeslaw.com
mgarber@mcneeslaw.com

*Counsel to the Coalition of MISO
Transmission Customers and on
behalf of Association of Businesses
Advocating Tariff Equity, Illinois
Industrial Energy Consumers,
Indiana Industrial Energy
Consumers, Inc., and Wisconsin
Industrial Energy Group*

LOUISIANA PUBLIC SERVICE
COMMISSION
*/s/ Noel J. Darce*
Noel J. Darce
Dana M. Shelton
Justin A. Swaim
STONE PIGMAN WALTHER
WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112-4042
(504) 581-3200
ndarce@stonepigman.com
dshelton@stonepigman.com
jswaim@stonepigman.com

Kathryn Bowman
Executive Counsel
Louisiana Public Service Commission
Galvez Building – 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
(225) 342-9888
Kathryn.bowman@la.gov

*Attorneys for the Louisiana Public
Service Commission*

23

MISSISSIPPI PUBLIC SERVICE COMMISSION, ET AL.

*/s/ Jeffrey M. Bayne*

Stephen C. Pearson
Jeffrey M. Bayne
David E. Pomper
Spiegel & McDiarmid LLP
1818 N Street NW
8th Floor
Washington, DC 20036
(202) 879-4000
steve.pearson@spiegelmcd.com
jeffrey.bayne@spiegelmcd.com
david.pomper@spiegelmcd.com

*Attorneys for the Mississippi Public Service Commission, Missouri Public Service Commission, and Missouri Joint Municipal Electric Utility Commission d/b/a the Missouri Electric Commission*

NORRIS ELECTRIC COOPERATIVE

*/s/ Bhaveeta K. Mody*

Michael R. Postar
Bhaveeta K. Mody
Duncan, Weinberg, Genzer & Pembroke, P.C.
1667 K Street, N.W., Suite 700
Washington, D.C. 20006
(202) 467-6370
(202) 467-6379
mrp@dwgp.com
bkm@dwgp.com

*Attorneys for Norris Electric Cooperative*

ORGANIZATION OF MISO STATES, INC.

*/s/ Andrea I. Sarmentero*

Andrea I. Sarmentero Garzón
Kevin M. Kurzeja
Duncan, Weinberg, Genzer & Pembroke, P.C.
1667 K Street N.W.
Suite 700
Washington D.C. 20006
(202) 791-3729
asg@dwgp.com
kmk@dwgp.com

*Counsel to the Organization of MISO States, Inc.*

RESALE POWER GROUP OF IOWA

*/s/ Katherine Ann Wade*

Katherine Ann Wade
James H. Holt
kaw@bettsandholt.com
jhh@bettsandholt.com
Betts & Holt LLP
1101 Connecticut Ave., N.W., Ste. 450
Washington, D.C. 20036
(202) 530-3380

*Counsel for Resale Power Group of Iowa*

24

| RURAL ELECTRIC CONVENIENCE COOPERATIVE | SOUTHWESTERN ELECTRIC COOPERATIVE, INC. |
|---|---|
| */s/ Bhaveeta K. Mody* | */s/ Bhaveeta K. Mody* |
| Michael R. Postar | Michael R. Postar |
| Bhaveeta K. Mody | Bhaveeta K. Mody |
| Duncan, Weinberg, Genzer & Pembroke, P.C. | Duncan, Weinberg, Genzer & Pembroke, P.C. |
| 1667 K Street, N.W., Suite 700 | 1667 K Street, N.W., Suite 700 |
| Washington, D.C. 20006 | Washington, D.C. 20006 |
| (202) 467-6370 | (202) 467-6370 |
| (202) 467-6379 | (202) 467-6379 |
| mrp@dwgp.com | mrp@dwgp.com |
| bkm@dwgp.com | bkm@dwgp.com |
| | |
| *Attorneys for Rural Electric Convenience Cooperative* | *Attorneys for Southwestern Electric Cooperative, Inc.* |

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g) and Circuit Rule 32(e), I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B), as modified by the Court's July 11, 2025 Briefing Order, because this brief contains 4,947 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Times New Roman with size 14-point font using Microsoft Word 365.

*/s/ Andrea Sarmentero*
Andrea I. Sarmentero Garzón
Kevin M. Kurzeja
Duncan, Weinberg, Genzer
& Pembroke, P.C.
1667 K Street N.W., Suite 700
Washington D.C. 20006
(202) 791-3729
asg@dwgp.com
kmk@dwgp.com

*Counsel to the Organization of MISO States, Inc.*

# ADDENDUM

## TABLE OF CONTENTS FOR ADDENDUM

16 U.S.C. § 824e (FPA Section 206)..........................................................................A1

16 U.S.C. § 825h (FPA Section 309) ........................................................................A5

16 U.S.C. § 825l (FPA Section 313) .........................................................................A8

## CERTIFICATE OF SERVICE

Pursuant to Rule 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that I have this twenty-sixth day of January 2026 served the foregoing document by electronic mail through the Court's CM/ECF system upon the parties to this appellate proceeding.

Dated at Washington D.C., this twenty-sixth day of January 2026.

*/s/ Andrea Sarmentero*
Andrea I. Sarmentero Garzón
Kevin M. Kurzeja
Duncan, Weinberg, Genzer &
Pembroke, P.C.
1667 K Street N.W., Suite 700
Washington D.C. 20006
(202) 791-3729
asg@dwgp.com
kmk@dwgp.com

*Counsel to the Organization of MISO States, Inc.*